Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

| | |
|---|---|
| United States District Court<br>Eastern District of New York | 2:19-cv-00974 |

| |
|---|
| Ricardo Sibrian individually and on behalf of all others similarly situated |
| Plaintiff |
| - against - |
| Cento Fine Foods, Inc. |
| Defendant |

Complaint

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Cento Fine Foods, Inc. ("defendant") manufactures, grows, harvests, packages, markets, distributes and sells peeled, canned tomatoes from Italy labeled as "Certified San Marzano."

2. The Products are sold in tin cans in sizes including 28 oz. available to consumers from retail stores and websites nationwide, and directly from defendant's website.

3. Tomatoes are the most important fruit crop in the world, accounting for consumption of 22 and 13 million tons/day in the EU and US.[1]

4. Tomato was first introduced in Europe from Central and South America at the beginning of the 16th century and initially cultivated as an ornamental plant.

5. There are generally two types of peeled plum tomatoes from Italy – regular peeled

---

[1] Food and Agriculture Organization Statistics, 2010 report

1

and regular peeled grown in the region San Marzano sul Sarno, in the temperate climate of Campania in Southern Italy.

6. San Marzano refers to a type of tomato, characterized by firm pulp, deep red color, low seed count, easy to remove peel, elongated shape of the berry with parallel longitudinal depressions, and placental fibers.

7. They are traditionally grown in the rich volcanic soil at the base of Mount Vesuvius, a temperate climate, south of Naples, which gives them a sweet flavor and low acidity.

8. Defendant represents its Products as "Certified San Marzano Organic Peeled Tomatoes."



9. Most San Marzano-type tomatoes are grown in Italy though seeds for the variety are available to be planted worldwide.

10. The optimal cultivation of San Marzano's in Italy requires the vertical breeding of

2

the plants with the use of supports, to provide the needed sunlight and other attributes which affect the product's final internal composition.

11. The average yield is about 60-80 tons per hectare, and the processed product yield reaches high levels, normally above 70%.

12. The limited number of fields in the optimal area for planting and the inability to use mechanized harvesting means a restricted supply and higher prices.

13. This premium pricing – twice as much as non-San Marzano – results in an ongoing battle against fraudulent tomatoes designated as "San Marzano" and purporting to represent themselves with the indicia of this tomato variety.

14. This fraud is abetted by the abundance of lower quality Chinese processed tomato products imported to Italy, more than any other country, to use in the finished tomato products.

15. According to the head of the Italian non-governmental group that represents producers and distributors of San Marzano tomatoes, the Consortium for the Protection of the San Marzano Tomato Dell'agro Sarnese Nocerino, only five percent of tomatoes marked as such are real San Marzano tomatoes.[2]

16. The Italian Mafia reaps profits by placing lesser quality tomatoes into cans and labeling them San Marzano, when they are less sweet and less meaty tomatoes.[3]

<p style="text-align:center"><u>The Mystery of San Marzano, NY Times</u></p>

---

[2] Mari Uyehara, San Marzano Tomatoes: The Fake Rolex of Canned Foods, 20 July 2017, TASTE https://www.tastecooking.com/fake-rolex-canned-tomatoes/
[3] Nicholas Blechman, The Mystery of San Marzano, NY Times, 16 Aug. 2015, https://www.nytimes.com/interactive/2015/08/16/opinion/sunday/food-chains-mystery-of-san-marzano.html



17. To prevent the rampant fraud, the below seals and serial numbers are affixed to San Marzano tomatoes grown in the region, in the required manner.


18. Defendant's website emphasizes that regulations are necessary to label a product "true San Marzano Tomatoes."

**REGULATING TRUE SAN MARZANO TOMATOES**

San Marzano tomatoes have a strict set of rules and guidelines to follow from harvesting to packing, ensuring consistency and superior quality. Some of these rules and guidelines include:

- The species of tomato seeds that can be used
- The area in Italy where the tomatoes are grown
- The size, shape and color once harvested
- The harvesting process
- The peeling process
- The packing process

Cento Fine Foods recognizes the importance of providing only premium quality authentic Italian products, so we take these guidelines to the next level with our own proprietary set of standards and processes. Cento Fine Foods is the only United States brand with its own facility in the Sarnese Nocerino area of Italy. This ensures that we can monitor and control all steps of the harvesting, planting, growing, picking and packaging processes. Learn more below about our standards and processes during each stage of our Cento Certified San Marzano Tomatoes production.

