# EXHIBIT M

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

## Certification of Translation Accuracy

Translation of **"GIUSEPPE NAPOLETANO - SENTENCE"** from **"ITALIAN"** to **"ENGLISH"**

We, Rev.com, Inc., a professional translation company, hereby certify that the above-mentioned document(s) has (have) been translated by experienced and qualified professional translators and that, in our best judgment, the translated text truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Rev.com, Inc. assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.

David Abrameto, VP of Operations

Rev.com, Inc.

Dated: 14 June 2019 17:41:41



Page 1 of 17

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

| | |
|---|---|
| No. 210/2015 General Registry     No. 6410 2010 General Criminal Records Registry<br><br>No. 1040 2019 Sentence Registry | Filed today<br>05-21-2019<br>Clerk<br>[Signature] |
| | Notice and abstract in absence notified on<br>_____<br>_____ |
| **I T A L I A N   R E P U B L I C**<br>**IN THE NAME OF THE ITALIAN PEOPLE**<br><br>On May 15th, 2019, the Courthouse of Nocera Inferiore, single criminal section, comprised of a sole judge, Anna Allegro, with the intervention of the Public Prosecutor, Francesco Spiezia, and with the assistance of clerk Sabrina Amabile ruled the following | Proposed appeal on<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ |
| **J U D G M E N T**<br><br>in the criminal proceedings against:<br>1) Giuseppe Napoletano, born on 06.10.1968 in San Valentino Torio, with address for service, pursuant to art. 161 of Criminal Procedure Code, at the legal office of company "Solania s.r.l." in Sarno, in via Provinciale, n. 36. Free, present, defended by attorneys Silverio Sica and Giovanni Annunziata: | Communicated to the Criminal Investigation Department on<br>_____ |
| 2) Eugenio Napoletano, born on 02.27.1933 in San Valentino Torio, with address for service, pursuant to art. 161 of Criminal Procedure Code, at the legal office of the cooperative "Solania s.c.r.l." in Sarno, in via Provinciale, n. 40. Free, absent, defended by attorneys Silverio Sica and Giovanni Annunziata; | Became final on<br>_____<br>_____ |
| 3) Amalia Cirella, born on 08.20.1968 in Naples, and with address for service, pursuant to art. 161 of Criminal Procedure Code, in Santa Maria a Vico, in via Astolella, n. 52. Free, present, defended by attorneys Angelo Trombetta and Carlo De Stavola. | Enforceable abstract<br>Public Prosecutor _____<br>Questura _____<br>Evidence _____ |
| | Form drafted on<br>_____ |
| **Conclusions of parties**: as per minutes of hearing.<br><br>**DEFENDANTS,**<br><br>[Stamp: Fee paid via stamp duties in the amount of EUR17.50 affixed on the original file/in court. Today 06/06/2019. Clerk], [Signature] | Bill of costs drafted on<br>_____ |
| | C.P. No. _____<br><br>[Signature] |
| see annex | |

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

*Eugenio NAPOLETANO – Giuseppe NAPOLETANO – Amalia CIRELLA*

**A) of the crime provided in and punished in accordance with articles 81-110---112-515-517 quater of Criminal Code** (-commercial fraud in the sector of "San Marzano DOP tomato"), as they were acting jointly, having the aforementioned positions and showed behaviors indicated in the following paragraphs and, in particular, **Eugenio Napoletano**, having the position of **legal representative and manager of the Cooperative Solania scarl** – **Giuseppe Napoletano** as **legal representative of "Solania srl**, *an associated company in charge of selling the product which apparently came from the cooperative,* in exercising a commercial activity, they conducted suitable actions which were aimed, in an unequivocal manner, at putting in circulation, selling and delivering to buyers and consumers in Italy and abroad, a food product that was different in terms of origin and quality compared to what had been declared and agreed upon, namely several thousands of cans tomatoes were falsely passed off as *"San Marzano DOP tomato",* displaying counterfeit indications and names, and in reality they did not state said origin in accordance with DOP Standards of identity;

-in this case, for the purpose of fictitiously making it appear that the standards of identity and origin of San Marzano tomato were in order:

-*Eugenio Napoletano and Giuseppe Napoletano* filled out or ordered to be filled out*,* with a false signature, in full, of apparent farmers-manufacturers Natalina Cascella, Pasquale Laudisio, Angelo Raione, Adelaide Corrado, Michele de Filipo, Domenico Ferrante, Concetta Ingenito, Antonio Lenza, Antonio Odierna and Giuseppina Sirica, the application form to join the product control system having a protected designation of San Marzano Pomodoro of the Agro Nocerino-Sarnese area - agricultural section which were subsequently sent to Ismecert of Naples;

*in particular it is about:*

1) **144,000** cans placed in 12,000 boxes – weighing 28 ounces, with the brand label **CENTO POMODORO SAN MARZANO DELL'AGRO SARNESE-NOCERINO**;
which were manufactured by the Cooperative Solania scarl, sold for export from the port of Naples by the associated company Solania srl to the American company buyer ALANRIC FOOD DISTRIBUTORS for distribution on the American market, and they contained peeled tomatoes different in terms of origin and quality from what was falsely indicated on labels – displaying, in a specific and counterfeit manner, actually in order to deceive the buyers' good faith, the false indication of the following ingredients: "San Marzano DOP tomato" and "San Marzano DOP organic tomato" whose designation of origin is protected by Regulations (EC) no. 1263/96 of the Commission dated 07.01.1996 which protects San Marzano tomato from the Agro Nocerino-Sarnese area,

2) **1,080** cans of peeled tomatoes, 3 kg each, – with the label "Solania San Marzano tomato [illegible] Sarnese Nocerino DOP" (displaying the factory code DLG7 which identifies the processing company Di [illegible] and pertaining to the production lot A227 which were sold for export from the Port in Naples by the associated company Solania srl to the Indian company buyer AGRIM SALES [illegible] *displaying, in a specific and counterfeit manner, actually in order to deceive the buyers' good faith, the false indication of the following ingredients: "San Marzano DOP tomato" whose designation of origin is protected by Regulations (EC) no. 1263/96 of the Commission of 07.01.1996 which protects the San Marzano tomato of the Agro Nocerino-Sarnese area,*

-the act committed with the participation of **Amalia Cirella** <u>inspector of the certifying body Ismecert</u> in charge of performing verifications regarding standards of identity, and who, *upon instigation of Giuseppe Napoletano and Eugenio Napoletano* – both masters of the criminal intent – falsely guaranteed – showing misleading behaviors

described better in the following paragraphs – the existence of lands cultivated with San Marzano tomato according to the rules of standards of identity, falsely made to appear that it was used as raw material of the finished product sold as San Marzano DOP tomato (manufactured by the Cooperative Solania scarl and sold by associated Company Solania srl); in fact she also participated and performed the same criminal intents, putting in place suitable actions aimed at unequivocally delivering to the buyer/ consumers products that were different in terms of origin and quality from the one indicated on the label, hence in violation of norms that protect DOP products harming the consumer who is persuaded to purchase a product which, in terms of quality and price, is different from a DOP product.

