EXHIBIT N

N. 210/2015 R.G.    N. 1040/2019 Reg. Sent.

N. 6416/2010 R.G.N.R.

Depositata oggi

21-05-2019

Il Cancelliere

Avviso ed estratto
contumaciale notificato il

_____

_____

_____

# REPUBBLICA ITALIANA

## IN NOME DEL POPOLO ITALIANO

Proposto appello il

-------------------

-------------------

-------------------

L'anno 2019, il giorno 15 del mese di maggio, il Tribunale di Nocera Inferiore, sezione unica penale, in composizione monocratica, in persona della dott.ssa Anna Allegro, con l'intervento del Pubblico Ministero in persona del dott. Francesco Spiezia e con l'assistenza del cancelliere dott.ssa Sabrina Amabile ha pronunciato la seguente

Comunicata al P.G. il

_____

Passata in giudicato il

_____

_____

# SENTENZA

nel procedimento penale a carico di:

1) Napoletano Giuseppe, nato il 10.06.1968 a San Valentino Torio ed elettivamente domiciliato ex art. 161 c.p.p. presso la sede della società "Solania s.r.l." in Sarno alla via Provinciale, n. 36. Libero, presente, difeso di fiducia dagli avv.ti Silverio Sica e Giovanni Annunziata;

2) Napoletano Eugenio, nato il 27.02.1933 a San Valentino Torio ed elettivamente domiciliato ex art. 161 c.p.p. presso la sede della cooperativa "Solania s.c.r.l." in Sarno alla via Provinciale, n. 40. Libero, assente, difeso di fiducia dagli avv.ti Silverio Sica e Giovanni Annunziata;

3) Cirella Amalia, nata il 20.08.1968 a Napoli ed elettivamente domiciliata ex art. 161 c.p.p. in Santa Maria a Vico alla via Astolella, n. 52. Libera, presente, difesa di fiducia dagli avv.ti Angelo Trombetta e Carlo De Stavola.

Estratto esecutivo

P.M. _____

Questura _____

Reperto _____

Redatta scheda il

_____

Redatta nota spese il

_____

C.P. N° _____

**Conclusioni delle parti:** come da verbale d'udienza.

IMPUTATE Corrisposto diritto
mediante marche da bollo

per € ......17,50..........
apposte sull'originale/sull'istanza

Addì .....6/6/18..........
Il cancelliere

v. allegato.

*NAPOLETANO Eugenio-NAPOLETANO Giuseppe–CIRELLA Amalia*

A) del reato p. e p. dagli artt. 81- 110---112- 515- 517 quater- cp ( *frode commerciale nel settore del "pomodoro san marzano dop"* ) , perché in concorso tra loro nelle rispettive suindicate qualità e con le condotte indicate anche ai capi che seguono e, in particolare il *Napoletano Eugenio*, nella qualità di *L.R. e gestore della ditta produttrice Cooperativa Solania scarl* e il *Napoletano Giuseppe* quale *LR della "Solania srl, azienda collegata che si incaricava di commercializzare il prodotto apparentemente fatto provenire dalla prima,* nell'esercizio di una attività commerciale, ponevano in essere atti idonei diretti in modo non equivoco a mettere in circolazione, commercializzare e consegnare agli acquirenti e consumatori sul territorio nazionale ed oltre , un prodotto alimentare diverso per origine provenienza e qualità rispetto a quanto dichiarato e pattuito, ovvero svariate migliaia di barattoli di pomodoro falsamente spacciato come *"pomodoro san marzano dop",* riportante indicazioni e denominazioni contraffatte , in realtà non avente tale origine connessa al rispetto del disciplinare di produzione dop ;

-nella specie al fine di far risultare fittiziamente la regolarità delle procedure del disciplinare e la provenienza del pomodoro san marzano:

-veniva compilato o fatto compilare dal *Napoletano Eugenio* e *Napoletano Giuseppe*, con la falsa firma per esteso degli apparenti coltivatori-produttori Cascella Natalina,Laudisio Pasquale, Raione angelo, Corrado Adelaide, de Filipo michele, Ferrante Domenico, Ingenito Concetta, Lenza antonio, Odierna Antonio e Sirica Giuseppina, il modulo- domanda di adesione al sistema di controllo del prodotto a denominazione protetta pomodoro san marzano dell'agro sarnese nocerino- sez agricoltori successivamente trasmesso all'Ismecert di Napoli ;

*in particolare trattandosi di :*

1 nr. 144.000 barattoli pari a 12.000 cartoni del peso di 28 once, con etichetta a marchio CENTO POMODORO SAN MARZANO DELL'AGRO SARNESE-NOCERINO; *che venivano prodotti dalla Cooperativa Solania scarl commercializzati* in esportazione dal porto di Napoli *dalla collegata Solania srl alla acquirente ditta americana ALANRIC FOOD DISTRIBUTORS per la distribuzione al consumo su quel mercato , contenenti pomodori pelati diversi per origine, qualità e provenienza da quanto falsamente indicato sulle etichette – riportanti, in modo specifico e fraudolento, concretamente atto ad ingannare la buona fede degli acquirenti , la falsa indicazione dei seguenti ingredienti: " pomodoro San Marzano dop" e "pomodoro San Marzano D.O.P. organic " la cui denominazione d'origine è protetta dal Regolamento (CE) n.1263/96 della Commissione del 01.07.1996 che tutela il pomodoro San Marzano dell'agro Sarnese-Nocerino.*

2) nr. 1080 barattoli di pomodori pelati del formato di 3 kg ciascuno- con etichetta "Solania pomodoro san marzano dell'agro sarnese nocerino dop" riportanti codice di stabilimento DLG7 che identifica l'azienda di trasformazione Di Gallo snc ed appartenente al lotto di produzione A227 ) che venivano commercializzati in esportazione dal porto di Napoli dalla collegata Solania srl alla acquirente ditta indiana AGRIM SALES [illegibile]

*riportanti, in modo specifico e fraudolento, concretamente idoneo ad ingannare la buona fede degli acquirenti , la falsa indicazione dei seguenti ingredienti: " pomodoro San Marzano dop" la cui denominazione d'origine è protetta dal Regolamento (CE) n.1263/96 della Commissione del 01.07.1996 che tutela il pomodoro San Marzano dell'agro Sarnese-Nocerino,*

- il fatto commettendo con il concorso di *Cirella Amalia ispettrice dell'organismo di certificazione Ismecert* incaricata dei controlli sul rispetto del disciplinare di produzione  la quale, *su istigazione del Napoletano Giuseppe e Napoletano Eugenio-* entrambi  *dominus* del disegno criminoso- falsamente attestava- con le condotte di falso meglio descritte ai capi che seguono  -  l'esistenza di fondi coltivati come pomodoro san marzano secondo le regole del disciplinare di produzione , falsamente fatto risultare come materia prima del prodotto finito   commercializzato quale pomodoro san marzano dop    (prodotto dalla Cooperativa Solania scarl e commercializzato dalla  collegata Società Solania srl )  ;anch'ella di fatto concorrendo , in esecuzione  del medesimo disegno criminoso ,  a porre in essere atti idonei  e diretti in modo non equivoco a consegnare all'acquirente/consumatori          prodotti  diversi per origine, qualità e provenienza da quella indicata  in etichetta, ed  in violazione delle norme che tutelano i prodotti DOP con danno al consumatore indotto ad acquistare per qualità e prezzo un prodotto diverso da quello indicato come DOP ,  .

