Sheehan & Associates, P.C.

505 Northern Boulevard, Suite 311, Great Neck, NY 11021
tel. 516.303.0552
fax 516.234.7800
spencer@spencersheehan.com

July 26, 2019

District Judge Joanna Seybert
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722         Re:    2:19-cv-00974-JS-GRB
                                       Sibrian v. Cento Fine Foods, Inc.

Dear District Judge Seybert:

This office, along with co-counsel Reese LLP, represents the plaintiffs. On June 19, 2019, defendant requested a pre-motion conference prior to moving to dismiss the First Amended Complaint ("FAC"). Fed. R. Civ. P. 12(b)(1), (b)(6). ECF Nos. 14, 16. In accordance with the Court's Individual Motion Practices, plaintiffs' response is filed "within seven (7) days" of defendant's pre-motion letter. Sec. IV (G).

## I. The FAC Alleges defendant's "Certified San Marzano Tomatoes" are Misleading

The FAC states that defendant's "labeling of their 'Certified San Marzano' tomatoes is false, misleading, deceptive, unfair and untruthful" because they "lack the physical and other characteristics associated by consumers with San Marzano Tomatoes and any seal from the certifying organization." FAC, ¶¶ 14-15. These attributes are ensured through a certification program which has "established parameters and qualities a tomato marketed under this name should possess." FAC, ¶ 7. The group responsible for "oversee[ing] these standards" is the "Consortium of the San Marzano Tomato" (the "Consortium"). FAC ¶ 8.

"Certified" is defined as "officially recognized as possessing certain qualifications or meeting certain standards."[1] For defendant's tomatoes to be labeled as "Certified," there must be (1) "objective criteria" which together make up (2) an accredited standard, and evaluated for adherence by (3) a competent body "which has the authority and expertise to bestow that certification." FAC ¶¶ 8, 101-104.[2] In the context of San Marzano Tomatoes, the "certified" designation refers to and necessarily implies characteristics of the products, and is especially significant since they are "sold in aluminum tins, [which] cannot be seen, and are impervious to touch and smell." Defendant has not disclosed what attributes their certification regime includes and rebut how it was not intended to deceive consumers.

## II. Defendant's "Certification" is Misleading Because the Products Fail to Meet Any Objective Criteria

---

[1] Definition of Certified, Google Search.
[2] Gabriele Jahn et al., "*The reliability of certification: Quality labels as a consumer policy tool*," Journal of Consumer Policy 28.1 (2005) at 57.

Prior to being confronted with the FAC, defendant insisted "the Products are certified as San Marzano tomatoes by an independent, third-party certifier, Agri-Cert, which certifies the entire grow and production process: from the seeds and growing, and all the way through and including canning."  ECF No. 8 at 4.  Defendant's website elaborates on the "proper method" and "guidelines," which are identical to the Consortium's, laid out in the FAC. FAC ¶¶ 20, 28, 31, 49-50, 66.  Defendant mischaracterizes the FAC, which showed *not* that "the Products are not genetically or physically similar" to "randomly selected brand[s]," but that they bear no resemblance to tomatoes which adhere to the Consortium's standards and criteria.

Defendant now feigns ignorance of its purported adherence to the Consortium standards, claiming it "does not advertise or represent any relationship with this certification group." ECF 16 at 2 *but see* FAC ¶¶ 122, 126 (defendant represents it adheres to "[the guidelines] created to regulate San Marzano tomatoes in Italy," made "with the proper method to ensure superior quality" and "certified by an independent third-party agency.").  Defendant's claim is a half-truth at best, because reasonable consumers are not aware defendant established its own, unspecified certification requirements and is the only entity which follows them.  As the "leading brand" and largest seller in the U.S. of San Marzano Tomatoes from Italy, it strains credulity to accept that defendant's representations were not intended to mimic those of the Consortium.

### III. Defendant's "Certified for Sale" Argument is a Red Herring

Defendant distorts the FAC through clever wordplay, claiming plaintiffs' position is that approval from a foreign organization is <u>required</u> to sell San Marzano Tomatoes in this country. ECF 16 at 1-3 (misstating allegations, i.e., "San Marzano tomatoes can only be *certified for sale* in the United States by the Consortium," plaintiffs "fail to highlight any legal or regulatory body that requires such a *certification for sale* of San Marzano tomatoes in the United States," "only the Consortium can *certify San Marzano tomatoes for sale* in U.S. markets," "Cento does not claim (and does not need to claim) a DOP *certification for sale*"). (emphasis added).

