**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Ricardo Sibrian, individually and on behalf of all others similarly situated, | |
|      Plaintiff, | Case No. 2:19-cv-00974-JS-GRB |
| v. | |
| Cento Fine Foods, Inc., | |
|      Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PORTIONS OF**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

AMIN TALATI WASSERMAN, LLP

Erin R. Conway
New York Bar No. 4842316
E.D.N.Y. Bar Code: EC2492
Daniel S. Tyler
Illinois Reg. No. 6315798
100 S. Wacker Dr., Suite 2000
Chicago, IL 60606
Telephone: (312) 784-1061
Facsimile: (312) 884-7352
Erin@amintalati.com
Daniel@amintalati.com

*Attorneys for Defendant,*
*Cento Fine Foods, Inc.*

i

### TABLE OF CONTENTS

Page

I.     INTRODUCTION…………………………………………………………...…….....1

II.    FACTUAL BACKGROUND…………………………………………………………..2

    A.    The Amended Complaint…………………………………………………..…3

    B.    Cento's Requests for Judicial Notice……………………………..……..…5

III.   STANDARDS GOVERNING THIS MOTION…………………………..…….……...6

    A.    Rule 12(b)(1) Motion to Dismiss……………………………..……..……6

    B.    Rule 12(b)(2) Motion to Dismiss……………………………..……..…...7

    C.    Rule 12(b)(6) Motion to Dismiss……………………………..……..……7

    D.    Rule 12(f) Motion to Strike……………………………..…….…….........7

IV.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM BASED UPON THE CENTO PRODUCTS' CERTIFICATION……………………………..….….……………………8

    A.  Plaintiffs Fail to State a Claim under N.Y. GBL Sections 349 and 350………8

        *i.*     *Plaintiffs Fail to Allege Injury*…………………………………….9

        *ii.*    *Plaintiffs Fail to Allege Conduct Would Mislead a Reasonable Consumer*………………………………..…………………10

        *iii.*   *Plaintiffs' "Find my Field" and Website Allegations Fail*………..12

    B.    Plaintiffs Fail to Plausibly Allege Warranty Claims………..……..……13

        *i.*     *No Valid Claim for Breach of Express Warranty*………..……..13

        *ii.*    *No Valid Claim for Breach of Implied Warranty*………..……..15

    C.    Plaintiffs Fail to Meet the Heightened Pleading Standards for Fraud and Negligent Misrepresentation……………………………..……...……16

        *i.*     *No Actionable Claim for Fraud*…………………………..17

        *ii.*    *No Actionable Claim for Negligent Misrepresentation*.…………18

    D.    Plaintiff's Unjust Enrichment Claim Should be Dismissed as Duplicative……………………..………………………………...20

V.     PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF…………………21

VI.    THIS COURT LACKS PERSONAL JURISDICTION OVER CENTO WITH RESPECT TO THE CLAIMS OF ALL NONRESIDENT PLAINTIFFS AND PUTATIVE CLASS MEMBERS……………………..……………………………………...……………..22

VII.   PLAINTIFFS' ITALIAN CRIMINAL PROCEEDING ALLEGATIONS MUST BE
       STRICKEN AS IMMATERIAL AND SCANDALOUS………………………………...24

VIII.  CONCLUSION……………………………..……………………………………....…………25

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005) ........................................................................... 16

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012) ......................................................................... 18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 7

*Atik v. Welch Foods, Inc.*,
  2016 U.S. Dist. LEXIS 136056 (E.D.N.Y. Sep. 30, 2016) .................................. 16

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018) ............................................................. 10

*Bangkok Crafts Corp. v. Capitolo di San Pietro Vaticano*,
  2007 U.S. Dist. LEXIS 42639 (S.D.N.Y. June 11, 2007) .................................. 24

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016) ............................................................. 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 7

*Bildstein v. MasterCard Int'l, Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004) ............................................................. 10

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) .............................................................................. 22, 23

*Brown v. Maxwell*,
  929 F.3d 41 (2d Cir. 2019) ............................................................................. 24

*Brumfield v. Trader Joe's Co.*,
   2018 U.S. Dist. LEXIS 148397 (S.D.N.Y. Aug. 30, 2018) ................................................ 16, 18

*Buonasera v. Honest Co.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................................................. 21, 22

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) .................................................................................................... 6

*Century Pac., Inc. v. Hilton Hotels Corp.*,
   2004 U.S. Dist. LEXIS 6904 (S.D.N.Y. Apr. 21, 2004) ........................................................ 19

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009) .................................................................................. 19

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1993) ................................................................................................................ 21

*Colella v. Atkins Nutritionals, Inc.*,
   *348 F. Supp. 3d 120 (E.D.N.Y. 2018)* ................................................................................ 9, 14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .............................................................................................................. 22

*Daniel v. Mondelez Int'l, Inc.*,
   287 F. Supp. 3d 177 (E.D.N.Y. 2018) .................................................................................. 8

*Elkind v. Revlon Consumer Prods. Corp.*,
   2015 WL 2344134 (E.D.N.Y. May 14, 2015) ...................................................................... 19

*DiBartolo v. Abbott Labs.*,
   914 F. Supp. 2d 601 (S.D.N.Y. 2012) .................................................................................. 13

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   783 F.3d 395 (2d Cir. 2015) ................................................................................................ 17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................................ 10

*Freidman v. Gen. Motors Corp.*,
   2009 U.S. Dist. LEXIS 13875, (S.D.N.Y. Feb. 23, 2009) ...................................................... 15

*Gazzillo v. Ply Gem Indus.*,
   2018 U.S. Dist. LEXIS 180303 (N.D.N.Y. Oct. 22, 2018) ...................................................... 23

*Gleason v. Chain Serv. Restaurant*,
   300 F. Supp. 1241 (S.D.N.Y. 1969) ........................................................................................ 24

*Gleit v. Francois-Bodine*,
   2018 U.S. Dist. LEXIS 85038, (S.D.N.Y. May 18, 2018) ...................................................... 16

*Guariglia v. Procter & Gamble Co.*,
   2018 U.S. Dist. LEXIS 42861, (E.D.N.Y. Mar. 14, 2018) ...................................................... 15

*Highland Cap. Mgmt., L.P. v. Schneider*,
   2004 U.S. Dist. LEXIS 18131 (S.D.N.Y. Sep. 9, 2004) .......................................................... 3

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................................................... 5