19. Like the certified version of the San Marzano tomatoes, the Products contain Italian text, "Pomodoro San Marzano."




> Distinct in flavor, these Cento Marzano tomatoes are grown in the Sarnese Nocerino area of Italy, renowned for its especially fruitful soil as a result of its proximity to Mount Vesuvius.
>
> These San Marzano tomatoes are certified by an independent third-party agency and are produced with the proper method to ensure superior

5

quality. (Back of Can)

20. However, the ICEA does not "certify" that the Products are compliant with the San Marzano guidelines, and it is actually an entity which may have performed the USDA Organic certification.[4]

21. Though the ICEA does certify the quality and identity of certain fruits and vegetables, San Marzano tomatoes are not included amongst them.[5]

22. On defendant's website, a company known as "Agri Cert" (also known as Bio Agri Cert) is identified as the "independent third-party agency" that verifies that the Products conform to the San Marzano official criteria, which effect its internal composition.[6]

### Agri-Cert

Agri-Cert, an independent Italian third party organization, certifies that our San Marzano tomatoes follow the proper production method and ensures superior quality. Everything from the seeds to the methods of farming of our San Marzano tomatoes are done in compliance with Agri-Cert.

### CENTO CERTIFIED SAN MARZANO TOMATOES

Cento Certified San Marzano Tomatoes have always been, and continue to be grown and produced in the Sarnese Nocerino area of Italy. They continue to follow the same premium-quality standards that Cento has always stood by, the standards that made us the leading brand in the United States for San Marzano tomatoes. San Marzano tomatoes are regulated and certified authentic by an independent third party, Agri-Cert, using the guidelines created to regulate San Marzano tomatoes in Italy. These guidelines were created to help differentiate a true San Marzano tomato that follows the criteria from other varietal Italian tomatoes grown outside the designated region or domestically. This ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which, without following the strict criteria, may be inferior quality or contain a different flavor profile.

**View Products**

23. However, Bio Agricert is believed to be the company which supplies defendant with

---

[4] https://icea.bio
[5] https://icea.bio/typical-products-pdo-pgi-igt-etc/?lang=en
[6] https://www.bioagricert.org/en/

San Marzano *seeds* and *possibly* certifies whether the Products are organic, as opposed to certifying the growing and quality of the final product.

24.     Bioagricert sells a standard peeled tomato seed, but has no public listing for a San Marzano tomato seed.

25.     It even has been claimed that Bioagricert only "certifies" the production chain traceability of the seeds, confirming the subject tomatoes were grown in Italy.[7]

26.     Defendant's website offers the chance to look up the exact field where the Products were grown by entering in a "lot code."

**FIND MY FIELD**

Cento Certified San Marzano Tomatoes are certified by an independent third-party agency, Argi-Cert, and produced with the proper method to ensure superior quality. From seed to shelf, our tomatoes are monitored and held to the highest of our standards. PAC Traceability (Product Attribute Certification) is the driving force behind the certification of Cento San Marzano Tomatoes. Each can comes labeled with a "lot code" as well as a best before date. These lot codes allow us to trace every can to the exact farm where the tomatoes were picked to ensure that each crop is up to our high standards. If you're interested in exactly which of our farms your can of tomatoes came from, click the button below.

**Learn More**

27.     A typical "lot code" for a recently purchased Product is "P230."

28.     However, the "lot code" conveniently corresponds to a date code, where in one formulation, P represents the year (i.e., 2017) and 230 means the 230th day of said year (subject to variations depending on implementation and usage).

29.     Additionally, entry of "lot codes" into the website brings back the same four fields, over and over.

---

[7] UNI EN ISO 22005 Standard

7

30. It is implausible that defendant can sell more San Marzano tomatoes than all other companies in the US, combined, and do so by cultivating only four fields.

31. It would not necessarily be misleading to grow tomatoes from San Marzano seeds and label them as "San Marzano" tomatoes.

32. It is misleading to grow tomatoes that may or may not be from San Marzano seeds and represent them as being "certified."

33. Studies have shown that consumers, in the short time they devote to selecting products, will look for cognitive shortcuts, such as third-party certifications.

34. Such certifications represent to the consumer that the certifying party has the expertise, knowledge, authority and ability to give its imprimatur to the product.

35. A certification is especially significant when the subject products are from another country, because the consumer will have no easy way to assess or inquire as to the authenticity of the certification, and by extension, the criteria used.

36. Reasonable consumers expect that where a certification is available for a product, and promoted as a key aspect of that product's features, the certification will refer to one of the most significant features.

37. In the case of the Products, the "certified" claim bears on whether or not the Products are certified San Marzano tomatoes, understood as referring to the Product's composition and attributes.

38. This is reasonable because defendant's representations – on and off-label – state clearly that the "certified" refers to the final product – not that the seeds are certified as "San Marzano variety," or that it is certified organic by the USDA.

39. It is implausible for defendant's Products to be of identical or substantially similar

to the other certified Products because there are not enough serial numbers distributed each year by the regulating body to cover the volume of defendant's output.

40. Moreover, the growing of the amounts of tomatoes produced by defendant soil would not be able to obtain the nutrients and minerals and flavor elements the volcanic soil is known for.