*Verified in Naples and the Agro Nocerino-Sarnese in November 2010*

**Eugenio NAPOLETANO – Giuseppe NAPOLETANO – Amalia CIRELLA**

**B) of the crime provided in and punished in accordance with articles 81-110---112-56-515-517 quater of Criminal Code** *(attempted commercial fraud in the sector of San Marzano DOP tomato)*, as they were acting jointly in their respective positions and showed behaviors indicated in previous paragraphs and, in particular, **Eugenio Napoletano**, having the position of *legal representative and manager of the Cooperative Solania scarl* – **Giuseppe Napoletano** as *legal representative of "Solania srl*, an *associated company in charge of selling the product which apparently came from the cooperative,* in exercising a commercial activity, they conducted suitable actions which were aimed, in an unequivocal manner, at putting in circulation, selling and delivering to buyers and consumers a product that was different in terms of origin and quality compared to what had been declared and agreed upon, meaning several thousands of cans of tomatoes were falsely passed off as "San Marzano DOP tomato", displaying counterfeit indications and names, and in reality they did not state said origin in accordance with DOP Standards of identity;

in particular it is about:
- 1) **1,225,356** packages of peeled tomatoes stored *in three warehouses of Solania srl located in San Valentino Torio Municipality,* manufactured and sold by the Cooperative Solania to the associated company Solania srl as "San Marzano DOP tomato" and destined to subsequent fraudulent sale to third parties, according to the consolidated illegal business practice, through the pre-ordered affixing of fraudulent labels displaying the false indication of the following ingredients: "San Marzano DOP tomato" or "San Marzano DOP organic tomato"; a product which was anyway different from what had already been displayed in documents regarding the traceability and tracking of products (Delivery orders certifying the provision of raw material from agricultural manufacturers to the processing Cooperative Solania which reported the express fraudulent note "San Marzano tomato" – manufacturing planner and daily manufacturing card at the Cooperative Solania certifying fraudulent entry (provision of San Marzano tomato – documents/sale invoices from the Cooperative Solania to Solania srl falsely reporting the wording San Marzano DOP Tomato);

2) **223,000** cans of peeled tomatoes that result to have been manufactured by the Cooperative Solania and subsequently purchased by Solania srl which stored them for subsequent fraudulent sale to third parties at the **warehouse in Nocera Inferiore of the warehouse company Meridionali di Nocera Superiore,** peeled tomatoes that were marked with the tracking alphanumeric code of the product related to the Cooperative Solania scarl (SL1) but which in reality did not turn out to be actually manufactured by said company, as the corresponding raw material did not turn out to have been delivered to the systems; as this is about a product destined for subsequent fraudulent sale to third parties, according to the consolidated illegal business practice, through the pre-ordered affixing of fraudulent labels displaying the false indication of the following ingredients: "San Marzano DOP Tomato" or "San Marzano DOP organic tomato";

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
Member # 252626

-the act committed with the participation of **Amalia Cirella** <u>inspector of the certifying body Ismecert</u> in charge of performing verifications regarding standards of identity, and who, upon instigation of Giuseppe Napoletano and Eugenio Napoletano – both masters of the criminal intent – falsely guaranteed – showing misleading conducts described better in the following paragraphs – the existence of lands cultivated with San Marzano tomato according to rules of standards of identity, falsely made to appear that it was used as raw material of the finished product sold as San Marzano DOP tomato (produced by the Cooperative Solania scarl and sold by associated Company Solania srl); in fact she also participated and performed with the same criminal intents, putting in place suitable actions aimed at unequivocally delivering to the buyer/ consumers products that were different in terms of origin and quality from the one indicated on the label, hence in violation of norms that protect DOP products harming the consumer who is persuaded to purchase a product which, in terms of quality and price, is different from a DOP product.

*Verified in San Valentino Torio and Nocera superiore in November 2010*

**Amalia CIRELLA – Giuseppe NAPOLETANO – Eugenio NAPOLETANO**

**C) of the crime provided in and punished in accordance with articles 110-81 of CPV code -479-61 no. 2 Criminal Code** because **Amalia Cirella**, as an agronomy inspector appointed *by the certifying body ISMECERT* to perform inspection and provide certification for lands cultivated with the "San Marzano DOP tomato" in the Agro Nocerino-Sarnese, during a field inspection conducted on July 20, 21 and 22, 2010 on lands located in Sarno, San Marzano sul Sarno and San Valentino Torio Municipalities, with more enforceable actions of the same criminal intent and for the purpose of allowing the consumption of commercial frauds referred to in previous paragraphs, falsely certified, with specific contextual verification report of Farmers of San Marzano DOP Tomato in the Agro Nocerino-Sarnese area, having positively verified the compliance of surfaces and cultivated varieties as well as cultural techniques described by standards of identity, and therefore the presence in the field of the product called *San Marzano DOP tomato; this was committed upon instigation and determinacy of the aforementioned Giuseppe Napoletano and Eugenio Napoletano,* interested to falsely show the cultivation of San Marzano DOP tomato on agricultural lands intended for the Cooperative Solania scarl for subsequent sale conducted by Solania srl – thus proving that both were masters of the pre-ordered fraudulent plan, creators of the entire criminal intent aimed at carrying out commercial frauds referred to in previous paragraphs, namely several 100 kilograms of tomatoes destined for export in Italy and abroad, illegally sold as "San Marzano DOP tomato", in reality manufactured only formally according to specifications/standards of identity referred to in *Regulations (EC) [illegible] of the Commission dated 07.01.1996* which protects San Marzano tomato from the Agro Nocerino-Sarnese area, but which in fact did not have this origin and quality;