*Accertato in Napoli ed agro nocerino sarnese  nel novembre 2010*


## NAPOLETANO Eugenio - NAPOLETANO Giuseppe – CIRELLA Amalia

B) del reato p. e p. dagli artt. 81- 110—112-56- 515-  517 quater cp ( *tentata frode commerciale nel settore del pomodoro san marzano dop* )   , perché  in concorso tra loro nelle rispettive  qualità e con le condotte  indicate anche ai capi che precedono  e, in specie il  *Napoletano Eugenio*, nella qualità di  *LR e gestore della ditta produttrice Cooperativa Solania*  scarl -  il  *Napoletano Giuseppe*  quale  *LR della "Solania srl , azienda collegata che si incaricava di  commercializzare il prodotto apparentemente fatto provenire dalla prima* , nell'esercizio di una attività commerciale , ponevano in essere atti idonei diretti in modo non equivoco  a mettere in circolazione, commercializzare e consegnare agli acquirenti e consumatori un prodotto diverso per origine provenienza e qualità rispetto a  quanto dichiarato e pattuito,  ovvero svariate migliaia di barattoli di pomodoro falsamente spacciato come "pomodoro san marzano dop", riportante indicazioni e denominazioni contraffatte , in realtà non avente tale origine connessa al rispetto del disciplinare di produzione dop ;


in particolare trattandosi di:

- 1) 1.225.356 confezioni di pomodori pelati  stoccati *presso tre depositi della Solania srl siti nel Comune  di San Valentino Torio* , prodotti e venduti da Cooperativa Solania alla  collegata Solania srl come "pomodoro san Marzano dop"   e destinato alla successiva fraudolenta commercializzazione a terzi , secondo la consolidata  prassi aziendale illegale ,  mediante la preordinata  apposizione di etichette fraudolente riportanti la  falsa indicazione dei seguenti ingredienti: " pomodoro San Marzano dop" o "pomodoro San Marzano DOP organic " ; prodotto comunque diverso e da quanto comunque  falsamente già  riportato nei documenti afferenti la rintracciabilità e tracciabilità del prodotti ( Buoni di consegna attestanti il conferimento di materia prima dai produttori agricoli alla Cooperativa Solania trasformatrice riportanti la espressa  fraudolenta menzione "pomodoro San Marzano"  – agenda di produzione e scheda di produzione  giornaliera  presso  la  Cooperativa  Solania  attestante  fraudolentemente

l'ingresso(conferimento di pomodoro san Marzano - documenti/fatture di vendita da Cooperativa Solania alla Solania srl riportanti falsamente la dicitura Pomodoro San Marzano dop );

- 2) nr. 223.000 barattoli di pomodori pelati risultati prodotti dalla Cooperativa Solania ed acquistati successivamente dalla Solania srl che li deteneva per la successiva fraudolenta commercializzazione a terzi presso il deposito di Nocera Inferiore della ditta depositi Meridionali di Nocera Superiore pomodori-pelati che venivano contrassegnati con il codice sifanumerico di tracciabilità del prodotto relativo alla Cooperativa Solania scarl ( SL1) ma che in realtà non risultavano effettivamente prodotti presso la medesima azienda non risultando la corrispondente materia prima in entrata presso gli impianti ; trattandosi di prodotto destinato alla successiva fraudolenta commercializzazione a terzi , secondo la consolidata prassi aziendale illegale , mediante la preordinata apposizione di etichette fraudolente riportanti la falsa indicazione dei seguenti ingredienti: " pomodoro San Marzano dop" o "pomodoro San Marzano DOP organic " ;

-il fatto commettendo con il concorso di *Cirella Amalia ispettrice dell'organismo di certificazione Ismecert* incaricata dei controlli sul rispetto del disciplinare di produzione la quale, su istigazione del Napoletano Giuseppe e Napoletano Eugenio- entrambi dominus del disegno criminoso- falsamente attestava con le condotte di falso meglio descritte ci capi che seguono - l'esistenza di fondi coltivati come pomodoro san marzano secondo le regole del disciplinare di produzione , falsamente fatto risultare come materia prima del prodotto finito commercializzato quale pomodoro san marzano dop (prodotto dalla Cooperativa Solania scarl e commercializzato dalla collegata Società Solania srl ) ;anch'ella di fatto concorrendo , in esecuzione del medesimo disegno criminoso , a porre in essere atti idonei e diretti in modo non equivoco a consegnare all'acquirente/consumatore prodotti diversi per origine, qualità e provenienza da quella indicata in etichetta, ed in violazione delle norme che tutelano i prodotti DOP con danno al consumatore indotto ad acquistare per qualità e prezzo un prodotto diverso da quello indicato come DOP ,

*Accertato in San Valentino Torio e Nocera Superiore nel novembre 2010*

## CIRELLA Amalia- NAPOLETANO Giuseppe - NAPOLETANO Eugenio

C) del reato p. e p. dagli artt.110-81 cpv -479-61 n. 2 c.p. per avere la *Cirella Amalia* , in qualità di ispettore agronomo incaricata dall'*organismo certificatore ISMECERT* di svolgere attività ispettiva e di certificazione dei terreni coltivati a "pomodoro San Marzano DOP" dell'agro sarnese nocerino, in sede di sopralluogo in campo effettuato nelle date 20,21,e 22 luglio 2010 presso i terreni siti nei comuni di Sarno, San Marzano sul Sarno e san Valentino Torio , con più atti esecutivi del medesimo disegno criminoso ed al fine di consentire la consumazione delle frodi commerciali di cui ai capi che precedono , attestato falsamente, con apposito contestuale verbale di controllo Agricoltori DOP Pomodoro san Marzano dell'Agro nocerino sarnese , di avere positivamente verificato la conformità delle superfici e delle varietà coltivate nonchè della tecnica colturale descritta dal disciplinare di produzione , e quindi la presenza in campo di prodotto del tipo *pomodoro san marzano dop* ; *il fatto commettendo su istigazione e determinazione dei suindicati Napoletano Giuseppe e Napoletano Eugenio,* interessati a far risultare falsamente la produzione su fondi agricoli di pomodoro san marzano DOP destinato alla Cooperativa Solania scarl per la successiva commercializzazione da parte della Solania srl - risultando entrambi dominus del preordinato piano fraudolento mandanti dell'intero disegno criminoso finalizzato a consumare le frodi commerciali di cui ai capi che precedono , aventi ad oggetto svariati quintali di pomodoro destinato alla esportazione in Italia ed all'estero , spacciato falsamente per " pomodoro san marzano dop", in realtà prodotto solo formalmente secondo il capitolato/disciplinare di cui al *Regolamento (CE) n.1263/96 della Commissione del 01.07.1996* che tutela il pomodoro San Marzano dell'agro Sarnese-

Nocerino , ma  in realta non avente  affatto tale provenienza e qualità :

*e in particolare:*

-*Cirella Amalia, ispettrice Ismecert,* redigeva  un  falso verbale di controllo agricoltori dop  data 22.07.2010 , a tanto istigata dai Napoletano Eugenio e Giuseppe , attestando,  contrariamente al vero,   di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo   a pomodoro san marzano della particella di proprietà di **Bari Anna** ( fl 12 part 196 del Comune di Sarno) da parte della coltivatrice **Cascella Natalina ;**

- *Cirella Amalia* ,ispettrice Ismecert, redigeva un falso verbale di controllo  controllo agricoltori dop  in data 21.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe , attestando,  contrariamente al vero,-  di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo a pomodoro san marzano   da parte di **Rainone Angelo** *delle particelle 890 e 891 del fl 2 del Comune di san Valentino Torio*

- *Cirella Amalia,* ispettrice Ismecert, redigeva un falso verbale di controllo  controllo agricoltori dop  in data 20.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe , attestando,  contrariamente al vero,   di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo a pomodoro san marzano
da parte di **Corrado Adelaide** *delle particelle 384 e 23  - fl 27 del Comune di Sarno ,*

- *Cirella Amalia, ispettrice Ismecert,* redigeva un falso verbale di controllo  controllo agricoltori dop  in data 19.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe , attestando,  contrariamente al vero, di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo  a pomodoro san marzano  da parte di **De Filippo Michele** *della particella 52 - fl 27 del Comune di Sarno  ;*