Defendant's use of "certification" in the phrase "certified (certification) for sale" is meant to confuse.  This is because no foods require "certification" before being sold.  Whether a food may lawfully be sold is based on its manufacture in accordance with regulations to deliver a safe, non-injurious product.  In the context of the FAC, "certification" refers to quality standards, as opposed to "certified for sale," a term used for a pharmaceutical or medical device that meets bare minimum requirements to allow it to safely be sold to the public.

### IV. The FAC Contains Plausible Allegations that Consumers are Misled

Defendant claims "[N]o consumer could be confused by a product that claims to be certified for a particular product trait when it has just such a certification for its practices and products." ECF 16 at 4.  In today's inter-connected world of global trade, American consumers can appreciate foods which 50 years ago would have been unheard of.  In fact, the Consortium's "promot[ion] of the variety abroad" has been one of the reasons consumers, including plaintiffs "have recognized the features of the San Marzano, buying them for home use or seeking out their use in restaurant dishes. FAC ¶ 9.  The misleading representations observed and relied upon by plaintiffs relate to the Products' claims of certification, since the established entity and accepted standard for ensuring quality criteria for San Marzano Tomatoes from Italy is the Consortium. Only defendant does not abide by this standard, for reasons described in the FAC.  FAC ¶ 138 (describing defendant's involvement in the largest seizure of fraudulent tomatoes by the Italian Police in decades).

### V. The FAC's Primary Sources and Basic Composition Testing Reveal Defendant's Fraud

The "what" of defendant's fraud are its claims that its Products were "certified," understood by reasonable consumers as complying with quality criteria of actual Certified San Marzano Tomatoes. The "who" includes Cento's President, Mr. Patrick M. Ciccotelli and Giuseppe Napoletano. Defendant's sanctions motion even included an affidavit from Mr. Napoletano, who swore "Cento has been honorable and true to quality." Exhibit A. Eight days prior, Mr. Napoletano was given a suspended prison sentence by an Italian tribunal. That body described him and his father as "masters of the pre-ordered fraudulent plan" which "falsely certified" tomatoes as being compliant with Consortium requirements for growing conditions and product attributes. ECF No. 14-13 at 6, Exhibit M to FAC.

### VI. The FAC Plausibly Alleges Economic Injury Based on Price Premium

Contrary to defendant's claims that the FAC fails to "plausibly allege the purported misrepresentations caused *them* actual harm," plaintiffs stated that as a result of defendant's "representations and omissions," they "paid more than they would have." FAC, ¶¶ 200, 219. Though expecting the Products to contain "San Marzano Tomatoes of equivalent quality to those bearing certification by the relevant body," they failed "to adhere to quality standards expected by consumers who pay a premium price for a well-known, established product." FAC ¶¶ 225, 227; *Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) (plaintiff adequately pleaded injury based on allegation that she "she paid money for a Product that was represented to them as preservative-free" when it was not).

To the extent defendant seeks to exclude website statements, it is well-established such statements are actionable, and the FAC alleges they were relied upon by plaintiffs. *Goldemberg v. Johnson & Johnson Consumer Companies*, 8 F.Supp.3d 467, 480 (S.D.N.Y. 2014) ("Seen in tandem with the product labels, the website and Facebook page plausibly support Plaintiffs contention that a reasonable consumer could be misled.").

### VII. Claims of Non-New York Plaintiffs Should Be Considered at Certification Stage

Defendant seeks dismissal of the claims of non-New York plaintiffs based on lack of personal jurisdiction. ECF 16 at 4; *Bristol-Myer Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017). However, *Bristol-Myers* "addressed mass tort actions rather than class actions" and was filed in state court. *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590, 2018 U.S. Dist. LEXIS 171000, at *18 (E.D.N.Y. Sep. 29, 2018). Given the "'unsettled nature of the law following Bristol-Myers' – specifically its applicability to federal class actions," the Court should defer decision on its applicability until class certification. *Id.*

### VIII. Conclusion

For the foregoing reasons, defendant's request for a pre-motion conference should be denied. Thank you.

Respectfully submitted,

 /s/ Spencer Sheehan
Spencer Sheehan

3

Certificate of Service

I certify that on July 26, 2019, I served the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email |
|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ |

/s/ Spencer Sheehan  
Spencer Sheehan