*Hydro Inv'rs v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000) ........................................................................................................ 18

*In re Edgewell Pers. Care Co. Litig.*,
   2018 U.S. Dist. LEXIS 209023, (E.D.N.Y. Sep. 4, 2018) ................................................. 6, 21

*In re Magnetic Audiotape Antitrust Litig.*,
   334 F.3d 204 (2d Cir. 2003) .................................................................................................... 7

*In re Samsung Galaxy Mktg. & Sales Practices Litig.*,
   2018 U.S. Dist. LEXIS 54850 (N.D. Cal. Mar. 30, 2018) ...................................................... 24

*In re Scotts EZ Seed Litig.*,
   2013 U.S. Dist. LEXIS 73808 (S.D.N.Y. May 22, 2013) ...................................................... 15

*Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ................................................................. 5

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016) ........................................... 9, 18, 19

*Jaghory v. N.Y. State Dep't of Educ.*,
  131 F.3d 326 (2d Cir. 1997) ................................................................. 7

*Jessani v. Monini N. Am., Inc.*,
  744 Fed. Appx. 18 (2d Cir. Dec. 3, 2018) ............................................. 10

*Lerner v. Northwest Biotherapeutics*,
  273 F. Supp. 3d 573 (D. Md. 2017) ................................................. 3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................. 7, 21

*Merck Eprova AG v. Brookstone Pharms., LLC*,
  920 F. Supp. 2d 404 (S.D.N.Y. 2013) ............................................. 13

*Morrison v. Ross Stores, Inc.*,
  2018 U.S. Dist. LEXIS 194431 (N.D. Cal. Nov. 14, 2018) ............................................. 24

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ................................................................. 21

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) ................................................................. 8, 10

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019) ............................................. 21

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013) ............................................. 14

*Quiroz v. Beaverton Foods, Inc.*,
   2019 U.S. Dist. LEXIS 57313 (E.D.N.Y. Mar. 31, 2019) ........................................................ 17

*Reyes v. Crystal Farms Refrigerated Distribution Co.*,
   2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019) ................................................ 12, 15

*Reynolds v. Lifewatch, Inc.*,
   136 F. Supp. 3d 503 (S.D.N.Y. 2015) .................................................................................... 20

*Roe v. City of New York*,
   151 F. Supp. 2d 495 (S.D.N.Y. 2001) ...................................................................................... 8

*S. New England Tel. Co. v. Global NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) .................................................................................................... 7

*Silva v. Smucker Nat. Foods, Inc.*,
   2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sep. 14, 2015) ..................................................... 16

*Singleton v. Fifth Generation, Inc.*,
   2016 U.S. Dist. LEXIS 14000 (N.D.N.Y Jan. 12, 2016) ........................................................ 14

*Sitt v. Nature's Bounty, Inc.*,
   15 Civ. 4199, (E.D.N.Y. Sept. 26, 2016) ......................................................................... 14, 20

*Spratley v. FCA US LLC*,
   2017 U.S. Dist. LEXIS 147492  (N.D.N.Y. Sep. 12, 2017) .................................................... 23

*Stern v. Leucadia Nat. Corp.*,
   844 F.2d 997 (2d Cir. 1988) .................................................................................................. 17

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ..................................................... 19

*Tomasino v. The Estee Lauder Companies, Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..................................................................................... 15

*Tsirelman v. Daines*,
  794 F.3d 310, (2d Cir. 2015) ................................................................. 7

*Tyman v. Pfizer, Inc.*,
  2017 U.S. Dist. LEXIS 212789 (S.D.N.Y. Dec. 27, 2017) ................................. 13, 19

*Tyman v. Pfizer, Inc.*,
  2018 U.S. Dist. LEXIS 8222 (S.D.N.Y. Jan. 18, 2018) ......................................... 13

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ...................................................................... 18

*Wynn v. AC Rochester*,
  273 F.3d 153 (2d Cir. 2001) ................................................................................... 17

**STATE CASES**

*Lama Holding Co. v. Smith Barney, Inc.*,
  88 N.Y.2d 413 (1996) ............................................................................................. 17

*Wojcik v. Empire Forklift, Inc.*,
  14 A.D.3d 63 (App. Div. 2004) ............................................................................. 15

**STATE STATUTES**

N.Y. U.C.C. § 2-607(3)(a) ....................................................................................... 14
N.Y.U.C.C. § 2-313 .................................................................................................. 13
N.Y.U.C.C. § 2-314(1) ............................................................................................. 15
N.Y.C.P.L.R. § 214(2) .............................................................................................. 24
N.Y. G.B.L. § 349 ................................................................................................. 8, 13
N.Y. G.B.L. § 350 ................................................................................................. 8, 13

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1, 6
Fed. R. Civ. P. 12(b)(2) ..................................................................................... 1, 7, 23
Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 7
Fed. R. Civ. P. 12(f) .............................................................................................. 1, 7
Fed. R. Civ. P. 9(b) ........................................................................................... 16, 20

Fed. R. Evid. 201 ................................................................................................................ 5, 6

## **FEDERAL REGULATIONS**

37 C.F.R. § 2.65(c).............................................................................................................. 11
37 C.F.R. § 2.66.................................................................................................................. 11

## **FEDERAL STATUTES**

15 U.S.C. § 1051(d) ............................................................................................................ 11

Defendant Cento Fine Foods, Inc. ("Defendant" or "Cento") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiffs' First Amended Complaint (hereinafter, "FAC") in its entirety, and to strike immaterial, impertinent, and scandalous matter pursuant to Rule 12(f).

## I.      INTRODUCTION

Plaintiffs bring a baseless class action concerning Cento's Certified San Marzano Tomatoes ("the Products") predicated solely upon conclusory allegations, innuendos, and outright smears.  At best, amongst a bevy of immaterial and unsupported allegations appears to lie an ultimately meritless claim based upon a single, factually true statement: that the Cento Products are certified as being exactly what they are—San Marzano style tomatoes.

This case should be dismissed, first and foremost, because Plaintiffs make no allegations regarding their individual purchases.  This is not hyperbole.  Plaintiffs stunningly make no allegations whatsoever concerning their alleged purchases of the Products, including when they purchased them; where they purchased them; the price they paid; whether and when they visited Cento's website; and most shockingly, what label statements or representations they personally relied upon when making their purchasing decisions. Plaintiffs raise no connections between their supposed purchases and the Product "testing" and related images referenced in the FAC.  Based on these failures alone, the FAC should be dismissed for failing to plausibly or particularly allege a claim for relief.