41. Further, it would be unprofitable to engage in the labor-intensive growing and harvesting process for such a large number of tomatoes yet sell them at their retail price.

42. Defendant's claim of certification is a weak half-truth, without much effort put in.

43. When consumers buy canned tomatoes, they increasingly seek products that are most connected to authentic Italian foods.

44. While it is not disputed that the Products originate from Italy, it is disputed that the Products are all they represent themselves to be.

45. Competitor brands in columns two and three are actually certified by the relevant authority, and are labeled as "San Marzano Tomato of Agro Sarnese-Nocerino Area"

  

46. Only recently has it been possible to identify authentic tomato cultivars in commercial tomato products through the technology simple sequence repeat (SSR) and other

9

advanced methodologies, which has implications for truthful labeling described herein.[8]

47. The Products do not conform to the identity and composition of what they represent as and are affirmatively misleading to consumers.

48. The Products contain other representations which are misleading and deceptive.

49. Excluding tax, the Products cost no less than $5.99, a premium price compared to other similar products.

## Jurisdiction and Venue

50. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

51. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

52. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

53. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

54. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

55. Plaintiff is a citizen of Nassau County, New York.

56. John Doe plaintiffs are citizens of the other 49 states.

57. Defendant is a New Jersey corporation with a principal place of business in

---

[8] Daria Scarano, et al. "SSR fingerprint reveals mislabeling in commercial processed tomato products." Food Control 51 (2015): 397-401; Maria Raffaella Ercolano et al. "Patchwork sequencing of tomato San Marzano and Vesuviano varieties highlights genome-wide variations." BMC genomics 15.1 (2014): 138; R. Rao, et al., "(GATA) 4 DNA fingerprinting identifies morphologically characterized 'San Marzano' tomato plants." Plant Breeding 125, no. 2 (2006): 173-176.

Thorofare, New Jersey (Gloucester County).

58. In 2016, 2017 and/or 2018, plaintiff purchased one or more Products for personal consumption, for no less than $5.99 per product, excluding tax, within this district and/or State.

59. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

60. Plaintiff would purchase the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

61. The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who purchased any Products with actionable representations during the statutes of limitation.

62. A class action is superior to other methods for fair and efficient adjudication.

63. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

64. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

65. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

66. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest.

69. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

70. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<div align="center">New York General Business Law ("GBL") §§ 349 & 350</div>

71. Plaintiff and John Doe plaintiffs representing other states, incorporates by reference all preceding paragraphs.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

72. Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

73. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

74. Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

75. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

76. Plaintiff incorporates by references all preceding paragraphs.

77. Defendant misrepresented the composition of the Products.

78. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

79. This duty is based on defendant's purported position as a learned intermediary in the production and sale of Italian tomatoes.

80. Defendant negligently misrepresented and/or negligently omitted material facts.

81. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

82. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

### Breach of Express Warranty and Implied Warranty of Merchantability

83. Plaintiff incorporates by references all preceding paragraphs.

84. Defendant manufactures, packages, distributes and sells Products which purport to be described as Certified San Marzano tomatoes.

85. This warrants to consumers that the "certification" refers to the most significant attribute of the Products – whether they are the actual certified San Marzano as opposed to a standard peeled tomato.

86. The Products warranted to plaintiff and class members that they contained the organoleptic, sensory, physical and other attributes which they did not.

87. Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

88. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

89. The Products were not merchantable in their final sale form.

90. Plaintiff and class members relied on defendant's claims, paying more than they would have.

### Fraud

91. Plaintiff incorporates by references all preceding paragraphs.

92. Defendant's purpose was to mislead consumers who seek products which have the substantive quality denoted by labeling tomatoes "Certified [Italian-sounding name]" since it is plausible that the certification will refer to the composition and identity of the tomatoes in their final form – not if one tiny aspect of the tomato's history was "certified."

93. Defendant's intent was to secure economic advantage in the marketplace against competitors.

94. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

### Unjust Enrichment

95. Plaintiff incorporates by references all preceding paragraphs.

96. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: February 19, 2019

    Respectfully submitted,

    Sheehan & Associates, P.C.
    /s/Spencer Sheehan
    Spencer Sheehan (SS-8533)
    505 Northern Blvd., Suite 311
    Great Neck, NY 11021
    (516) 303-0552
    spencer@spencersheehan.com

    Levin-Epstein & Associates, P.C.
    Joshua Levin-Epstein
    1 Penn Plaza, Suite 2527
    New York, NY 10119

2:19-cv-00974
United States District Court
Eastern District of New York

Ricardo Sibrian individually and on behalf of all others similarly situated

                                    Plaintiff

- against -

Cento Fine Foods, Inc.

                                    Defendant

## Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 19, 2019

                                                                      /s/ Spencer Sheehan
                                                                       Spencer Sheehan