<u>*and in particular:*</u>

-*Amalia Cirella, Ismecert inspector,* drafted a false DOP agricultural control report on 07.22.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by farmer **Natalina Cascella** on the plot owned by **Anna Bari** (fl. 12 part. 196 of Sarno Municipality)**;**

-*Amalia Cirella*, Ismecert inspector, drafted a false DOP agricultural control report on 07.21.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Angelo Rainone** on *plots 890 and 891 of fl. 2 of San Valentino Torio Municipality*;

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
Member # 252626

*-Amalia Cirella*, Ismecert inspector, drafted a false DOP agricultural control report on 07.20.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Adelaide Corrado** on *plots 384 and 23 – fl. 27 of Sarno Municipality*;

*-Amalia Cirella*, Ismecert inspector, drafted a false DOP agricultural control report on 07.19.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Michele De Filippo** on *plot 52 – fl. 27 of Sarno Municipality*;

-Amalia Cirella, Ismecert inspector, drafted a false DOP agricultural control report on 07.19.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Domenico Ferrante** on additional *plot fl. 2 no. 742 of San Valentino Torio Municipality, as well as on lands fl. 2 no. 39 and 385 which were actually cultivated*;

-Amalia Cirella, Ismecert inspector, drafted a false DOP agricultural control report on 07.19.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Concetta Ingenito** on *plots fl. 28 plot no. 3 and 1341 and fl. 27 no. 483 of Sarno Municipality*;

-Amalia Cirella, Ismecert inspector, drafted a false DOP agricultural control report on 07.20.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Antonio Lenza** on *plots fl. 23 plot no. 286 of Sarno Municipality* and fl. *4 plot no. 602 of San Valentino Torio Municipality;*

-Amalia Cirella, Ismecert inspector, drafted a false DOP agricultural control report [illegible] of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Antonio** [illegible] on *plots fl. 4 plot no. 88 and 89 of San Valentino Torio municipality; and fl. 29 no. 2499 and 2500 of Sarno Municipality*;

-Amalia Cirella, Ismecert inspector, drafted a false DOP agricultural control report on 07.21.2010, instigated by Eugenio and Giuseppe Napoletano, certifying, contrary to the truth, of having positively verified the compliance of surfaces and cultivated varieties as well as the cultural technique described by the standards of identity and therefore the actual cultivation of San Marzano tomato on the field, performed by **Giuseppina Sitica** on *plots fl. 27 plot no. 440 of Sarno Municipality*;

*In Sarno, San Marzano San Valentino [illegible] on the dates reported above in the month of July 2010 (July 19, 20, 21 and 22) during inspections [illegible] on the field.*

**Giuseppe Napoletano – Eugenio Napoletano**

**D) of the crimes provided in and punished in accordance with articles 110-81 of CPV code - 483, 61 no. 2 of Criminal Code (with regards to art. 76 of Presidential Decree 445/2000)** because they acted jointly and in order to perform the crimes referred to in the paragraphs above, drafted and submitted, affixing apocryphal signatures of farmers/ manufacturers, several false declarations in lieu of affidavit (pursuant to art. 47 of Presidential Decree no. 445 of 12.25.2000), to be attached to applications for joining the control system of the San Marzano DOP Tomato of the Agro Nocerino-Sarnese area submitted at Ismecert, for the 2010 transformation campaign of the San Marzano DOP Tomato of the Agro Nocerino-Sarnese area, in which, contrary to the truth, facts were guaranteed and the record was intended to prove said truth, or the material availability and management of lands indicated for the production of San Marzano DOP according to standards of identity;

In particular:

- it was shown in a *false declaration in lieu of affidavit dated May 31, 2010* bearing the apocryphal signature of **Domenico Ferrante** the actual cultivation of San Marzano tomato by the aforementioned on *plot fl. 2 no. 742 of San Valentino Torio Municipality, and lands fl. 2 no. 39 and 385 were actually cultivated as well;*

- it was shown in a *false declaration in lieu of affidavit dated July 29, 2010* bearing the apocryphal signature of **Concetta Ingenito** the actual cultivation of San Marzano tomato by the aforementioned on *plot fl. 28 plot no. 3 and [illegible] and fl. 27 no. 483 of Sarno Municipality;*

- it was shown in a *false declaration in lieu of affidavit dated July 29, 2010* bearing the apocryphal signature of **Giuseppina Sirica** the actual cultivation of San Marzano tomato by the aforementioned on *plot fl. 27 plot no. 440 of Sarno Municipality;*

- it was shown in a *false declaration in lieu of affidavit dated July 29, 2010* bearing the apocryphal signature of **Antonio Lenza** the actual cultivation of San Marzano tomato by the aforementioned on *plots [illegible];*

- it was shown in a *false declaration in lieu of affidavit dated July 29, 2010* bearing the apocryphal signature of **Michele Di Filippo** the actual cultivation of San Marzano tomato by the aforementioned on *plot 52 [illegible] of Sarno Municipality;*

[illegible]

- it was shown in a *false declaration in lieu of affidavit dated July 29, 2010* bearing the apocryphal signature of **Michele Di Filippo** the actual cultivation of San Marzano tomato by the aforementioned on *plot 52 – fl. 27 of Sarno Municipality;*

*In Sarno, San Marzano San Valentino Torio on dates reported above and in the months of May and July 2010*

HAVING IDENTIFIED THE INJURED PERSONS
IN CONSORTIUM OF PROTECTION OF SAN MARZANO DOP TOMATO OF THE AGRO NOCERINO AREA c/o the law firm of attorney [illegible] situated in Nocera Inferiore in via A. Barbarulo n. 71

*Highlighting the acquisition of the following sources of evidence:*
1. C.N.R. no. 85/1-2010; no. 85/18-2010; no. 85/26-2010 of the Comando CC NAC Salerno;
2. annotation of Attorney General 85/40-2010 – 85/45-2010 CC NAC Salerno
3. search and seizure reports no. 85/2-85/19-2010 CC NAC Salerno

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
ata
Member # 252626

*All other investigative documents found in the file of the Public Prosecutor.*

**Having seen articles 416, 417 of the Criminal Procedure Code;**

**REQUESTS**

**the issue of a decree ordering the judgment of the aforementioned defendants for the committed crimes indicated above**

**SENDS**

to the Registration Office to perform all the necessary procedures and, in particular, to send, together with this request, the file containing the news of crime, the documents related to the investigations that had been carried out and the reports of any proceedings that were carried out before the Preliminary Investigations Magistrate.