- Cirella Amalia, ispettrice Ismecert, redigeva un falso verbale di controllo  controllo agricoltori dop  in data 19.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe, attestando,  contrariamente al vero,   di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo a pomodoro san marzano  da parte di **Ferrante Domenico**  della ulteriore *particella fl2 n. 742 del Comune di Sau Valentino Torio,  oltre che dei fondi fl 2 n. 39 e 385  effettivamente coltivati ;*

Cirella Amalia, ispettrice Ismecert, redigeva un falso verbale di controllo  controllo agricoltori dop  in data 19.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe , attestando,  contrariamente al vero,   di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo a pomodoro san marzano   da parte di **Ingenito Concetta** *delle  particelle fl . 28 part n. 3 e 1341 e fl 27 n. 483 del comune di Sarno;*

- Cirella Amalia, ispettrice Ismecert, redigeva un falso verbale di controllo  controllo agricoltori dop  in data 20.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe , attestando,  contrariamente al vero,   di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonché delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo a pomodoro san marzano   da parte di **Lenza Antonio** *delle  particelle fl . 23 part. n. 286  del Comune di sarno e fl. 4 part 602  del comune di San Valentino Torio;*

Cirella Amalia ispettrice Ismecert redigeva  un falso verbale di controllo  controllo agricoltori dop  in

zione all'imprenditore agricolo Napoletano Eugenio e Giuseppe , attestando, contrariamente
al vero , di avere positivamente verificato la conformità delle superfici e delle varietà coltivate nonché
delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo
a pomodoro san marzano  da parte di Oliva Antonio delle *particelle fl. 4  part. n. 88 e 89  del comune di
San Valentino Torio; e fl 29 n.2499 e 2500 del Comune di Sarno ;*

- Cirella Amalia, ispettrice Ismecert, redigeva un falso verbale di controllo  controllo agricoltori dop  in
data 21.07.2010, a tanto istigata dai Napoletano Eugenio e Giuseppe, attestando,  contrariamente al
vero,  di avere positivamente verificato la conformità delle  superfici e delle varietà coltivate nonchè
delle tecnica colturale descritta dal disciplinare di produzione  e quindi la effettiva coltivazione in campo
a pomodoro san marzano   da parte di Sirica Giuseppina delle *particelle fl . 27 part. n. 440  del Comune di
Sarno*

*In Sarno, san Marzano san Valentino torio nelle date sopra rispettivamente indicate dal mese di   luglio 2010 (
19,20,21,e 22 luglio ) in occasione dei sopralluoghi ispettivi in campo*


## Napoletano Giuseppe – Napoletano Eugenio

D) dei reati p. e p. dagli artt. 110-81 cpv.- 483, 61 n.2 c.p.( in relazione all'art. 76 DPR 445/2000)
perché in concorso tra loro ed al fine di portare a compimento  i reati di cui ai capi che precedono ,
formavano e  presentavano, apponendovi le firme apocrife degli agricoltori/produttori,  svariate false
dichiarazioni sostitutive dell'atto di notorietà ( ai sensi dell'art. 47 dpr 445 del 25.12.2000) ,  da allegare
alle  domande di adesione al sistema di controllo del prodotto DOP pomodoro San Marzano dell'agro
sarnese-nocerino depositate presso l'Ismecert , per la campagna di trasformazione 2010 del pomodoro
San Marzano DOP dell'agro sarnese-nocerino, nelle quali,  contrariamente al vero,  si attestavano fatti
dei quali l'atto era destinato a provare la verità,  ovvero la  materiale disponibilità  e conduzione dei
terreni indicati per la produzione del san marzano dop secondo il disciplinare ;

In particolare:

- veniva fatto risultare in una *falsa dichiarazione sostitutiva dell'atto di notorietà datata 31 maggio 2010* recante la
firma apocrifa di Ferrante Domenico  la  effettiva coltivazione a pomodoro san marzano da parte del
suddetto anche della ulteriore *particella fl2 n. 742 del Comune di San Valentino Torio,  oltre che dei fondi fl 2 n.
39 e 385  effettivamente coltivati ;*

- veniva fatto risultare in una *falsa dichiarazione sostitutiva dell'atto di notorietà datata 29 luglio 2010* recante la
firma apocrifa di Ingenito Concetta  la  effettiva coltivazione a pomodoro san marzano da parte del
suddetto delle *particelle fl . 28 part n. 3 e fl 41 e fl 27 n. 483 del comune di Sarno;*

- veniva fatto risultare in una *falsa dichiarazione sostitutiva dell'atto di notorietà datata 29 luglio 2010* recante la
firma apocrifa di Sirica Giuseppina  la  effettiva coltivazione a pomodoro san marzano da parte della
suddetta delle *particelle fl . 27 part. n. 440  del Comune di Sarno;*

- veniva fatto risultare in una *falsa dichiarazione sostitutiva dell'atto di notorietà datata 29 luglio 2010* recante la
firma apocrifa di Lenza Antonio  la  effettiva coltivazione a pomodoro san marzano da parte del
suddetto delle *particelle fl . 27 n. 486  del Comune di sarno e n. 4 part 602  del comune di San Valentino*
- veniva fatto risultare in una *falsa dichiarazione sostitutiva dell'atto di notorietà datata 29 luglio 2010* recante la
firma apocrifa di *Di Filippo Michele*  la  effettiva coltivazione a pomodoro san marzano da parte del
suddetto della *particella 52 - fl 27 del Comune di Sarno*

*rio;*

- veniva fatto risultare in una *falsa dichiarazione sostitutiva dell'atto di notorietà datata 29 luglio 2010* recante la firma apocrifa di **Di Filippo Michele** la effettiva coltivazione a pomodoro san marzano da parte del suddetto della *particella 52 - fl 27 del Comune di Sarno* ;

*In Sarno, san Marzano san Valentino torio nelle date sopra rispettivamente indicate dei mesi di maggio e luglio 2010*

*IDENTIFICATE LE PERSONE OFFESE IN*
*CONSORZIO DI TUTELA DEL POMODORO SAN MARZANO DELL'AGRO NOCERINO SARNESE DOP c/o lo studio del difensore avv. Luca Orani ... studio in Nocera Inferiore alla via A. Barbarulo n. 71*

*Evidenziata l'acquisizione delle seguenti fonti di prova:*
*1.C.N.R. nn. 85/1-2010; 85/18-2010 ; 85/26-2010 del Comando CC NAC Salerno;*
*2. annotazione di PG 85/40 -2010 – 85/45-2010 CC NAC Salerno*
*3. verbali di perquisizione e sequestri nn. 85/2- 85/19-2010 CC NAC Salerno*
*Tutti gli altri atti di indagine contenuti nel fascicolo del Pubblico Ministero.*

Visti gli artt. 416, 417 c.p.p.;

CHIEDE

l'emissione del decreto che dispone il giudizio nei confronti dei predetti imputati e per i reati sopraindicati

MANDA

alla Segreteria per gli adempimenti di competenza e in particolare per la trasmissione, unitamente alla presente richiesta, del fascicolo contenente la notizia di reato, la documentazione relativa alle indagini espletate e i verbali degli atti eventualmente compiuti davanti al giudice per le indagini preliminari.

Nocera Inferiore, lì  1  03  2013

IL SOSTITUTO PROCURATORE DELLA REPUBBLICA
( Dott. ssa Mariella Montefusco)

7

**Fatto e Diritto**

Con decreto dispositivo del giudizio del Giudice preliminare in sede dell'1.03.2013, gli imputati erano rinviati innanzi a questo Tribunale in composizione monocratica, per rispondere dei delitti di cui in epigrafe.