But even looking beyond these fatal pleading deficiencies, the remaining allegations fail because they are premised upon the erroneous and conclusory allegation that only an entity called the "Consortium" can certify San Marzano tomatoes.  Plaintiffs spill considerable ink contending that the Products fail to meet various straw-man Consortium standards, but have not alleged that

1

the Cento Products even *claim* to comply with Consortium specifications.  Nor could they, as Cento does not advertise any relationship with this certification group.  Plaintiffs fail to highlight any legal or regulatory body that requires any certification or approval from the Consortium for the sale of San Marzano tomatoes in the United States.  Plaintiffs also raise immaterial accusations that bear no connection to Plaintiffs' purchases, a putative class, or the actual representations made by Cento.  Given the scandalous nature of these claims, it is clear Plaintiffs seek to disparage good will within the consumer public or otherwise bully Cento into settling this frivolous lawsuit.

The FAC should be dismissed for several reasons.  First, including for the reasons given above, Plaintiffs fail to state a claim for each and every cause of action pled under Rule 8(a), and Rule 9(b) where applicable.  Second, Plaintiffs lack Article III standing to seek injunctive relief because they have not sufficiently alleged future injury, and similarly lack standing to bring claims related to Cento's website.  Third, no personal jurisdiction over Cento exists for claims brought by the nonresident named plaintiffs and putative class members.  Fourth, several allegations concerning a decade old Italian law enforcement matter should be stricken as immaterial and scandalous.

Plaintiffs' FAC is emblematic of a frivolous, quixotic, and hasty venture driven solely by a counsel under pressure to present the appearance of a reasonable pre-suit inquiry.  For these reasons, the FAC should be dismissed with prejudice and with no further leave to amend.

## II.   FACTUAL BACKGROUND

Plaintiff Ricardo Sibrian filed this putative class action on February 19, 2019.  (Dkt. No. 1).  Following Cento's submission of a pre-motion letter per this Court's Individual Motion Practices (Dkt. No. 8), Sibrian, along with several newly named individuals, filed a First Amended

Complaint. (Dkt. No. 14, FAC, ¶¶ 166-176). A pre-motion conference took place on October 18, 2019 where Defendant was granted leave to file the instant motion. (Dkt. No. 19).

### A.    The Amended Complaint

Plaintiffs make all allegations "upon information and belief, except for allegations pertaining to plaintiff [sic], which are based on personal knowledge." (FAC at 1 (directly above ¶ 1)). Plaintiffs admit that the Products are grown in Italy. (*Id.* ¶ 1). Plaintiffs allege that an entity called the "Consortium of the San Marzano Tomato, PRO (the 'Consortium')" oversees objective criteria for what constitutes a San Marzano tomato. (*Id.* ¶ 8). Plaintiffs allege that the Consortium issues two seals reflective of the growing region and the name of the tomato. (*Id.* ¶¶ 11-12). Plaintiffs allege that San Marzano tomatoes grow from the seeds of the "S.Marzano 2 and KIROS varieties[.]" (*Id.* ¶¶ 17, 20).

Relying on expert witness material at the pleading stage[1], Plaintiffs allege that the seeds of Cento San Marzano tomato products demonstrate genetic differences from some unnamed brand. (*Id.* ¶¶ 23-24).[2] Plaintiffs list several purported growing, harvesting, and yield rate requirements suggested by the Consortium for San Marzano tomatoes. (*Id.* ¶¶ 28-33). Plaintiffs conclusorily allege that the "Cooperative Solania scrl Agricert" equates to Cento, and that Cento keeps too many tomatoes from its crop yield. (*Id.* ¶ 38). Plaintiffs rely upon speculative expert witness

---

[1] This Court must disregard all of Plaintiffs' allegations and exhibits based upon supposed expert reports. (FAC, ¶¶ 23-104, Exhibits A, B, E, and F). Plaintiffs may not "substitute factual allegations with the speculation of their expert witness." *Lerner v. Northwest Biotherapeutics*, 273 F. Supp. 3d 573, 590 (D. Md. 2017); *see also Highland Cap. Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098 (PKL), 2004 U.S. Dist. LEXIS 18131, at *12 (S.D.N.Y. Sep. 9, 2004) (denying leave to amend complaint to attach an expert report and allegations, holding that the "addition of allegations that simply set forth the opinions of its proposed expert…serves no permissible purpose[.]")

[2] Despite inappropriately inserting "expert" evidence in the FAC, Plaintiffs' attempt to produce smoking-gun evidence via the alleged laboratory testing is a total red-herring. By its own admission, the lab results were comparing a "San Marzano2" seed to the seeds harvested from an unidentified product allegedly originating from Defendant. (FAC, Exhibits A-B). It goes without saying that the seeds would be genetically different. Cento growers use KIROS variety seeds for many of their crops. (Tyler Dec., ¶ 3, Exhibit A).

material to allege that Cento tomatoes have a different width and length than a Consortium certified brand named "Coluccio." (*Id.* ¶¶ 51-60). Plaintiffs similarly claim, without facts and based solely on untested expert opinion, that Cento San Marzano seeds are too big, causing the Products to taste too sweet; that they are too disintegrated; and that they lose their shape. (*Id.* ¶¶ 79, 86, 98, respectively). All of Plaintiffs' expert's testing was conducted on tomatoes that were allegedly taken from the can, after they were dried, peeled, and processed. (*Id.*, Exhibits E-F). By Plaintiffs' own admission, the Consortium suggested growth range it purports to be the minimum baseline for San Marzano tomato characteristics are intended to measure products when they are freshly picked and not processed. (*Id.*, n. 8-14).