Nocera Inferiore, 03/01/2013

**DEPUTY PUBLIC PROSECUTOR**
**([Illegible] Montefusco)**
[Signature]

[Stamp: illegible], [Signature]


**Law and Fact**
With a ruling of the judge for preliminary hearing on 03.01.2013, defendants were referred to this Courthouse consisting of a single judge, to answer for the crimes referred to in the introduction.
Proceedings were organized in different hearings with the almost constant presence of defendant Giuseppe Napoletano and an alternate presence of the other two defendants and also present were civil parties Consorzio Tutela Pomodoro San Marzano [Consortium for the Protection of San Marzano Tomato], ISMECERT and Consumer Associations, in the following succession: at the first hearing held on 04.12.2015 preliminary matters regarding the invalidity of charges were presented and the Court deferred the decision to be ruled at the hearing of 12.01.2015. Hearing of 12.01.2015 was deferred to the hearing of 04.27.2016 due to a different composition of the court. This hearing was deferred to 06.15.2016 due to inefficiency of the sound recorder. Both this hearing and the next one were deferred due to different composition of the office and the suspension of the limitation period was wrongly ordered since witnesses were not present and the judge was a different person hence no useful activity could have taken place; the hearing of 12.13.2016 was deferred due to a defendant's illness without stating the suspension of the limitation period (but anyway equal to 55 days, and the deferment was set on 02.07.2017); the hearing of 02.07.2017 was deferred due to the absence of witnesses and only at the hearing of 03.15.2017 after preliminary matters were rejected, the trial stage was finally opened with the reading of charges and acceptance of measures of inquiry, both records and oral means of inquiry, as inferred respectively by the parties and a deferment was ordered due to the absence of witnesses. The hearing of 04.12.2017 was a mere deferment whereas at the hearing of 05.10.2017 a large set of documents was submitted by the Public Prosecutor hence the hearing was deferred, due to simultaneous obligation of defense attorneys, to 05.30.2017 which had

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
Member # 252626

been requested, by mutual consent, in order to allow contextual examination and counter-examination of the witness of the Criminal Investigation Department. The hearing of 06.13.2017 was indeed in order to interrogate the witness of the Criminal Investigation Department, warrant officer Antonio Spinelli who belonged to the Anti-fraud Unit of the Carabinieri of Salerno who provided information on performed investigations, from the very beginning to additional developments, which allowed the procurement of documents, information and inspections which resulted in seizures, and finally resulted in the reveal of a real fraudulent system in which today's defendants were involved, each in their respective position, and behaving in the way described in criminal charges above; the hearing of 09.19.2017 was deferred due to different composition of the office; at the hearing of 10.11.2017 witness Luigi Frusciante was heard; at the hearing of 10.31.2017 with the parties' consent the statements made by persons indicated by the Public Prosecutor from number 5 to 36 on the list were procured (with a consequent waiver to the examination and annulment of the court order upholding a motion); at the hearing of 12.06.2017 the witness of the Public Prosecutor Federico Weber, at that time the director of ISMECERT, was heard; at the hearing of 02.13.2018, as the judge was replaced, the consent for the usability of records obtained in a different composition was expressed; at the hearing of 04.10.2018 the Public Prosecutor gave his consent to the procurement of legal advice from the defense attorneys of Giuseppe and Eugenio Napoletano; the hearing of 07.11.2018 registered the mere deferment in order to allow the presence of the Public Prosecutor; at the hearing of 10.03.2018, after receiving consent, the defendant Cirella and the witness of her defense attorney, Donato Stanca, were heard with consequent procurement of his written document and, at the parties' joint request, the court ordered a deferment for the examination of defendant Giuseppe Napoletano and for discussion at the hearing of 12.19.2018. Also this last hearing, in the presence of the only defendant, Cirella, was deferred as the co-defendants' defense attorney was hindered by a coeval professional obstacle with suspension of limitation periods.

The hearing of 01.23.2019 was deferred to today for the examination of defendants and discussion, upon the parties' request, with suspension of limitation periods.

At today's hearing, therefore, defendant Giuseppe Napoletano was examined, who claimed to be innocent (analyzing the individual prosecution propositions and anyway highlighting the full compliance of the seized product at San Marzano Doc, also explaining the double labeling as obtained by another company and, anyway, proposing a production lower than the one allowed, without prejudice to the compliance of the product to the San Marzano tomato for which the certification had been issued), having closed the preliminary investigation and usability of procured records, the parties orally discussed the case mentioning their final conclusions as shown by separate minutes.

The Court withdrew to chambers and in the end ruled the judgment, reading, during the hearing, the ruling and reserving the submission of reasons to ordinary terms.

On the merit the Judge notices that the procured results allow a distinction to be made between the procedural positions of the defendants, being able to separate the position of Cirella on one side and the other two on the other side, given that the same arguments expressible on the basis of the collected material, having surfaced beyond any reasonable doubt that in terms of time and place, expressed in the charges, the facts were verified in the sense proposed by the prosecution, therefore defendants Giuseppe and Eugenio Napoletano, in their respective positions, managed things as stated in the criminal charges.

We have to start by saying that the probative collection is very big and indicative, and uniquely oriented. It consists, first of all, of statements provided by witness **warrant officer Antonio Spinelli** who provided every investigative detail performed after receiving a report that in the port of Naples there were labeled containers

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
Member # 252626

with peeled tomatoes bearing the wording of [illegible] San Marzano DOP ready to be shipped to the United States. In fact samples of this product were collected for technical and scientific investigations performed in this case. From there onwards there were investigations which showed a series of irregularities reported analytically in paragraphs a), b) and d) attributed to defendants Giuseppe and Eugenio Napoletano, substantially consisting in the verified non-existence of the same supplies of raw material and related provisions or due to lack of tomato crops, contrary to indications which resulted from documents used by the defendants in order to obtain quality certification. The witness started by saying that San Marzano tomato is subject to protection through ISMECERT (certifying body) which prepared procedural guidelines with the provision, among other things, of a series of verifications for the acknowledgment of compliance of the aforementioned productions which intend to obtain said quality certification. He also stated that during the sale stage each can had a label and an identification number regardless of the manufacturing company. Having procured productions with the number of certified pieces, ISMECERT performs an inspection at the factory, certifying the number of pieces for a given lot which had that particular code. When the company intends to sell the product, same company submits a request to the Consortium of protection that assigns a *range* of numbers of available pieces based on the certificates drafted by ISMECERT and said numbers could be used exclusively for that label (or for that brand).