Il dibattimento si articolava in varie udienze alla pressoché costante presenza dell'imputato Napoletano Giuseppe e nell'alterna presenza degli altri due e vedeva la presenza delle costituite parti civili Consorzio Tutela Pomodoro San Marzano, ISMECERT ed Associazioni Consumatori, così susseguitesi: alla prima udienza del 12.04.2015 erano formulate questioni preliminari attinenti la nullità del capi di imputazione ed il Tribunale rinviava per la decisione all'udienza dell'1.12.2015. L'udienza dell'1.12.2015 era rinviata per diversa composizione dell'organo giudicante all'udienza del 27.04.2016. Questa udienza era rinviata per l'inefficienza del sistema di fonoregistrazione a quella del 15.06.2016. Sia detta udienza che quella successiva erano rinviate per diversa composizione dell'ufficio ed era malamente disposta la sospensione della prescrizione siccome non erano presenti testi ed era diversa la persona del giudice onde nessuna attività utile avrebbe comunque potuto avere luogo; l'udienza del 13.12.2016 era rinviata per impedimento per malattia di un imputato senza che fosse stata dichiarata la sospensione della prescrizione (ma comunque pari a gg. 55 essendo il rinvio fissato al 7.02.2017); l'udienza del 7.02.2017 era rinviata per assenza dei testi e solo all'udienza del 15.03.2017 dopo il rigetto delle questioni preliminari era finalmente dichiarata l'apertura del dibattimento con la lettura dei capi d'imputazione e l'amissione dei mezzi istruttori tanto documentali che orali come rispettivamente dedotti dalle parti e disposto rinvio per l'assenza dei testi. L'udienza del 12.04.2017 è stata di mero rinvio mentre all'udienza del 10.05.2017 era acquisita ampia produzione documentale del P.M. e rinviata per impegno concorrente delle difese così come quella del 30.05.2017 che era stata concordemente richiesta al fine di consentire il contestuale esame e controesame del teste di p.g. All'udienza del 13.06.2017 era per l'appunto sentito il teste di p.g. maresciallo Antonio Spinelli appartenente al Nucleo Antifrode dei Carabinieri di Salerno che rendeva contezza delle attività di indagini espletate, a principiare dalla genesi e sino agli ulteriori sviluppi, che consentivano acquisizioni documentali, assunzioni di informazioni, e di accertamenti sfociati anche in sequestri, ed in definitiva il disvelamento di un vero e proprio sistema truffaldino nel quale erano coinvolti gli odierni imputati nelle rispettive qualità e con le condotte a ciascuno di essi addebitate nei capi di imputazione; l'udienza del 19.09.2017 era rinviata per diversa composizione dell'ufficio; all'udienza dell'11.10.2017 era sentito il teste Luigi Frusciante; all'udienza del 31.10.2017 erano acquisite col consenso delle parti le dichiarazioni rese dai soggetti che il P.M. aveva indicato quali testi dal numero 5 al 36 della lista (con conseguente rinuncia all'esame e revoca dell'ordinanza ammissiva



nella relativa parte); all'udienza del 6.12.2017 era esaminato il teste P.M. Federico Weber allora direttore dell'ISMECERT; all'udienza del 13.02.2018, essendo mutata la persona del giudice, era espresso il consenso all'utilizzabilità degli atti assunti in diversa composizione; all'udienza del 10.04.2018 il P.M. prestava il consenso all'acquisizione della consulenza della difesa dei Napoletano; l'udienza dell'11.07.2018 registrava il mero rinvio per consentire la presenza del P.M. togato; all'udienza del 3.10.2018 era esaminata previo il consenso l'imputata Cirella ed il teste della sua difesa Donato Stanca con conseguente acquisizione del suo elaborato scritto e, su richiesta congiunta delle parti, disposto rinvio per esame dell'imputato Napoletano Giuseppe e per la discussione all'udienza del 19.12.2018. Anche tale ultima udienza alla presenza della sola imputata Cirella veniva rinviata per impedimento della difesa dei coimputati per coevo impedimento professionale prevalente con sospensione dei termini di prescrizione.

L'udienza 23.01.2019 era rinviata ad oggi per esame imputati e discussione su richiesta delle parti con sospensione dei termini di prescrizione.

All'odierna udienza, quindi, esaminato l'imputato Napoletano Giuseppe che si protestava innocente (analizzando le singole proposizioni accusatorie e comunque evidenziando la piena conformità del prodotto sequestrato al San Marzano Doc, spiegando altresì le ragioni della doppia etichettatura quali acquisto da altra ditta e in ogni caso prospettando una produzione inferiore rispetto a quella consentita, fermo restando la conformità del prodotto al pomodoro San Marzano per il quale la certificazione era stata rilasciata), dichiarata la chiusura dell'istruttoria e l'utilizzabilità degli atti acquisiti, le parti discutevano oralmente la causa precisando le proprie definitive conclusioni come da separato verbale.

Il Tribunale si ritirava in camera di consiglio ed all'esito pronunciava sentenza, dando lettura in udienza del dispositivo e riservando ai termini ordinari il deposito dei motivi.

Osserva nel merito il Giudice che le risultanze acquisite consentono di operare un distinguo tra le posizioni processuali degli imputati, potendo scindere quella della Cirella da un canto e le altre due, dall'altro, siccome accomunate dalle medesime argomentazioni formulabili sulla scorta del materiale raccolto, essendo emerso oltre ogni ragionevole dubbio che nelle condizioni di tempo e di luogo in contestazione si siano verificati i fatti nel senso prospettato dall'accusa e che quindi gli imputati Napoletano Giuseppe ed Eugenio nelle rispettive qualità abbiano posto in essere le condotte in contestazione.

È da premettere che il compendio probatorio è molto ampio ed indicativo, ed univocamente orientato. Esso si compone innanzitutto dalle dichiarazioni del teste verbalizzante **maresciallo Antonio Spinelli** che ha fornito ogni minimo dettaglio investigativo eseguito dopo la segnalazione che nel porto di Napoli erano pronti per l'imbarco negli Stati Uniti cassoni di pomodori pelati

etichettati e recanti la dicitura del contenuto quale San Marzano DOP. Nella circostanza, invero, venivano prelevati degli esemplari di prodotto per gli accertamenti tecnico-scientifici del caso. Da lì dunque prendevano le mosse i successivi accertamenti che evidenziavano una serie di irregolarità per vero trasfuse nei capi di imputazione analiticamente evocati ai capi a) b) e d) ascritti agli imputati Napoletano Giuseppe ed Eugenio, sostanzialmente consistenti nell'accertata inesistenza delle stesse forniture di materia prima e dei relativi conferimenti o per mancanza di terreni ovvero per l'inesistente messa a dimora di colture a pomodoro, contrariamente alle indicazioni viceversa risultanti dai documenti utilizzati dagli imputati per ottenere la certificazione di qualità. Premetteva il teste che il pomodoro San Marzano è assoggettato a tutela attraverso l'ISMECERT (organismo di certificazione) che ha predisposto un disciplinare con previsione tra l'altro di una serie di controlli per il riscontro di conformità ad esso delle suddette produzioni che intendano conseguire la detta certificazione di qualità. Precisava ancora che in fase di vendita questo prodotto reca un'etichetta ed un numero identificativo proprio di ciascun barattolo a prescindere dalla ditta produttrice. Acquisite le produzioni con il numero dei pezzi certificati l'ISMECERT esegue l'ispezione presso lo stabilimento, certificando il numero dei pezzi per un determinato lotto avente quel determinato codice. Ove, poi, la ditta intenda commercializzare il prodotto fa richiesta al Consorzio di tutela che assegna un *range* di numerazione dei pezzi disponibili giusta i certificati redatti dall'ISMECERT e la detta numerazione poteva essere utilizzata esclusivamente per quell'etichetta (ovvero per quel marchio).

Orbene in sede di controlli presso la Solania avevano riscontrato un numero di pezzi di gran lunga superiori rispetto a quelli certificati dall'ISMECERT tant'è che la produzione veniva integralmente posta sotto sequestro, in seguito parzialmente revocato con conseguente restituzione, previa declassazione (*i.e.* perdita della denominazione).