Plaintiffs allege (with no factual support) that Cento's representation that the Products are certified is misleading and untrue because the only entity that can bestow such a certification with respect to San Marzano tomatoes is the Consortium. (*Id.* ¶¶ 101-102). Plaintiffs contend that Cento's San Marzano labels mimic the label of a "La Valle" brand of tomatoes, yet "La Valle" is not a party to this action and no claim has been made for brand confusion. (*Id.* ¶ 105). Expressly referencing an image from the Cento San Marzano label, Plaintiffs allege that Cento states the Products are "certified by an independent third-party agency and are produced with the proper method to ensure superior quality." (*Id.* ¶ 117). Plaintiffs admit that the Cento Products are certified by an entity known as Agri-Cert, *id.* ¶ 118, but claims (again, without factual support) that Agri-Cert is not authorized to ensure that the Products meet the purported specifications of San Marzano tomatoes. (*Id.* ¶ 123). Plaintiffs also scandalously smear Cento by alleging that it was the subject of an Italian law enforcement investigation (it was not). (*Id.* ¶¶ 137-144). Plaintiffs vaguely allege that had they known the truth about the Products, they would have not brought the

Products or would have paid less for it. (*Id.* ¶ 155). Similarly, Plaintiffs ambiguously claim that they purchased the Products "based upon the representations on the packaging." (*Id.* ¶ 181).

> **B.**    **Cento's Requests for Judicial Notice**

In support of the Rule 12(b)(6) arguments in this Motion, Defendant submits certain documentation that the Court should consider without converting this motion into one for summary judgment. *Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (stating that "'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (citation omitted) (brackets in original). A district court may examine the following as part of its review of a motion to dismiss:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint…and [(4)] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 452 (E.D.N.Y. 2013).

Here, Cento asks the Court to take judicial notice under Federal Rule of Evidence 201 or incorporation by reference of the following:

1.    A true and correct copy of Cento's San Marzano certification and traceability documentation by Agri-Cert, submitted under incorporation by reference and introduced through the Declaration of Patrick M. Ciccotelli ("Ciccotelli Decl."), ¶ 5, Exhibit "A";

2.      A true and correct copy of Cento's U.S. Trademark Registration No. Registration No. 3,210,945 for the "SAN MARZANO" design mark, submitted under F.R.E. 201 and introduced through Ciccotelli Decl. ¶ 7, Exhibit "B";

3.      A true and correct copy of the product label of the Cento San Marzano Tomatoes, submitted under F.R.E. 201 and introduced through Ciccotelli Decl. ¶ 8, Exhibit "C";

4.      A true and correct copy of the Agri-Cert certification and traceability documentation referenced above, translated into English (including the Translation Affidavit of Daniel Rowden), submitted under incorporation by reference and introduced through the Declaration of Daniel S. Tyler ("Tyler Decl."), ¶ 3, Exhibit "A"; and

5.      A true and correct copy of an abandoned "Pomodoro San Marzano Dell'Agro Sarnese-Nocerino" trademark application by the Consorzio di Tutela Del Pomodoro S. Marzano Dell'Agro Sarnese-Nocerino (Serial No. 85581273), disclaiming any right to use the mark "Pomodoro San Marzano" apart from the mark as shown, submitted under F.R.E. 201, and introduced through Tyler Decl. ¶ 4, Exhibit "B".

## III.    STANDARDS GOVERNING THIS MOTION

### A.      Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under [Rule 12(b)(1)] when the district court lacks the statutory or constitutional power to adjudicate it." *In re Edgewell Pers. Care Co. Litig.*, No. 16-cv-3371 (KAM) (RLM), 2018 U.S. Dist. LEXIS 209023, at *9 (E.D.N.Y. Sep. 4, 2018) (citation omitted).  Pre-answer motions to dismiss for lack of standing are governed by Rule 12(b)(1). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  Where a Rule 12(b)(1) motion is based solely on the allegations of the pleading, the court is tasked with determining whether or not the pleading "allege[s] facts that affirmatively and

plausibly suggest that [the plaintiff] has standing to sue." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

**B.      Rule 12(b)(2) Motion to Dismiss**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In this connection, the pleadings and any other supporting materials are construed in the light most favorable to plaintiffs and all doubts are resolved in their favor. *See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

**C.      Rule 12(b)(6) Motion to Dismiss**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

**D.      Rule 12(f) Motion to Strike**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). To prevail on a Rule 12(f) motion to

strike, "a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

## IV.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM BASED UPON THE CENTO PRODUCTS' CERTIFICATION.

All of Plaintiffs' causes of action stem from the conclusory assertion that only the Consortium can certify San Marzano tomatoes.  Plaintiffs also appear to allege, with no factual support, that reasonable consumers understand the Consortium's supposed standards with respect to tomato size, growth conditions, and characteristics, and those same consumers expect the products they purchase to fall within these exact size, shape, and weight parameters.  Plaintiffs fail to allege a single fact regarding their supposed purchases of the Cento Products, and fail to identify what label statement or characteristic they relied upon.  For these reasons, the entire FAC should be dismissed.

### A.   Plaintiffs Fail to State a Claim under N.Y. GBL Sections 349 and 350.

In order to state a claim under GBL Sections 349 and 350, a plaintiff must allege facts to show that a defendant has engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).  Because Plaintiffs shockingly fail to allege a single fact regarding their alleged purchases of the Products, Cento discusses the third element first.

i.      *Plaintiffs Fail to Allege Injury*

Plaintiffs have unequivocally failed to allege that they have suffered any injury.  Plaintiffs fail to allege when they purchased the Cento Products; where they purchased them; what label statements or representations they relied upon; and most importantly for the "injury" element, what price they paid.  Their failure to allege a price paid alone extinguishes this case.  In *Izquierdo v. Mondelez Int'l, Inc.*, the plaintiff alleged that he purchased mislabeled candy for a "premium price of $4.29 (or more)" and provided examples of other candy sold at lower prices.  No. 16-CV-4697, 2016 U.S. Dist. LEXIS 149795, at *18 (S.D.N.Y. Oct. 26, 2016).  The court held that the plaintiff's allegations were insufficient, as plaintiff failed to allege he "paid a *higher* price for the Candy than they otherwise would have, absent deceptive acts." *Id.* (emphasis in original).  Similarly, in *Colella v. Atkins Nutritionals, Inc.*, the plaintiff alleged that "Atkins charges a premium for its products and specifically markets them in a premium location of its retailers; thus, Plaintiff and members of the Class paid more than they normally would have for comparable products."  348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018).  This Court determined that the plaintiff "only conclusorily asserts that Atkins Nutritionals charges a premium for its products and provides no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products."  *Id.* Similarly, in this case Plaintiffs fail to allege what price they paid, failed to articulate how Cento's prices constitute a "premium", and their conclusory assertions that they "would have paid less" cannot suffice.  (FAC, ¶¶ 155, 200, 208); *see Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *18 ("Simply because Plaintiffs here recite the word "premium" multiple times in their Complaint does not make Plaintiffs' injury any more cognizable.").