So at the time of inspections done at Solania, they had encountered a number of pieces way higher than those certified by ISMECERT, so much so that the entire production was seized, later partially revoked with consequent return, after a downgrade (*i.e.* loss of designation).

Then they procured the applications to join the consortium submitted by manufacturers and inspection reports which had been drawn up by inspectors while "on the field". The warrant officer explained the procedure provided in this case: indeed for each year the manufacturer communicates the plots and surfaces to be designated to that type of tomato and then an agronomist from ISMECERT goes to that field to verify if indeed the crops exist and the field has potential to be cultivated. Performed investigations had revealed that many manufacturers had falsely self-certified that they owned some parcels of land, and these were the lands that had been certified by inspector Cirella.

He was also stated that the Cooperative Solania asrl, represented by Eugenio Napoletano, manufactures the cans (which have an SL1 alphanumeric code which identifies it on the products and the factory initials), whereas Solania SRL, represented by Giuseppe Napoletano, is the company that sells the product.

In relation to the observed investigation findings against which the defense provided nothing, some procedural conclusions can be drawn with regards to individual charges mentioned in paragraphs A) and B) which appear to be proven, with regards to the *merit of the petition* and enacting elements of the charged crimes.

Indeed, with regards to paragraph A) (see pages 13-19 of hearing minutes dated 06.13.2017), and especially items 1 and 2 of the same charge, the statements provided by the warrant officer with regards to the deceitfulness of the application form of manufacturers Natalina Cascella, Pasquale Laudisio, Angelo Rainone and Giuseppina Sirica since the lands indicated by the aforementioned were wither not designated for tomato cultivation or did not belong to the aforementioned persons.

Likewise, with regards to the crime referred to in paragraph B) (see pages 24-41 of the mentioned hearing), the same warrant officer stated that those who had submitted the application form to join the Consortium - analytically indicated in the criminal charge - were not owners of the indicated plots or those plots were not designated for tomato cultivation.

No other different conclusions can be formulated on the basis of statements provided by witnesses Frusciante and Weber who do not contradict the investigations of the Criminal Investigation Department referred to above,

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

or substantially abridged in data to be considered procedurally procured regarding the unavailability of lands or in the failure to plant tomato crops on those same plots, vice versa only records showed that the lands had been cultivated with tomato and/or the records showed the availability of suppliers. In particular **witness Frusciante**, professor of agricultural genetics (whose statements dated 10.18.2011 were procured with the parties' consent and waiver from the Public Prosecutor to direct examination), advanced a mere scientific and study hypothesis, certainly not actually verified for this particular case. Indeed the witness reported, and started by saying on this point, that he had not performed any specific investigation on the fact that the consortium had identified 4 ecotypes that could be cultivated, however the standards of identity also contained improved guidelines, understanding with this expression *"subject to a general treatment in order to improve them"* but without specifying the limits *"it is possible to perform crossings (...) and it is also possible to use hybrids"* (paragraph 5 of hearing dated 10.11.2017). While information was being collected, Frusciante stated that *"the guidelines (...) such as Kiros and San Marzano 2 and improved guidelines are pure guidelines and can be subject to self-reproduction, in the sense that the farmer* [obtaining the seeds from berries] *can always have plants of the same type"* unlike hybrid seeds: until 2010 self-reproduction had not been contemplated and all the guidelines, even those improved ones, are traceable from a molecular genetic standpoint, having to present *"a genome percentage of the San Marzano ecotype"*, however, the percentage was not indicated in the standards of identity and represented a subjective evaluation.

**Witness Weber**, at that time director of ISMECERT, did not provide anything specific since substantially he clarified the functions of the certifying body, inserted in a system of voluntary certification (and he also dealt with inspections for the acknowledgment of the DOP trademark and, upon request, performed investigations and registered, on specific lists, authorized manufacturers to either supply raw material or transform it and use the protected trademark), as well as the persons who, with regards to the certifying body, contacted private professionals and, finally the position of inspectors (freelancers outside the certifying body or not directly employed by it). In this specific case, therefore, agricultural manufacturers would register their lands and provided products to processors who, subject to control, could use the DOP trademark. The application form of the agricultural manufacturer was supposed to be accompanied by a map and cadastral data of the land cultivated with tomato and the inspector, who was not an employee of the certifying body, was appointed to perform an inspection in order to verify if indeed San Marzano tomato was actually cultivated on that land. Plots were identified using maps and basically it was the farmer, or his delegate (*"often it was the manager of the cooperative* (...) *and normally there was also the farmer"*) who identified and showed the inspector the area dedicated to San Marzano tomato. Therefore the inspector filled out a report signed by the applicant and the farmer and some inspectors also took photos. Usually the inspectors did not perform further inspections regarding the ownership of the land, based on the statements of the person accompanying them. But he added that at the time of the events, personnel did not have GPS equipment. Upon objection of the Public Prosecutor, he said that probably Mrs. Cirella was almost always accompanied by Giuseppe Napoletano and not by farmers when she performed her inspections (page 9 of hearing dated 12.06.2017).

When asked by the defense, Mrs. Cirella reiterated that there was no employer-employee relationship between the certifying body and inspectors but they were paid after issuing an invoice with a *"VAT registration number"* and that their inspection, and hence their attention was mostly directed to the crop and not to identifying a plot because, in a certain sense, they assumed that the farmer had submitted accurate documents; she also clarified that not always the same inspector supervised the entire production, and that in that case there were no major non-conformities. After being questioned by other defense attorneys, she specified that the responsibility for the

accuracy of the application form belonged to the farmer, whereas the cooperative collected all of the application forms and sent the lists; she reiterated that the photos served to identify the agricultural product and not the land and that the certifying committee would go on to check the mass balance ("*namely how many tomatoes entered and how many existed*"). She could not say how many inspections had been performed at the coop. Solania. She also specified that file checks were based on random samples and not on individual plots and the productions of the Solania, *if they had been certified, had a positive result; and later on she explained that the processing party cannot know who the inspector was as they worked in shifts.*