Avevano poi acquisito le domande di adesione al consorzio presentate dai produttori e i verbali di verifica degli ispettori fatti "sul campo". Il teste verbalizzante esplicitava poi la procedura prevista al riguardo: invero per ogni annata il produttore comunica le particelle e le superfici da adibire a quel tipo di pomodoro e sul terreno si reca un agronomo dell'ISMECERT per verificare se effettivamente esistano le colture e le potenzialità di coltivazione del terreno. Gli accertamenti eseguiti avevano evidenziato che molti produttori avevano falsamente autocertificato il possesso di alcune particelle di terreno, le quali erano state asseverate dall'ispettore Cirella.

Ha precisato ancora che la società cooperativa a r.l. Solania, rappresentata da Napoletano Eugenio, produce i barattoli (dotata di un codice alfanumerico SL1 che la identifica sui prodotti e la sigla di stabilimento), laddove la Solania SRL, rappresentata dal Napoletano Giuseppe è la società che commercializza il prodotto.

Alla stregua delle cennate risultanze investigative contro le quali la difesa nulla ha offerto in contraria verifica possono discendere alcune conclusioni processuali in riferimento alle singole imputazioni che riguardo ai capi A) e B) appaiono provate nell' *an* e negli elementi costitutivi dei reati in contestazione.

Invero quanto al capo A) (v. p. 13-19 ss. verbale ud. 13.06.2017), e segnatamente relativamente ai nn. 1 e 2 dell'imputazione medesima, soccorrono le dichiarazioni del teste verbalizzante in ordine alla falsità della domanda di adesione dei produttori Cascella Natalina, Laudisio Pasquale, Rainone Angelo e Sirica Giuseppina giacché quei terreni dai predetti indicati o non erano adibiti a coltivazione di pomodoro ovvero non erano nella disponibilità dei predetti.

Del pari, relativamente al delitto *sub* B) (v. p. 24-41 ud. cit.), lo stesso teste verbalizzante riferiva che coloro che avevano fatto la domanda di adesione al Consorzio – indicati analiticamente nell'imputazione – non erano proprietari di quelle particelle indicate ovvero quelle particelle non erano adibite a coltivazione di pomodoro.

Né diverse conclusioni sono formulabili sulla scorta delle dichiarazioni dei testi Frusciante e Weber che non valgono a smentire gli accertamenti di p.g. soprarichiamati ovvero condensati sostanzialmente nei dati certi da ritenersi processualmente acquisiti della indisponibilità dei terreni ovvero nella mancata messa a dimora di colture a pomodoro sui terreni medesimi viceversa solo sulla carta risultati coltivati a pomodoro e/o nella disponibilità dei conferitori. In particolare **il teste Frusciante**, professore di genetica agraria (le cui dichiarazioni in data 18.10.2011 sono state acquisite col consenso delle parti e rinuncia del P.M. all'esame diretto), ha prospettato una mera ipotesi scientifica e di studio, certamente non verificata in concreto per la fattispecie in giudiziale verifica. Ha riferito, invero, detto teste premettendo per l'appunto, di non aver svolto alcun accertamento specifico che il consorzio aveva identificato i 4 eco-tipi da poter coltivare, tuttavia nel disciplinare si discorreva anche di linee migliorate, intendendosi con tale espressione "*soggette ad un trattamento generico per migliorarle*" senza però specificare i limiti "*è possibile effettuare degli incroci (…) o è possibile utilizzare anche degli ibridi*" (p. 5 ud. 11.10.2017). In sede di assunzione di informazioni dichiarava il Frusciante che "*le linee (…) indicate come Kiros e San Marzano 2 e linee migliorate sono linee pure e possono essere oggetto di autoriproduzione, nel senso che il contadino,* [ricavando il seme dalle bacche, può] *avere sempre piantine dello stesso tipo*" a differenza dei semi ibridi; fino al 2010 l'autoproduzione non era contemplata e tutte le linee, anche quelle c.d. migliorate, sono tracciabili dal punto di vista genetico/molecolare, dovendo presentare "*una percentuale di genoma dell'ecotipo San Marzano*", tuttavia, la percentuale non era indicata nel disciplinare e costituiva una valutazione soggettiva.

**Il teste Weber**, all'epoca direttore dell'ISMECERT, nulla di specifico offriva giacché

sostanzialmente chiariva le funzioni dell'istituto di certificazione, inserito in un sistema di certificazione volontaria (e si occupava anche di controlli per il riconoscimento del marchio DOP e su richiesta svolgeva gli accertamenti ed iscriveva negli appositi elenchi i produttori autorizzati o a fornire materia prima o a trasformarla ed ad utilizzare il marchio protetto), nonché i soggetti che in linea di massima all'istituto si rivolgevano (privati) ed infine la qualità degli ispettori (liberi professionisti esterni all'istituto ovvero non strutturati in esso). Nel caso specifico, quindi, i produttori agricoli iscrivevano i loro terreni e conferivano i prodotti a dei trasformatori che, sottoposti a controllo, potevano utilizzare il marchio DOP. Alla domanda del produttore agricolo dovevano essere allegati mappa e dati catastali del terreno coltivato a pomodoro e l'ispettore incaricato che non era dipendente dell'istituto svolgeva un sopralluogo per verificare che in quel terreno si coltivasse effettivamente pomodoro San Marzano. L'individuazione delle particelle avveniva attraverso i mappali e sostanzialmente era sempre il produttore, o qualche suo delegato ("*molto spesso è il responsabile della cooperativa (…) e normalmente c'è anche il produttore*") che identificava e indicava all'ispettore la zona dedicata al San Marzano. L'ispettore, quindi, compilava un verbale sottoscritto insieme al richiedente ed al produttore e qualche ispettore scattava anche fotografie. Solitamente non svolgevano ulteriori accertamenti sulla proprietà del terreno, basandosi sulle dichiarazioni dell'accompagnatore. Ha però aggiunto che all'epoca dei fatti il personale non era dotato di GPS. Dietro contestazione del P.M. ha detto che probabilmente la Cirella veniva quasi sempre accompagnata dal Napoletano Giuseppe e non dai coltivatori a svolgere i sopralluoghi (p. 9 ud. 6.12.2017).

A domanda della difesa dell'imputata Cirella ha ribadito che non c'era un rapporto datoriale tra l'istituto e gli ispettori ma questi venivano compensati previa fattura e quindi "*a partita IVA*" e che il loro controllo, e quindi la loro attenzione era maggiormente rivolta alla coltivazione e non all'individuazione della particella perché, in un certo qual senso, presupponevano che il produttore presentasse documentazioni esatte; ha chiarito ancora che non sempre lo stesso ispettore seguiva tutta la produzione e che in quel caso non furono rilevate non conformità gravi. A domanda degli altri difensori, ha specificato che la responsabilità dell'esattezza della domanda è del produttore agricolo, mentre è la cooperativa, che raccoglie tutte le domande, ad inviare gli elenchi; ha ribadito che le foto servivano per individuare il prodotto agricolo e non il terreno e che il comitato di certificazione andava a verificare il bilancio di massa ("*cioè quanti pomodori sono entrati e quanti sono usciti*"). Non è stato in grado di dire quante ispezioni sono avvenute presso la coop. Solania. Ha ancora specificato che le verifiche delle pratiche avvengono a campione e non sui singoli lotti e le produzioni della Solania, *se sono state certificate*, hanno avuto esito positivo; e ha ulteriormente spiegato che il trasformatore non può sapere chi è l'ispettore data la turnazione degli stessi.