ii.   *Plaintiffs Fail to Allege Conduct Would Mislead a Reasonable Consumer*

Second, Plaintiffs fall far short of the "materially misleading" prong.  In order to show that a practice or advertisement is deceptive or misleading, a plaintiff must show objectively that a "reasonable consumer" would have been misled by the defendant's conduct.  *Orlander*, 802 F.3d at 301.  To be "material," the alleged misconduct must concern information that is "important to consumers" and "likely to affect their choice of, or conduct regarding, a product."  *Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (citations omitted).  "[P]laintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'  Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 182 (E.D.N.Y. 2018) (quoting *Jessani v. Monini N. Am., Inc.*, No. 17-2504-cv, 744 Fed. Appx. 18, 2018 WL 6287994, at *1 (2d Cir. Dec. 3, 2018)).  A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiffs fail to plausibly allege any facts demonstrating that only the Consortium can certify San Marzano tomatoes.  They do not cite any relevant or applicable legal authority to claim that the Consortium is the only acceptable San Marzano tomato certifier in the United States, or that Cento's certification from Agri-Cert is somehow not acceptable.  As such, the Court can and should disregard Plaintiffs' conclusory allegation that only the Consortium can certify San Marzano tomatoes—and the various straw-man standards allegedly set forth by the Consortium. (FAC, ¶¶ 13-104).

Moreover, records from the United States Patent and Trademark Office ("USPTO") establish that the Consortium has no current exclusive right, and has *never* enjoyed the exclusive

right, to mark "San Marzano" on tomato products in the United States.  In 2012, the Consortium applied for but later abandoned, mid-application, a design trademark for "Pomodoro San Marzano Dell'Agro Sarnese-Nocerino," the very same mark that Plaintiffs claim constitutes a Consortium certification (*see* FAC, ¶ 12; Tyler Decl. ¶ 4, Exhibit B). 15 U.S.C. § 1051(d); 37 C.F.R. § 2.65(c). Even if the application was eventually registered (which it wasn't), the Consortium's abandoned application explicitly excluded any exclusive rights to use "Pomodoro S. Marzano" in advertising, indicating that the Consortium does not hold (and never claimed to hold) a monopoly on "San Marzano" advertising or certification in the United States.  (*Id.*).  Indeed, the time in which the Consortium could revive its application has long passed.  37 C.F.R. § 2.66.  On the other hand, the USPTO has *issued* a registered trademark to Cento for the "San Marzano" word-and-design mark currently used on the Products. (Ciccottelli Decl. ¶ 7, Exhibit "B").  Consequently, *if* any party enjoys a greater right to mark its tomatoes as "San Marzano" in the United States, it is Cento – due to its valid certification and trademark rights.

Plaintiffs fail to allege a single fact supporting that reasonable consumers are even aware of the Consortium, much less rely on it as being the only legitimate San Marzano certifier. Plaintiffs fail to allege what reasonable consumers expect when they see products marked as San Marzano tomatoes. They allege no facts stating that when reasonable consumers see "certified" San Marzano tomatoes, they only think of the Consortium and no other entity in the world.  Nor do Plaintiffs allege a single fact averring that reasonable consumers believe that Cento is certified by the Consortium.  In fact, given Plaintiffs' contention that Consortium-certified products bear two specific certification labels, and admission that Cento's labels *do not* have these images (*see* FAC, ¶¶ 12-15), no reasonable consumer would be believe that the Cento products are Consortium-certified.  As such, viewing the entire context of the label, no reasonable consumer would believe

that the Cento Products are Consortium-certified.  *See Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18-CV-2250 (NGG) (RML), 2019 U.S. Dist. LEXIS 125971, at *7-10 (E.D.N.Y. July 26, 2019) (dismissing claim that the statement "made with real butter" was misleading when viewing other portions of the label).  Because the Cento Products are certified, and Plaintiffs make no factual allegations asserting that reasonable consumers believe the Products are Consortium-certified, no reasonable consumer would be misled by the Cento Products' certification statement.

To the extent that Plaintiffs try and rescue their claims based on precise measurement characteristics that a reasonable consumer would expect when purchasing San Marzano tomatoes, once again, the allegations of the FAC are fatally flawed.  Plaintiffs assert virtually no facts (other than mere conclusions) that a reasonable consumer expects the processed tomatoes they purchase to fall within pre-determined ranges of millimeters, milliliters, or milligrams in size and shape.  Indeed, Plaintiffs' preferred size and shape characteristics are all based on measurements of fresh fruit, not on tomatoes that have already been processed.  Moreover, no reasonable consumer makes purchasing decisions based on quantifiable characteristics of processed food products, and Plaintiffs have asserted virtually no evidence or facts that suggest otherwise.  Reasonable consumers expect to receive San Marzano style tomatoes when they purchase a San Marzano product grown in the proper region of Italy, and that is exactly what they get when they buy a Cento Product.

   iii. *Plaintiffs' "Find my Field" and Website Allegations Fail*

Furthermore, Plaintiffs' website claims should be dismissed because they never allege that they visited the website, let alone personally viewed or relied upon the certification statements or filled out the "Find My Field" section.  *Tyman v. Pfizer, Inc.*, 16-CV-06941 (LTS) (BCM), 2017

12

U.S. Dist. LEXIS 212789, at *60-65 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 8222 (S.D.N.Y. Jan. 18, 2018) (dismissing all non-label advertising claims because plaintiff never alleged that he viewed the statements made on the ChapStick website or in television ads).  Plaintiffs' failure to state any facts regarding their purchases or what label or website statements or representations they personally relied upon vitiates their Section 350 claim.  *See Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013) ("A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance.").

Plaintiffs fail to allege what Cento San Marzano label statements are materially misleading to reasonable consumers, and they fail to state what claims they personally relied upon.  Plaintiffs also fail to plausibly allege injury.  Consequently, Plaintiffs cannot bring forth individual or class claims under New York General Business Law Sections 349 and 350.

### B. Plaintiffs Fail to Plausibly Allege Warranty Claims.

Plaintiffs fail to plausibly allege claims for breach of express warranty and for implied warranty of merchantability.