The **defendant Cirella**, while being examined, complained that she was innocent claiming that she had done several inspections as she obviously was in charge of other production chains as her position had been that of an outsourced professional agronomist on behalf of Ismecert for ten years, from 2002 to 2012. As for the sequence of events that she was involved in, she had done inspections on as many as 109 plots which belonged to different owners and anyway under different regulations placed in different areas of the Agro Nocerino-Sarnese area after having collected related files from Ismecert which contained, among other things, the application form, mentioning that oftentimes suppliers had already been registered and certified by Ismecert who already had their documents. She explained how inspections were done: after a first stage of studying the paper documents she went to the fields, being accompanied by Giuseppe Napolitano who, in turn, had been appointed by the Cooperative Solania, and only used maps and land registry records (as at the time she did not have satellite-based instruments which were introduced only the following year) for the inspections performed from July 19 to July 22, 2010. At that time she had verified, in addition to Solania, four other cooperatives. She highlighted how the criticized anomalies that appeared in these proceedings, equal to 7%, which had not been found by her, indeed represent a small percentage compared to the amount of inspections performed at Solania, also given the fact that on the field she was accompanied by Mr. Napoletano. He actually showed her the place where they went, and vice versa the presence of the farmer on said land was not required, as she could go to two/three lands spread over the territory, and at the end of the inspection she drafted a report. Although not mentioned in the standards of identity, she also took photos of the land then sent them to Ismecert. Said photos were duly numbered with reference points of the land, such as an Enel pole, a house, a street for a better identification of the land subject to inspection. So, while on the field she verified the presence of the tomato, the Cirio 3 type, the uncertain development and all the features of leaves and berries were described in documents relating to traceability of plants which would then be transplanted at the right time and also came from authorized nurseries, she also verified the transport document, inserting everything in the file which would afterwards be delivered to Ismecert. After being asked by the defense, she replied that for each inspected plot she received a fee of ten Euros once the inspection ended. Her relationship with Mr. Napoletano was not that of an acquaintance, she had met him while performing her inspections. She claimed that, in the absence of satellite-based instruments, it was not easy to identify the area that she had to inspect simply based on the maps and land registry records which had not been updated.

At the end of the examination, defense filed a brief for the defendant in which basically she reiterated her defensive hypothesis as well as some invoices and, in particular, a statement of Napoletano correcting a plot.

**Witness** consultant **Donato Stanco** gave an account on the geolocation inspection, performed on behalf of defendant Cirella, explaining different transitions in order to reach a conclusion, for fourteen out of fifteen performed inspections, about the coincidence of places inspected by Mrs. Cirella (stated in the inspection reports certifying the presence of San Marzano tomato on the fields) with the ones that he took photos of through the transformation of each cadastral plot from the map abstract, about the Polar and Cartesian coordinates, bringing

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
Member # 252626

a GPS system with him. Finally, comparing the photos he took with the ones that Mrs. Cirella had taken, there was a full coincidence regarding the state of places except for a single plot, the one which belonged to Giuseppina Sirica.

**Defendant Giuseppe Napoletano**, being submitted to examination, at the questions asked by his defense attorneys - as the Public Prosecutor had wavered direct examination -, first of all he started by saying that *"the 144,000 boxes found at the Port of Naples and seized by the Anti-Fraud Unit of Salerno, were legal, the product had been legally labeled with San Marzano tomato"*, it was about lots that had been duly certified by ISMECERT with certificates issued at the end of production. Mr. Napoletano explained the reasons for the different labeling referring to a different year of production. For tomatoes that were supposed to be shipped to India, he stated that he had a legitimate purchase invoice from another company for San Marzano tomato. After the seizure and consequent partial return, they were forced to downgrade the product in order to avoid more serious economic damages in terms of the product's *shelf life*. He said that inspections *"at least with regards to fields* [they were] *100% checked"*. For the year 2010, in particular, they had provided to ISMECERT *"a list of farmers, mentioning plots where San Marzano Tomato was* [cultivated], *more than twenty hectares"*. Ha claimed that rather there was no need to lie about the plots because the "authorized" ones were more than enough (way more than enough) for the needs of the company. He underlined that in the area there are *"many tiny plots"* and it's enough to move a few meters away and you are on a different plot and it is difficult to fully identify the aforementioned plots. He denied having affixed false signatures stating that many of the peasants *"are, at times, also illiterate"* but he mentioned that the application form sent to ISMECERT had to be signed, even though he overlooked who could have signed those records. He *"sometimes went together with Mrs. Cirella, I just accompanied her on the field* (...) *three/four times"*. The forgery charge arises from the erroneous identification of plots, which do not correspond to the people heard by the Criminal Investigation Department.

So, if these are the procured findings, that the judge needs to take into consideration, and therefore based on that data it can be considered that it was proven that San Marzano tomato did not exist or even that the apparent suppliers did not own those plots, as during the summary of witness statements they either denied owning those fields or stated that they did not grow tomatoes; hence the case was to object to the version provided by Giuseppe Napoletano who should have taken it upon himself to prove that error, since it was obvious that he had accompanied Mrs. Cirella on the fields and it was him who knew the surroundings where the San Marzano tomato would actually be planted. Already at the time that he collected the list of application forms of farmers, he was able to perform adequate checks so that the documents were in line with verifiable facts.

As for the crime of ideological forgery, that the defendants were charged with in paragraph C) of the indictment, as hypothesis of ideological forgery of a public official in mutually concerted action with the *extraneous*, the same findings allow us to make a distinction between the positions of defendants Giuseppe and Eugenio Napoletano, on one side, and the position of Mrs. Cirella, on the other side.