L'**imputata Cirella**, assoggettatasi all'esame, si protestava innocente asserendo di avere eseguito svariati controlli ovviamente occupandosi anche di altre filiere nella qualità di agronomo abilitato quale incaricato esterno per conto dell'Ismecert per dieci anni, dall'anno 2002 al 2012. Nella vicenda in cui si trova coinvolta aveva fatto controlli su ben 109 particelle di terreno appartenenti a diversi proprietari e comunque a diversi nominativi dislocati nel territorio dell'agro nocerino-sarnese dopo avere prelevato i relativi fascicoli presso l'Ismecert contenenti, tra l'altro, la domanda di adesione, precisando che spesso i conferitori erano già iscritti e certificati dall'istituto in possesso dunque della relativa documentazione che aveva prelevato. Ha spiegato le modalità dei controlli: dopo una prima fase di studio della documentazione cartacea si recava sui campi accompagnata da Giuseppe Napolitano a sua volta delegato dalla cooperativa Solania, ed avvalendosi esclusivamente dei mappali e delle visure catastali (non essendo all'epoca dotata di strumentazione satellitare introdotta soltanto l'anno successivo) per quei controlli protrattisi dal 19 al 22 luglio 2010. In quel periodo aveva controllato oltre la Solania altre quattro cooperative. Ha evidenziato come le contestate anomalie che hanno originato il presente procedimento, pari al 7%, peraltro da lei non riscontrate, rappresentino una percentuale davvero esigua rispetto alla entità dei controlli eseguiti per la Solania anche in considerazione del fatto che era accompagnata sui campi dal Napoletano. Costui invero le mostrava il luogo sui cui entrambi si portavano non essendo viceversa necessaria la presenza del coltivatore del terreno medesimo, potendo avvenire di portarsi in due/tre terreni dislocati sul territorio, ed alla fine dell'ispezione redigeva il relativo verbale. Pur non essendo previsto dal disciplinare faceva anche le fotografie del campo rimettendole all'Ismecert. Dette fotografie erano debitamente numerate con punti di riferimento del terreno, quali un palo dell'Enel, una casa, una strada e tanto al fine della migliore individuazione del terreno oggetto dell'ispezione. Dunque verificava in campo la presenza del pomodoro, della varietà Cirio 3, lo sviluppo indeterminato e tutte le caratteristiche delle foglie e delle bacche ricevendo altresì il conforto dei documenti relativi alla tracciabilità delle piantine che vanno trapiantate in tempi adeguati e provenire da vivai sempre autorizzati; eseguiva controlli anche del documento di trasporto inserendo il tutto nel fascicolo consegnato all'Istituto. Su domanda della difesa ha poi detto che per ciascuna particella ispezionata riceveva un compenso di dieci euro a prescindere dall'esito dell'ispezione. Non aveva alcun rapporto di conoscenza o frequentazione col Napoletano, conosciuto proprio nell'occasione delle ispezioni. Ha sostenuto che, in difetto di strumenti satellitari, non era agevole individuare l'area da ispezionare a prescindere dalle indicazioni del mappale e dalle visure peraltro non aggiornati.

All'esito dell'esame la difesa depositava una memoria scritta dell'imputata nella quale sostanzialmente ribadiva il proprio assunto difensivo nonché alcune fatture ed in particolare una

dichiarazione di Napoletano che corregge una particella.

**Il teste** consulente **Donato Stanco** dava conto dell'accertamento di geolocalizzazione, eseguito per conto dell'imputata Cirella, spiegando i vari passaggi per giungere alla conclusione, per quattordici dei quindici accertamenti eseguiti, della coincidenza dei luoghi ispezionati dalla Cirella (e di cui ai verbali ispettivi attestanti la presenza sui campi di pomodoro San Marzano) con quelli da lui fotografati attraverso la trasformazione da ogni particella catastale dall'estratto di mappa, delle coordinate cartesiane polari e portandosi con un sistema GPS. In definitiva, comparando le foto da lui scattate con quelle della Cirella, vi era piena coincidenza dello stato dei luoghi ad eccezione di una sola particella, quella appartenente a Sirica Giuseppina.

**L'imputato Napoletano Giuseppe**, sottopostosi ad esame, su domande dei propri difensori – avendo il P.M. rinunciato all'esame diretto –, ha innanzitutto premesso che *"le centoquarantaquattromila scatole rinvenute al Porto di Napoli e sequestrate dal Nucleo Antifrode di Salerno, erano regolarmente, il prodotto regolarmente etichettato e regolarmente pomodoro San Marzano"*, si trattava di lotti regolarmente certificati dall'ISMECERT con i certificati emessi al termine della produzione. Spiegava il Napoletano le ragioni della diversa etichettatura con riferimento al diverso anno di produzione. Per i pomodori diretti in India ha affermato di avere regolare fattura di acquisto da un'altra ditta di quantitativo di pomodoro San Marzano. A seguito del sequestro e della conseguente parziale restituzione erano stati costretti alla declassazione del prodotto al fine di evitare più gravi danni economici connessi alla c.d. *shelf life* del prodotto. A suo dire i controlli *"almeno sulla parte dei terreni* [era] *controllato il 100%"*. Per l'anno 2010, in particolare, avevano fornito all'ISMECERT *"un elenco di produttori, indicando delle particelle, indicando delle particelle dove veniva* [coltivato] *a Pomodoro San Marzano, più di venti ettari"*. Ha sostenuto che non fosse necessario mentire sulle particelle perché quelle "autorizzate" erano più che sufficienti (anzi superiori) al fabbisogno della ditta. Sottolineava che nella zona vi sono *"tanti fazzoletti di terreno"* e basta spostarsi di pochi metri per trovarsi in una diversa particella ed è difficile individuare compiutamente le predette particelle. Ha negato di avere apposto firme false precisando che molti dei contadini *"a volte sono anche analfabeti"* ma ha precisato che la scheda di adesione mandata all'ISMECERT andava firmata, anche se ignora chi abbia potuto apporre le firme poi disconosciute. Ha *"accompagnato qualche volta personalmente anche la Cirella, mi limitavo ad accompagnare sul campo (...) tre/quattro volte"*. L'accusa di falso deriva dall'erronea individuazione delle particelle, non corrispondenti alle persone sentite dalla p.g.

Orbene, se queste sono le risultanze acquisite, con le quali esclusivamente il giudice deve confrontarsi e quindi alla stregua di quei dati può ritenersi provata l'inesistenza di colture a pomodoro San Marzano ovvero addirittura l'indisponibilità di terreni da parte degli apparenti

conferitori, i quali in sede di s.i.t. o hanno negato di averne la disponibilità ovvero hanno dichiarato di non coltivare pomodoro, appena il caso essendo di obiettare alla versione fornita dal Napoletano Giuseppe che si sarebbe dovuto egli far carico di provare quell'errore solo rappresentato, dal momento che è pacifico che egli stesso ha accompagnato la Cirella sui campi e che egli stesso era a conoscenza dei luoghi ove effettivamente il pomodoro San Marzano era posto a dimora. Già nel momento in cui raccoglieva l'elenco dei certificati di adesione dei coltivatori egli era in grado di operare le opportune verifiche in ordine alla corrispondenza della risultanza cartacea con i dati fattuali.

Quanto al delitto di falso ideologico, contestato agli imputati al capo C) del decreto dispositivo del giudizio, quale ipotesi di falso ideologico del pubblico ufficiale in concorso con l'*extraneus*, le medesime risultanze consentono di operare un distinguo tra le posizioni degli imputati Napoletano Giuseppe ed Eugenio, da un canto, e quella della predetta Cirella, dall'altro.