#### i. No Valid Claim for Breach of Express Warranty

First, N.Y.U.C.C. § 2-313 governs express warranties.  Under New York law, "[t]o state a claim for breach of express warranty, plaintiff must allege that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (citations and internal quotation marks omitted).  The affirmation of fact or promise must have been "false or misleading when made." *Id.* (citation omitted).  To

successfully state a claim for breach of warranty, "a buyer must provide the seller with timely notice of an alleged breach of warranty." *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474, 2016 U.S. Dist. LEXIS 14000, 2016 WL 406295, at *12 (N.D.N.Y Jan. 12, 2016) (citing N.Y. U.C.C. § 2-607(3)(a)).

In this case, the FAC fails to allege that any pre-suit notice was provided to Defendant. *Colella*, 348 F. Supp. 3d at 144 (citing *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)). Cento was deprived of any opportunity to learn of and address Plaintiffs' alleged concerns prior to being hit with an expensive, publicity seeking lawsuit. Consequently, Plaintiffs' express warranty claims on behalf the named Plaintiffs and a putative class must be dismissed.

Even if the Court were to consider the substance of Plaintiffs' express warranty allegations, they fail to plausibly allege a cognizable claim. Plaintiffs allege that Cento warranted "definite physical, sensory and organoleptic characteristics," including "high weight of seeds, excessive juice, less flesh and less firm flesh[.]" (FAC, ¶¶ 210, 213). These allegations fail to give rise to a plausible express warranty claim. The Cento label does not contain an "affirmation of fact or promise" with respect to juiciness, seed weight, or flesh firmness. The Products are generally labeled as San Marzano tomatoes with no representation as to any particular physical characteristic. At any rate, such statements are not actionable under an express warranty claim. *Sitt v. Nature's Bounty, Inc.*, 15 Civ. 4199, 2016 U.S. Dist. LEXIS 131564, 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016) ("Generalized statements by a defendant, however, do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.").

ii.     *No Valid Claim for Breach of Implied Warranty*

Plaintiffs' implied warranty of merchantability allegations also fail.  Section 2-314 of the New York Uniform Commercial Code states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  N.Y.U.C.C. § 2-314(1).  "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection."  *Guariglia v. Procter & Gamble Co.*, No. 15-CV-4307, 2018 U.S. Dist. LEXIS 42861, 2018 WL 1335356, at *6 (E.D.N.Y. Mar. 14, 2018) (quoting *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 783 N.Y.S.2d 698, 700 (App. Div. 2004)).

First, Plaintiffs have failed to allege that they were in privity with Defendant.  Under New York law, privity is required for recovery under the implied warranty of merchantability.  *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 (VB), 2013 U.S. Dist. LEXIS 73808, at *22 (S.D.N.Y. May 22, 2013) (citing *Freidman v. Gen. Motors Corp.*, 2009 U.S. Dist. LEXIS 13875, 2009 WL 454252, at *2 (S.D.N.Y. Feb. 23, 2009) ("to obtain relief on breach of implied warranty claims, plaintiffs must demonstrate privity with defendants").  "[C]ourts have expressed a policy against holding manufacturers liable to end-consumers under a theory of implied warranty where the parties are not in privity." *In re Scotts EZ Seed Litig.*, 2013 U.S. Dist. LEXIS 73808, at *23 (citation omitted).  In this case, Plaintiff fails to allege how they, the end-consumers, are in vertical privity with Defendant, the manufacturer.  *See Tomasino v. The Estee Lauder Companies, Inc.*, 44 F. Supp. 3d 251, 262-63 (E.D.N.Y. 2014) ("The plaintiff does not allege that she purchased the products from Estee Lauder…Rather, she asserts that she suffered economic harm, and purchased the ANR products from a Macy's department store. Thus, the lack of privity precludes her implied warranty claim."); *see also Reyes,* 2019 U.S. Dist. LEXIS 125971, at *14 ("The required privity

15

does not exist here because Plaintiff has not alleged that she purchased the product directly from Defendant.").  In fact, Plaintiffs make no allegations about their supposed purchases at all.

Furthermore, where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality.  *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 U.S. Dist. LEXIS 122186, at *28 (E.D.N.Y. Sep. 14, 2015); *Atik v. Welch Foods, Inc.*, No. 15-cv-05405, 2016 U.S. Dist. LEXIS 136056, at *39-40 (E.D.N.Y. Sep. 30, 2016).  Here, Plaintiffs do not allege that the Cento San Marzano tomato products are unfit for human consumption.  Therefore, Plaintiffs fail to state a claim for breach of the implied warranty of merchantability.  *Brumfield v. Trader Joe's Co.*, 17 Civ. 3239 (LGS), 2018 U.S. Dist. LEXIS 148397, at *10-11 (S.D.N.Y. Aug. 30, 2018).  Because Plaintiffs fail to allege privity with Cento, and fail to allege that the Cento San Marzano products are unfit for human consumption, their implied warranty of merchantability should be dismissed.

### C.    Plaintiffs Fail to Meet the Heightened Pleading Standards for Fraud and Negligent Misrepresentation.

Plaintiffs' fraud and negligent misrepresentation claims must be plead with particularity under Fed. R. Civ. P. 9(b).  *See Gleit v. Francois-Bodine*, No. 1:18-cv-00311-GBD-KHP, 2018 U.S. Dist. LEXIS 85038, at *16 (S.D.N.Y. May 18, 2018) (as to fraud); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (negligent misrepresentation claims under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)").  Plaintiffs fail to meet these heightened pleading requirements.

As an initial matter, Plaintiffs plead all matters "upon information and belief" (except those based on their personal knowledge, which in this case appears to be only their states and counties of residency). (*See* FAC, above ¶ 1). However, allegations pleaded upon information and belief must involve "facts [that] are peculiarly within the opposing party's knowledge" and must "be

16

accompanied by a statement of facts upon which the belief is founded." *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988). Because Plaintiffs fail to particularly plead any matters as within Cento's knowledge only, their fraud and negligent misrepresentation claims summarily fail.

    i.  *No Actionable Claim for Fraud*

   To state a claim for fraud under New York law, Plaintiffs must allege: "(i) a misrepresentation or omission of material fact; (ii) which the defendant knew to be false; (iii) which the defendant made with the intention of inducing reliance; (iv) upon which the plaintiff reasonably relied; and (v) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)). To satisfy Rule 9(b), a plaintiff alleging fraud must "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402-403 (2d Cir. 2015) (internal quotation marks omitted).