With regards to the latter, the Court considers there is room for doubting the malice which characterizes this criminal offense, as we need to recall that the malice in this hypothesis is not in *re ipsa* but must always be rigorously proven. And this is not so much with reference to the purpose of obtaining an advantage for oneself or for others or to cause damage to Public Administration, not observing, as it is known, the lack of collusive relationships with co-defendants Napoletano, hypothetic beneficiaries of Cirella's forgery, as the lack of procuring proof of will incorporated in compliance reports drafted by the defendant or of *immutatio veri*. As a matter of fact, indications obtained from examined witnesses, especially from Federico Weber director of Ismecert and Donato Stanco defense consultant with regards to the methods of identifying areas to inspect (rather empirical

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

and superficial due to the lack of some technical instruments available at that time: undated maps and identification structure of fields), confirmed, with equal dignity towards the prosecution's line of reasoning, the alternative version that false certification of San Marzano tomato cultivation (regardless of the technical dissertation, only theoretical, presented by professor Luigi Frusciante who was heard during the trial stage prior to procuring his statements before the Public Prosecutor or procured with the parties' consent) regarding those fields which surely were not cultivated with tomatoes or they were not owned by the apparent suppliers, based on indications provided by cadastral maps, was a result of error or carelessness on behalf of Mrs. Cirella and not the desire to change the truth. However it appears to be obvious (as it was confirmed by the same defendant) that she was accompanied on the fields by Giuseppe Napoletano, who confirmed even more the inferred difficulty to identify fields that had to be inspected based on mere indications of maps. And this reasoning not only opposes different indications provided by owners or holders of land registry records, whose statements were procured with the parties' consent hence can be legally used as proof, but allows to provide justification or a logical indication to that contrast that initially may seem disturbing while acknowledging, on the basis of collected material, the error in indicating cadastral references to those lands.

It becomes obvious that our legal system does not provide for unintentional documentary forgery, so a correct judicial response is the acquittal of Mrs. Cirella of the crime referred to in paragraph C) of the introduction because the event does not exist, albeit beginning of paragraph of art. 530 of the standard code of procedure.

Same reasonings, for one not procuring evidence on co-interests or different interpersonal relationships, allow us to doubt Mrs. Cirella's participation in other crimes that she is charged with in paragraphs A) and B) described above, as the evidence was not obtained, besides reasonable doubt, that the contribution put in place for the performance of said conducts is the obvious fruit that benefited co-defendants Napoletano. It is hardly necessary to add that precisely the type of relationship that existed between Mrs. Cirella and Ismecert, as she was appointed from time to time to perform inspections, as she was not part of the in-house staff, like the rest of other inspectors, determines by itself, due to the mechanism of shifts of staff in charge of performing inspections, that the same beneficiary would preemptively ignore the person assigned in this case with whom he would eventually reach a pact or fraudulent agreement, not always dealing with the same person though. What fuels the doubt that only occasionally, and while Mrs. Cirella did not know this, Mr. Giuseppe Napoletano, the single person interested in obtaining any benefits, would accompany her to standard places different from those that were on the map so Mrs. Cirella had in fact seen different and standard areas. On the other hand, with regards to the rather empirical methods of inspections (lack of electronic instruments and outdated maps used to identify plots) fuel the doubt regarding Mrs. Cirella's awareness. So, in light of these uncertainties, a correct response is revealed, again in accordance with the beginning of paragraph of art. 530 of Criminal Procedure Code, namely an acquittal ruling stating that she did not commit the crime.

As for the other two defendants, on the other hand, the same considerations cannot be applied, as it has emerged, beyond any reasonable doubt, from the deposition of examined witnesses (or from procured statements), that in terms of time and place stated in the arraignment, the submitted certifications signed by Mrs. Cirella carry obvious ideological deceitfulness. In this regard, in particular, the statements of all the people examined during preliminary investigations are helpful as they, unequivocally, on one hand, denied having signed the application forms and, on the other hand, excluded the fact that they had cultivated on San Marzano plots mentioned in the indictment or that they were cultivating something else or, in fact, that they were not the owners of those plots. As for the version of the defense, that an error was made in identifying the plots or that they were in the immediate vicinity of other lands that were actually cultivated with San Marzano tomato, if it were to be accepted it would lead to

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com
Member # 252626

"forgery with criminal intent" hence to the acquittal of defendants Napoletano, but it does not appear to be sustainable due to lack of any evidence in this regard capable to convince the prosecution that all of this had been done for the unequivocal benefit obtained by co-defendants Napoletano in obtaining the compliance certification. On the other side the confirmed correspondence of lands inspected by expert witness Stanco does not remove the defendants Napoletano from the hypothesis of forgery, since, especially Giuseppe Napoletano as legal representative of the cooperative Solania (that the farmers joined) accompanied Mrs. Cirella during inspections, which coincides with the perfect awareness that the provided data did not correspond to the real situation in fact and in law of verified plots. It is hardly necessary to observe that there is no doubt about the position of defendant Eugenio Napoletano who, although he was apparently more secluded than his son Giuseppe, as manager of the company [illegible] to sell the product, he was just as equally invested as legal manager of the production, and therefore interested and aware of bringing his contribution to the subsequent sale activity, namely to the crimes that they are charged with (in its multiple forms also as reinforcement of another person's criminal intent) fully aware of the forgery this involved.

Again, we cannot doubt the hypothesis of crime due to the public nature of the certificates and their proven efficiency.

Finally, this is an almost paradigmatic hypothesis of authorship as referred to in art. 48 of Criminal Code and, in fact, defendants Napoletano, although they did not hold public-law related positions, misleading a person with certifying powers, they fully contribute to ideological forgery in terms of documents drafted by the inspector appointed by ISMECERT and the acquittal of the latter does not benefit the defendants Napoletano. For mere diligence, it is observed that it cannot have a different qualification, such as forgery in certifications, since the certification drafted by Mrs. Cirella serves the purpose of reaching an institutional purpose of ISMECERT, meaning that the issue of the quality certification, ultimately the action performed by the aforementioned inspector certifies the result of having inspected the lands and has the effect of allowing that result to qualify as a public action and not an administrative certificate.

As for the crimes referred to in paragraphs A), B) and D) it can be said that the evidence for criminal liability was obtained, based on the same material examined above, however without ordering a conviction.

These findings are, in fact, necessary in order to provide information on the reasons for the decision made regarding crimes referred to in paragraphs A), B) and D) which cannot fail to acknowledge a sudden extinctive cause of the same crimes due to limitation period for defendants Giuseppe Napoletano and Eugenio Napoletano which needs to be stated at the end of examining merits in order to exclude the recurrence of one of the conditions prescribed by art. 129 second paragraph of the Criminal Procedure Code and therefore reach an acquittal with regards to one of the considered orders.