A riguardo solo di quest'ultima, ritiene il Tribunale che vi sia spazio per dubitare del dolo che connota detta fattispecie delittuosa, appena il caso essendo di ricordare che il dolo in siffatta ipotesi non è *in re ipsa* ma va sempre rigorosamente provato. E ciò non tanto in riferimento alla finalità di procurare a sé o ad altri un vantaggio o di recare un danno alla Pubblica Amministrazione, non rilevando, com'è noto, la mancata acquisizione di rapporti collusivi con i coimputati Napoletano, ipotetici beneficiari del falso della Cirella, quanto alla mancata acquisizione della prova della volontà trasfusa nelle verbalizzazioni di conformità redatte dall'imputata ovvero dell'*immutatio veri*. Infatti, le indicazioni ricavabili dai testi esaminati e soprattutto di Federico Weber direttore dell'Ismecert e Donato Stanco consulente della difesa in ordine alle modalità di individuazione dei fondi da ispezionare (piuttosto empiriche e superficiali a causa della scarsa dotazione degli strumenti tecnici scarni dell'epoca: mappali non aggiornati ed identità di conformazione dei terreni), accreditano, con pari dignità rispetto alla prospettazione accusatoria, la versione alternativa che la falsa attestazione di coltivazione di pomodoro San Marzano (e tanto a prescindere dalla dissertazione tecnica ma solo teorica operata dal professore Luigi Frusciante sentito a dibattimento previa acquisizione delle sue dichiarazioni al P.M. ed acquisite col consenso delle parti) sui quei terreni sicuramente o non coltivati a pomodoro o non nella disponibilità degli apparenti conferitori, giusta le indicazioni delle mappe catastali, sia stata frutto di errore ovvero di leggerezza della Cirella e non di volontà della immutazione del vero. Peraltro verso appare pacifico (perché confermato dallo stesso imputato) che essa sia stata accompagnata sui terreni dal Napoletano Giuseppe, il che corrobora vieppiù la dedotta difficoltà di individuare sulla base delle sole indicazioni dei mappali i terreni da ispezionare. Ed una siffatta argomentazione non solo non si pone in contrasto con le diverse indicazioni fornite dai titolari ovvero dagli intestatari delle schede

catastali, le cui dichiarazioni sono state acquisite col consenso delle parti e quindi legalmente utilizzabili quali prove, ma consente da dare una giustificazione e/o un'indicazione logica a quel contrasto che sulle prime può apparire inquietante potendosi ravvisare proprio sulla scorta del materiale raccolto l'errore nell'indicazione dei riferimenti catastali dei terreni medesimi.

Ne consegue che poiché nel nostro Ordinamento non è prevista la figura del falso documentale colposo, corretta risposta giudiziaria è l'assoluzione della Cirella dal reato *sub* C) in dissertazione perché il fatto non sussiste, sia pure ai sensi del capoverso dell'art. 530 del codice di rito.

Le stesse argomentazioni, in uno alla mancata acquisizione di prova su cointeressenze ovvero diversi rapporti interpersonali, consentono di dubitare del concorso della Cirella negli altri reati che le vengono addebitati ai capi A) e B) di rubrica non essendo stata raggiunta la prova, oltre il ragionevole dubbio, che il contributo apprestato alla consumazione di quelle condotte sia frutto consapevole di utilità ai coimputati Napoletano. È appena il caso di aggiungere in proposito che proprio il particolare tipo di rapporto che legava la Cirella all'Ismecert incaricata di volta in volta delle singole verifiche, esterna alla pianta organica dell'Istituto, come del resto altri ispettori, determina di per sé, a causa del meccanismo di rotazione del personale addetto alle verifiche, che lo stesso beneficiario ignorasse preventivamente la persona incaricata nello specifico con la quale eventualmente stringere un patto o raggiungere un accordo truffaldino non interfacciandosi sempre con lo stesso soggetto. Ed il che alimenta il dubbio che solo estemporaneamente ed all'insaputa della Cirella il Napoletano Giuseppe unico interessato ad ottenere il beneficio l'avesse accompagnata sui luoghi regolari diversi da quelli risultanti sulla carta e che quindi la Cirella avesse visionato effettivamente siti diversi e regolari. Per altro verso le modalità piuttosto empiriche delle verifiche (mancanza di strumentazione elettroniche e mappali antiquati nell'indicazione particellare dei terreni) alimentano il dubbio in ordine alla consapevolezza in capo alla Cirella. Onde, a fronte di tali incertezze probatorie, corretta risposta si palesa, sempre ai sensi del capoverso dell'art. 530 c.p.p., sentenza assolutoria con la formula per non avere commesso il fatto.

Quanto agli altri due imputati, viceversa, non sono spendibili le medesime considerazioni, essendo emerso, al di là di ogni ragionevole dubbio, dalle deposizione dei testi esaminati (o le cui dichiarazioni sono state acquisite), che nelle circostanze di tempo e di luogo in contestazione le certificazioni in atti a firma della coimputata Cirella siano afflitte da evidente falsità ideologica. Al riguardo soccorrono, in particolare, le dichiarazioni di tutte le persone esaminate in istruttoria che inequivocamente, per un verso, hanno disconosciuto le sottoscrizioni in calce alle richieste di adesione e, per altro verso, hanno escluso di avere coltivato a San Marzano le particelle di terreno indicate in imputazione o perché coltivavano altro o perché, addirittura, non erano nella loro disponibilità. Quanto alla versione difensiva dell'errore nell'individuazione delle particelle o

nell'immediata contiguità di altri fondi effettivamente coltivati a pomodoro San Marzano, che se accolta porterebbe al "falso colposo" e quindi all'assoluzione anche degli imputati Napoletano, essa non appare sostenibile per il difetto di ogni prova a riguardo idonea a vincere quella di accusa non foss'altro per la univoca utilità conseguita dai coimputati Napoletano dalla certificazione di conformità. Per altro verso la attestata corrispondenza dei terreni ispezionati dal c.t. Stanco non allontana gli imputati Napoletano dalle ipotesi di falso in contestazione, dal momento che, in particolare il Napoletano Giuseppe quale l.r. della cooperativa Solania (cui aderivano i coltivatori) ha accompagnato nelle ispezioni la Cirella, il che coincide con la perfetta consapevolezza che i dati forniti non corrispondessero alla reale situazione di fatto e di diritto dei fondi ispezionati. È appena il caso di osservare come nessun dubbio vi sia relativamente alla posizione dell'imputato Napoletano Eugenio che, sebbene apparentemente più defilato rispetto alla condotta del figlio Giuseppe, quale responsabile della società volta a commercializzare il prodotto, ha concorso parimenti siccome legale responsabile della produzione, e quindi interessato e consapevole di apportare il suo contributo alla successiva attività di commercializzazione e quindi nei reati contestati in concorso (nelle sue molteplici forme anche quale rafforzamento dell'altrui progetto criminoso) con la consapevolezza delle falsità presupposte.

Ancora, non è dubitabile la ravvisabilità dell'ipotesi di reato in contestazione per la natura pubblica dei certificati e la loro efficacia fidefacente.

In definitiva si tratta di un'ipotesi, quasi paradigmatica, di autoria mediata come prevista dall'art. 48 c.p. e in effetti i Napoletano, pur non rivestendo qualifiche pubblicistiche, inducendo in errore un soggetto dotato di detti poteri certificatori concorrono pienamente nel falso ideologico solo materialmente redatto dall'ispettore ISMECERT senza che l'assoluzione di quest'ultima possa giovare ai predetti Napoletano. Per mero scrupolo si osserva che non può nemmeno accedersi alla diversa qualificazione come falso in certificazioni, in quanto la certificazione redatta dalla Cirella concorre al raggiungimento di un obiettivo istituzionale dell'ISMECERT, vale a dire il rilascio della certificazione di qualità, in definitiva l'atto compiuto dal suddetto funzionario attesta il risultato della visita sui terreni e ha l'effetto di consentire quel risultato, onde deve qualificarsi atto pubblico e non certificato amministrativo.

Anche per i reati di cui ai capi A), B) e D) può dirsi raggiunta la prova della penale responsabilità, alla stregua dello stesso materiale sopra esaminato, senza che però possa essere pronunciata sentenza di condanna.

Tali rilievi si rendono, infatti, necessari al fine di dare contezza delle ragioni della decisione assunta per i capi A), B) e D) che non può non prendere atto di una sopravvenuta causa estintiva dei reati medesimi della prescrizione per gli imputati Napoletano Giuseppe e Napoletano Eugenio che è da

dichiarare all'esito della disamina del merito ai fini di escludere la ricorrenza di una delle condizioni richieste dall'art. 129 secondo comma c.p.p. e quindi per addivenire ad una pronuncia assolutoria nel merito con una delle formule ivi contemplate.