   Here, Plaintiffs fail to detail what statements or omissions were even misleading, let alone fraudulent. Plaintiffs seemingly intend to rely on their allegations that reasonable consumers expect certain "characteristics" associated with San Marzano tomatoes when making purchasing decisions. Plaintiffs bald allegations fail to establish any fraudulent conduct. Their salacious (and false) allegations concerning Cento's operations cannot support a claim for fraud when they have zero support other than attorney-generated innuendo. *See Quiroz v. Beaverton Foods, Inc.*, 17-CV-7348 (NGG) (JO), 2019 U.S. Dist. LEXIS 57313, at \*26 (E.D.N.Y. Mar. 31, 2019) (dismissing common law fraud claims when the plaintiff only alleged "simple knowledge" and a "generalized

motive to increase sales of the Product."). Moreover, Plaintiffs do not allege what statement(s) Defendant knew to be false (the second element of fraud); what statement(s) Defendant made with the intent of inducing reliance (the third element of fraud); and what statement(s) they justifiably relied upon (the fourth element of fraud). Additionally, Plaintiffs fail to allege precisely *when* they purchased the Cento San Marzano products, *where* precisely they purchased them, and they even fails to specify *how much* they paid for them. *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *23-24. For these reasons, Plaintiff's fraud claim should be dismissed. *Brumfield*, 2018 U.S. Dist. LEXIS 148397, at *14.

### ii.     No Actionable Claim for Negligent Misrepresentation

Plaintiff's negligent misrepresentation claims fare no better. To state a claim for negligent misrepresentation under New York law a plaintiff must allege that: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Hydro Inv'rs v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).

As an initial matter, Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine. That is, a plaintiff who has "suffered economic loss, but not personal or property injury," may not recover in tort "[i]f the damages are the type remedial in contract." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL

2344134, at *12 (E.D.N.Y. May 14, 2015) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (same).  Here, because Plaintiffs allege no damages beyond pure economic loss, their negligent misrepresentation claim must be dismissed.

Additionally, Plaintiffs' formulaic and conclusory allegations do not suffice. First, Plaintiffs do not particularly allege under Rule 9(b) that Defendant had a duty to them resulting from a special relationship.  "[I]n the commercial context, liability for negligent misrepresentation may be imposed 'only on those persons who possess unique or specialized expertise' or 'who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation was justified.'" *Tyman v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 212789, at *37-38 (quoting *Kimmel v. Schaefer*, 89 N.Y.2d 257, 263, 675 N.E.2d 450, 652 N.Y.S.2d 715 (1996)).  "In general, a simple commercial relationship, such as that between a buyer and seller or franchisor and franchisee, does not constitute the kind of 'special relationship' necessary to support a negligent misrepresentation claim." *Century Pac., Inc. v. Hilton Hotels Corp.*, 03 Civ. 8258 (SAS), 2004 U.S. Dist. LEXIS 6904, 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004).  Accordingly, the "vast majority of arms-length commercial transactions, which are comprised of casual statements and contacts, will not give rise to negligent misrepresentation claims." *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *21.  The alleged buyer-seller relationship between Plaintiffs and Cento simply does not give rise to a negligent misrepresentation claim. Similarly, advertisements in the form of Defendant's labeling also does not give rise to a special relationship.  *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *77-78 (E.D.N.Y. Sep. 22, 2015).

Second, Plaintiffs do not particularly allege under Rule 9(b) a false representation that Defendant knew or should have known was false. For example, Plaintiff does not allege that Defendant knowingly misrepresented Cento San Marzano tomato products as "certified" when they were not. The products *are* certified. (*See* Ciccotelli Decl. ¶ 5).  Nor do they allege that Defendant misrepresented that it was certified by Consortium when it is not.  Rather, Defendant labels its products as certified by the very entities that they are certified by.  Third, Plaintiffs do not particularly allege what statements concerning certain features of the Products that Defendant knew these specific Plaintiffs seriously desired. Finally, Plaintiffs do not particularly allege what misrepresentation they reasonably relied upon.  For all of these reasons, Plaintiff's negligent misrepresentation claims should be dismissed.

### D.    Plaintiff's Unjust Enrichment Claim Should be Dismissed as Duplicative.

To state a claim for unjust enrichment under New York law Plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015).  "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract or committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).  "Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Here, Plaintiffs have not made any factual allegations that would establish how their unjust enrichment claim differs from the GBL, fraud, and warranty claims.  Therefore, Plaintiffs' unjust enrichment claims should be dismissed as duplicative. *Sitt*, 2016 U.S. Dist. LEXIS 131564, at *57-59.

## V.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs have failed to sufficiently allege that they will suffer future injury, and therefore lack Article III standing to seek injunctive relief on behalf of themselves or a class.  "Standing for injunctive relief requires, *inter alia*, that the plaintiff demonstrate an 'actual or imminent' injury in fact, *Lujan,* 504 U.S. at 560 (internal quotation marks omitted), and, when seeking prospective injunctive relief, the plaintiff must prove the likelihood of continuing harm, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1993)." *In re Edgewell*, 2018 U.S. Dist. LEXIS 209023, at *38-39.  Past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  "A plaintiff does not necessarily have standing to seek injunctive relief, even when it is clear he has standing to seek damages." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (citations omitted).  "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016).

Plaintiffs' sole allegation with respect to future injury is that they "would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading." (Amended Complaint, ¶ 182).  Plaintiffs contend that in order to be a true San Marzano tomato, it can only be certified by the Consortium. Given this definitive (albeit erroneous) belief, Plaintiffs will not purchase, and are in no imminent danger of purchasing, Defendant's Products until they contain that exact certification marking by that particular certifier.  Until then, Plaintiffs are in no imminent danger of purchasing Defendant's Products.  *See Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 249 (S.D.N.Y. 2019) (statement that if the challenged products were reformulated such that the representations were truthful, plaintiff would consider

purchasing the products "in the future" does not allege future injury); *Buonasera*, 208 F. Supp. 3d at 564-65 (same).

## VI.   THIS COURT LACKS PERSONAL JURISDICTION OVER CENTO WITH RESPECT TO THE CLAIMS OF ALL NONRESIDENT PLAINTIFFS AND PUTATIVE CLASS MEMBERS.