In fact, starting from the date of inspection, 07.22.2010, which represents the *dies a quo*, and given the nature and extent of the punishment for offenses referred to in paragraphs A), B) and D), we arrive to 01.22.2018 (which represents the maximum ordinary limitation period) to which we need to add 56 more days due to an illness impediment deducted at the hearing dated 12.13.2016 and until the new hearing dated 02.07.2017 which shifts the date of maximum limitation period to 03.18.2018. On the other hand additional terms due to ordered deferments cannot be cumulated since the hearings set forth hereinafter upon deferment requests of defense attorneys are after the limitation period expires, as pointed out to date 03.18.2018, so it is completely irrelevant with regards to the process and time of limitation period since these are already extinct crimes as the limitation period expired.

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

As mentioned above, on the basis of what emerged from records, none of the hypotheses referred to in the aforementioned provision is applicable, and we have to mention, on one side, that, in terms of a possible existence of prerequisites to reach an acquittal ruling, the Supreme Court mentioned that, in the absence of an extinctive cause for the offense, «... The obligation of the judge to rule a sentence of acquittal postulates that circumstances suitable to exclude the existence of the event, its criminal relevance or that the defendant did not commit it, is shown by records in a manner that cannot be challenged, so that the evaluation that the Judge must perform in this regard belongs more to the concept of "verification", or *"ictu oculi"* perception, than that of an "opinion"» (see Cass.. S.U. pen., judgment no. 35490 of 05.28.2009).

Now moving to the penalty for the offense referred to in paragraph C), currently still formally uncensored, general mitigating circumstances can be conceded due to temporal distance of events, procedural attitude (with the consent to use records and procurement of statements) and the circumstance that the product was anyway adequate for human consumption (so much so that a part of it was also released from seizure, as reported above). This mitigating circumstance is placed, with a judgment of prevalence, in relation to the special aggravating fact as per paragraph C), in light of which the legal provision referred to in art. 69, paragraph 4, and art. 63 of Criminal Code in light of which a judgment of comparison is not possible, hence the recognizability of the simple hypothesis referred to in the first paragraph of art. 479 para. 1 in relation to art. 476 para. 1 of Criminal Code, therefore the basis for calculating and dosing the penalty is done based on the sanction provided for by the challenged legal provision (art. 479, paragraph 2 of Criminal Code ).

The various hypotheses of forgery are placed in continuation of one another, being able to reasonably acknowledge a *unicum* of the criminal intent given temporal contiguity (4 days) and end goal of this criminal direction.

Specifically, in light of the criteria referred to in art. [illegible] of Criminal Code, a final penalty is appraised to be that of two years and two months of imprisonment for each, considering that the minimum basic penalty is three years of imprisonment, reduced to two years given prevailing general mitigating circumstances and continuation. Eugenio Napoletano, given his age (at the time these actions were committed), and due to the imposed penalty and deterrent effect he can benefit of conditional suspension of penalty, under legal conditions (art. 163. paragraphs 1 and 3, Criminal Code).

Pursuant to the law, Napoletano will be convicted to pay legal costs. Also he is convicted to pay damages to the civil parties to be liquidated separately, in the absence of any criterion of determination, as well as costs incurred by the same civil parties at this stage, liquidated as per decision. There are no other elements in order to be able to grant provisional compensations.

It is also stated that the statements made by defendants Napoletano to inspector Cirella were false, hence resulting certificates drafted by the latter from July 19 to July 22, 2010 were false, so the judge orders their complete cancellation in accordance with the law.

The judge also orders the seizure and destruction, in accordance with the law, of what is still under judicial seizure.

**FOR THESE REASONS**

Based on art. 530, paragraph 2 of Criminal Procedure Code

**Acquits**

Amalia Cirella of the crimes that she was charged with in paragraphs A), B) and D) for not having committed the action and crime that she was charged with in paragraph C) because the fact does not exist.

Based on articles 157 ss of Criminal Code and art. 531 of Criminal Procedure Code

**Declares**

Rev.com, Inc.
222 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

that there is no need to proceed against Eugenio Napoletano and Giuseppe Napoletano with regards to the crimes they were charged with in paragraphs A), B) and D) as they are extinguished because the limitation period expired.
Based on articles 533 and 535 of Criminal Procedure Code

## Declares that

Eugenio Napoletano and Giuseppe Napoletano

## Are guilty

of the crime they were charged with in paragraph C), unified under the continuation prerequisite and granting general mitigating circumstances to both, with judgment of prevalence on alleged aggravating circumstance,

## Convicts

each of the aforementioned defendants to two years and two months imprisonment and payment of legal costs. Penalty suspended, according to legal terms and conditions, only for Eugenio Napoletano.
Based on art. 537 of Criminal Procedure Code

## Declares

the false nature of certificates signed by Amalia Cirella on July 19, 20, 21 and 22, 2010 and orders their cancellation, in accordance with the law, and declares the false nature of the signatures referred to in paragraph D) of the introduction.
Based on articles 538 et seq. of Criminal Procedure Code

## Convicts

Eugenio Napoletano and Giuseppe Napoletano, for acting jointly, to pay damages in favor of civil parties, to be settled on another occasion, as well as the repayment in favor of the same parties of costs incurred for appearing and being defended in Court at this current stage, hence the settlement of 1,500.00 Euros for the ADOC [National Association for the Defense and Orientation of Consumers] admitted for support based on the State's costs with decree ruled by the preliminary investigations magistrate on 11.29.2013, of which 220.00 Euros for the study stage, 230.00 Euros for the introduction stage, 500.00 Euros for the preliminary investigation stage and 600.00 Euros for the decision-making stage in addition to 15% and VAT and CPA [Lawyers' Social Security Fund] as per law whose payment is provisionally charged to Inland Revenue, understood as tax refund, and 2,000.00 Euros for each of the other two civil parties, 250.00 Euros for the study stage, 250.00 for the introduction stage, 500.00 Euros for the preliminary investigation stage and 1,000.00 Euros for the decision-making stage, including the increase for various parties, in addition to VAT and CPA [Lawyers' Social Security Fund] and lump-sum contribution in accordance with the law.
Rejects the request for provisional compensations.
Based on art. 240, paragraph 2, Criminal Code

## Orders

the seizure and destruction, in accordance with the law, of what is still under judicial seizure.
Nocera Inferiore. 05.15.2019

[Stamp: Courthouse of Nocera Inferiore. Filed at Court Registry, on MAY 21, 2019. Clerk, Ivana Savastano], [Signature]

Judge,
Anna Allegro
[Signature]

[From page 8 to page 19 there is a signature at the bottom, on the right side, of each page]