Ed infatti partendo dalla data di accertamento, 22.07.2010 che rappresenta il *dies a quo*, e stante la natura e la misura delle pena dei delitti di cui ai capi A), B) e D), si perviene alla data del 22.01.2018 (che rappresenta il termine massimo ordinario di prescrizione) cui devono aggiungersi soltanto ulteriori 56 giorni per l'impedimento per malattia dedotto all'udienza 13.12.2016 e sino alla nuova udienza del 7.02.2017 che sposta la data massima di prescrizione al 18.03.2018. Non sono viceversa cumulabili gli ulteriori termini aggiuntivi per i rinvii disposti giacché le udienza fissate in prosieguo su istanze di rinvio delle difese sono successive alla data di maturazione della prescrizione come indicata per l'appunto alla data del 18.03.2018, onde del tutto irrilevanti rispetto al processo ed al tempo di prescrizione trattandosi di reati già estinti per la prescrizione massima ormai maturata.

Come innanzi detto, alla stregua di quanto emerge dagli atti, non ricorre alcuna delle ipotesi di cui alla cennata disposizione, dovendosi rammentare, per un verso, che, quanto all'eventuale sussistenza dei presupposti per addivenire ad una pronuncia assolutoria, ha avuto modo di precisare la Suprema Corte come, in presenza di una causa estintiva del reato, «… l'obbligo del giudice di pronunciare sentenza di assoluzione postula che le circostanze idonee ad escludere l'esistenza del fatto, la sua rilevanza penale o la non commissione del medesimo da parte dell'imputato, emergano dagli atti in modo assolutamente non contestabile, così che la valutazione che il Giudice deve compiere al riguardo appartenga più al concetto di "constatazione", ossia di percezione "*ictu oculi*", che a quella di "apprezzamento"» (v. Cass., S.U. pen., sent. n. 35490 del 28.05.2009).

Passando ora al trattamento sanzionatorio per il delitto *sub* C), possono anzitutto essere concessi ad entrambi i prevenuti, allo stato tuttora formalmente incensurati, le circostanze attenuanti generiche in ragione della distanza temporale degli eventi, del contegno processuale (col consenso all'utilizzo degli atti ed acquisizione di dichiarazioni) e della circostanza che il prodotto era comunque idoneo al consumo umano (tant'è che una parte è stata anche dissequestrata come sopra riferito).

Tale circostanza attenuante va posta in rapporto, con giudizio di prevalenza, con l'aggravante speciale *sub* C), in ragione della quale vige il disposto normativo degli artt. 69, comma 4, e 63 c.p., a mente dei quali non è possibile il giudizio di comparazione, e quindi la ravvisabilità dell'ipotesi semplice di cui al primo comma dell'art. 479 co. 1 in riferimento all'art. 476 co. 1 c.p., sicché la base di calcolo e la dosimetria della pena va operata in base alla sanzione prevista dalla disposizione normativa contestata (art. 479, comma 2, c.p.).

Le varie ipotesi di falso vanno poi poste in continuazione tra di loro potendo ragionevolmente ravvisarsi un *unicum* del disegno criminoso data la contiguità temporale (4 giorni) e finalistica delle condotte.

In concreto, alla luce dei criteri di cui all'art. 133 c.p., stimasi pena equa quella finale di anni due e mesi due di reclusione ciascuno, prendendo a pena base quella minima di anni tre di reclusione, ridotta ad anni due per le concesse circostanze attenuanti generiche prevalenti ed all'inflitto per la disciplina della continuazione.

Il solo Napoletano Eugenio, data l'età (all'epoca della commissione dei fatti) ed in ragione della pena inflitta e dell'effetto deterrente può beneficiare della sospensione condizionale della pena, a termini e condizioni di legge (art. 163, commi 1 e 3, c.p.).

Segue *ex lege* la condanna dei Napoletano al pagamento delle spese processuali. Del pari segue la condanna al risarcimento dei danni in favore delle costituite parti civili da liquidarsi in separata sede, in difetto di qualsivoglia criterio di determinazione, e delle spese sostenute dalle stesse nella presente fase, liquidate come da dispositivo. Non vi sono elementi per poter concedere provvisionali.

Va inoltre dichiarata la falsità delle dichiarazioni rese dagli imputati Napoletano all'ispettrice Cirella e dei conseguenti certificati redatti dalla stessa nei giorni 19-22 luglio 2010 e ne va ordinata la cancellazione integrale nelle forme e nei modi di legge.

Va infine ordinata la confisca e la distruzione, nelle forme e nei modi di legge, di quanto ancora in giudiziale sequestro.

### P.Q.M.

Visto l'art. 530, comma 2, c.p.p.,

#### Assolve

Cirella Amalia dai delitti a lei ascritti ai capi A), B) e D) per non aver commesso il fatto e dal delitto ascrittole al capo C) perché il fatto non sussiste.

Visti gli artt. 157 ss. c.p. e 531 c.p.p.,

#### Dichiara

di non doversi procedere nei confronti di Napoletano Eugenio e Napoletano Giuseppe in ordine ai reati loro rispettivamente ascritti ai capi A), B) e D) perché estinti per intervenuta prescrizione.

Visti gli artt. 533 e 535 c.p.p.,

#### Dichiara

Napoletano Eugenio e Napoletano Giuseppe



## Colpevoli

del reato loro ascritto al capo C), unificato sotto il vincolo della continuazione, e concesse ad entrambi le circostanze attenuanti generiche, con giudizio di prevalenza sulla contestata aggravante,

## Condanna

ciascuno dei predetti alla pena di anni due e mesi due di reclusione ed al pagamento delle spese processuali.

Pena sospesa, a termini e condizioni di legge, per il solo Napoletano Eugenio.

Visto l'art. 537 c.p.p.,

## Dichiara

la falsità dei certificati a firma di Amalia Cirella in data 19, 20, 21 e 22 luglio 2010 e ne ordina la cancellazione nelle forme e nei modi di legge nonché la falsità delle firme di cui al capo D) della rubrica.

Visti gli artt. 538 e ss. c.p.p.,

## Condanna

Napoletano Eugenio e Napoletano Giuseppe, in solido tra loro, al risarcimento dei danni in favore delle costituite parti civili, da liquidarsi in separata sede, nonché alla rifusione in favore delle medesime delle spese di costituzione e difesa della presente fase che liquida complessivamente in € 1.500,00 per l'ADOC ammessa a patrocinio a spese dello stato con decreto del g.i.p. in sede in data 29.11.2013, di cui euro 220,00 per fase di studio, euro 230,00 per fase introduttiva, euro 500,00 per fase istruttoria ed euro 600,00 per fase decisionale oltre 15% ed Iva e Cpa come per legge ed il cui pagamento pone provvisoriamente a carico dell'Erario, salva rivalsa, ed in euro 2000,00 per ciascuna delle altre due costituite parti civili, di cui euro 250,00 per fase di studio, euro 250,00 per fase introduttiva euro 500,00 fase istruttoria, ed euro 1.000,00 per fase decisionale, ivi compresa la maggiorazione per le più parti, oltre iva cpa e contributo forfettario nelle rispettive misure di legge.

Rigetta l'istanza di provvisionale come avanzata.

Visto l'art. 240, comma 2, c.p.

## Ordina

la confisca e la distruzione, nelle forme e nei modi di legge, di quanto ancora in giudiziale sequestro.

Nocera Inferiore, 15.05.2019

TRIBUNALE DI NOCERA INFERIORE
DEPOSITATO IN CANCELLERIA

2 1 MAG 2019

IL CANCELLIERE
Dr.ssa IVANA SAVASTANO

Il Giudice

Dott.ssa Anna Allegro