This Court lacks jurisdiction over Cento for putative class members who have no connection to New York. The United States Supreme Court recognizes two types of personal jurisdiction: "general" (or "all-purpose") jurisdiction and "specific" (or "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017).  Courts with general jurisdiction may hear any claim against that defendant, even if all of the incidents underlying the asserted claim occurred in a different state.  *Id.* at 1780.  However, only a "limited set of affiliations with a forum will render a defendant amenable to general jurisdiction . . . ." *Id.* (internal quotation marks omitted).  For a court to exercise specific jurisdiction, the suit must "aris[e] out of or relat[e] to" the defendant's contacts with the forum.  *Id.* (alteration in original) (internal quotation marks omitted).  Thus, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State…" *Id.* (alteration in original) (internal quotation marks omitted).  Because Plaintiffs admit Cento is incorporated and located in New Jersey (FAC ¶ 179), Cento is not subject to general jurisdiction in New York.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)  (recognizing that the paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business).

Where there is no connection between the controversy at issue and the activities taking place in the forum State, specific jurisdiction is lacking regardless of the extent of the unconnected activities.  In *Bristol-Myers*, the Supreme Court held that the out-of-state plaintiffs could not establish specific jurisdiction over their claims by relying upon the fact that other, in-state plaintiffs

in the case could establish specific jurisdiction. 137 S. Ct. at 1783. The Supreme Court held that each of the plaintiffs' claims must arise from the defendant's forum-related activities regardless of whether specific jurisdiction had been established by another claimant. *Id.* The Supreme Court explained that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the product] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1776.

For this case, *Bristol-Myers* establishes that nonresident plaintiffs (i.e., every named plaintiff except Mr. Sibrian and those comprising the putative multi-state subclass) cannot bring claims against another nonresident (like Cento) in a forum that has no nexus to the dispute between the nonresident plaintiffs and the nonresident defendant, even if specific jurisdiction exists as to claims asserted by Mr. Sibrian. None of the non-resident putative class members could allege that they suffered any injury in the State of New York. Thus, the Amended Complaint alleges no facts to support specific personal jurisdiction over Cento with respect to claims by non-resident putative class members. *Id.* at 1784 (dismissing non-resident plaintiffs' claims because California lacked personal jurisdiction over them). Those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). *See, e.g., Spratley v. FCA US LLC*, No. 3:17-CV-0062 (MAD/DEP), 2017 U.S. Dist. LEXIS 147492, at \*19-20 (N.D.N.Y. Sep. 12, 2017) ("[T]he out-of-state Plaintiffs have shown no connection between their claims and Chrysler's contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims."); *Gazzillo v. Ply Gem Indus.*, No. 1:17-CV-1077 (MAD/CFH), 2018 U.S. Dist. LEXIS 180303, at \*19 (N.D.N.Y. Oct. 22, 2018) ("The Complaint contains neither (1) facts demonstrating Defendants' contacts with New York, nor (2) facts showing a connection between New York and the out-of-state Plaintiffs' claims. Thus, in light of the Supreme Court's recent decision in *Bristol-Myers Squibb*, the Court does not

have jurisdiction over the out-of-state Plaintiffs' claims."); *In re Samsung Galaxy Mktg. & Sales Practices Litig.*, No. 16-cv-06391-BLF, 2018 U.S. Dist. LEXIS 54850, at *8 (N.D. Cal. Mar. 30, 2018) (dismissing a Maryland plaintiff's claims brought against company headquartered and incorporated in Korea, New Jersey, and New York); *Morrison v. Ross Stores, Inc.*, No. 18-cv-02671-YGR, 2018 U.S. Dist. LEXIS 194431, at *11 (N.D. Cal. Nov. 14, 2018) (dismissing a Missouri plaintiff's claims brought against a North Carolina company).

## VII.   PLAINTIFFS' ITALIAN CRIMINAL PROCEEDING ALLEGATIONS MUST BE STRICKEN AS IMMATERIAL AND SCANDALOUS.

Although motions to strike material *solely* "on the ground that the matter is impertinent and immaterial" are disfavored, when material is also "scandalous," no such presumption applies. *Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019). In this case, Plaintiffs make spurious allegations accusing Cento of being involved in, or strongly inferring that Cento was the subject of, a decade-old Italian criminal proceeding. (Amended Complaint, ¶¶ 134-147, 221-227; Exhibits "H" through "N"). Plaintiffs' inclusion of these allegations and papers serve no purpose for this case except to smear Cento's name in a public filing. No other reasonable purpose can be drawn because no relief could possibly be given to Plaintiffs and the putative class, given that (1) the Italian proceeding has no bearing on Cento's compliance with all applicable U.S. laws regarding the importing, manufacturing, advertising, and sales of the Products; and (2) the acts for which the Italian individuals (which, importantly, did *not* include Cento) were accused occurred nearly ten years ago, well past the statute of limitations in this case. N.Y.C.P.L.R. 214(2). Accordingly, these allegations must be stricken because they "clearly can have 'no possible relation' to the matter in controversy.'" *Bangkok Crafts Corp. v. Capitolo di San Pietro Vaticano*, 03 Civ. 15 (RWS), 2007 U.S. Dist. LEXIS 42639, at *8 (S.D.N.Y. June 11, 2007) (quoting *Gleason v. Chain Serv. Restaurant*, 300 F. Supp. 1241, 1257 (S.D.N.Y. 1969)).

## VIII.   CONCLUSION

For the reasons provided above, Plaintiffs' First Amended Complaint should be dismissed in its entirety *with prejudice*, and alternatively Paragraphs 134-147 and 221-227 as well as Exhibits "H" through "N" should be stricken as immaterial and scandalous.

Dated: November 8, 2019.                          Respectfully submitted,

By: */s/ Daniel S. Tyler*
Erin R. Conway
New York Bar No. 4842316
E.D.N.Y. Bar Code: EC2492
Daniel S. Tyler
Illinois Reg. No. 6315798
AMIN TALATI WASSERMAN, LLP
100 S. Wacker Dr., Suite 2000
Chicago, IL 60606
Telephone: (312) 784-1061
Facsimile: (312) 884-7352
Erin@amintalati.com
Daniel@amintalati.com

*Attorneys for Defendant,*
*Cento Fine Foods, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, the foregoing document was filed with the Clerk of the Court and served in accordance with the Eastern District's Rules on Electronic Service upon the following:

Counsel for Plaintiffs
SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan, Esq. 505 Northern Blvd., Suite 311
Great Neck, New York 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com

REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com

By: */s/ Daniel S. Tyler*

Attorney for Defendant Cento Fine Foods, Inc.