## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RICARDO SIBRIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTO FINE FOODS, INC.,<br><br>Defendant. | Case No. 2:19-cv-00974-JS-GRB |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

**REESE LLP**
Sue J. Nam
*snam@reesellp.com*
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
*spencer@spencersheehan.com*
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0551
Facsimile: (516) 234-7800
*Counsel for Plaintiffs and the
Proposed Class*

1

## Table of Contents

INTRODUCTION ................................................................................................... 1

FACTS ...................................................................................................................... 2

I.    Legal Standard ............................................................................................. 4

II.    Plaintiff Plausibly Alleges Deception Based Upon Defendant's So-Called Certification . 6

    A.    Plaintiff States a Claim under New York General Business Law Sections 349 and 350  6

        1.  Plaintiff Has Alleged an Injury ................................................................ 7

        2.  Plaintiff Has Alleged Conduct That Would Mislead a Reasonable Consumer ........... 9

    B.    Plaintiff Plausibly Alleges a Claim for Breach of Express Warranty ........................... 12

    C.    The FAC Satisfies the Heightened Pleading Standard for Fraud ................................. 15

    D.    Plaintiff May Plead Unjust Enrichment in the Alternative ............................................ 17

III.    Plaintiff Has Standing to Seek Injunctive Relief ............................................... 18

IV.    The Court Has Personal Jurisdiction Over Defendant on All Claims ............................ 19

CONCLUSION ...................................................................................................... 22

## Table of Authority

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 4

*Ault v. J.M. Smuckers,* No. 13 Civ. 3409(PAC), 2014 WL 1998235 (May 15, 2014 S.D.N.Y.) . 15

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir. 2002) ........................ 5

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) .................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 5

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003) ............................................................... 7

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773 (2017)..................................... 19, 20

*Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 WL 4385665, (S.D.N.Y. Mar. 16, 2015).. 18

*Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404 (1968) ........................................................... 18

*Cummings v. FCA US LLC*, 401 F. Supp. 3d 288 (N.D.N.Y. 2019) ............................................ 17

*Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2019 WL 398685, (N.D. Ill. Jan. 3, 2019) ... 21

*Devlin v. Scardellette*, 536 U.S. 1 (2002) ................................................................ 20

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010).................................................. 6

*Elkind v. Revlon Consumer Prods. Corp.,* No. 14–CV–2484 JS AKT,
    2015 WL 2344134,  (E.D.N.Y. May 14, 2015) ...................................................... 15

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ............................................... 1, 5

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016).............. 19

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......... 15

*Henry v. Daytop Vill., Inc.,* 42 F.3d 89 (2d Cir.1994) ................................................... 17

*Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246 (E.D.N.Y. 2014)................................................ 18

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS,
    2015 WL 4591236, (D.N.J. July 29, 2015)........................................................... 14

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011)............ 13

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
   155 F. Supp.3d 772 (N.D. Ill. 2016) .............................................. 13

*Jackson-Mau v. Walgreen Co.*, No. 1:18-cv-4868 (FB)(VMS),
   2019 WL 5653757, (E.D.N.Y. Oct. 31, 2019) ................................ 18

*Jernow v. Wendys International, Inc.*, No. 07 Civ. 3971 (LTS),
   2007 WL 4116241 (S.D.N.Y. Nov. 15, 2007) ................................ 8

*Karlin v. IVF Am., Inc., et. al.,* 93 N.Y.2d 282 (1999) ...................... 6

*Koenig v. Boulder Brands, Inc.,* 995 F.Supp.2d 274 (S.D.N.Y.2014)). .................................... 7, 8

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160 (2d Cir. 2015) .......... 16

*Mantikas v. Kellogg Company*, 910 F.3d 633 (2018) ................................ 12

*Mennen Co. v. Gillette Co.*, 565 F. Supp. 648 (S.D.N.Y. 1983) .................................... 7

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ............................ 6, 7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   623 N.Y.S.2d 529 (1995) .......................................................... 6, 7

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ........................... 6

*People v. General Elec. Co.*, 756 N.Y.S.2d 520 (1st Dep't 2003) ................................ 7

*Petrosino v. Stearn's Products, Inc.*, No. 16-CV-7735 (NSR),
   2018 WL 1614349, (S.D.N.Y. Mar. 30, 2018) ................................ 18

*Ramirez v. SupportBuddy Inc.*, 17 CV 5781, 2018 WL 2089362 (S.D.N.Y. May 4, 2018) .......... 5

*Ross v. Bolton,* 904 F.2d 819 (2d Cir.1990) ........................................ 17

*Servedio v. State Farm Ins. Co.,* 889 F.Supp.2d 450 (E.D.N.Y.2012),
   *aff'd,* 531 F. App'x 110 (2d Cir.2013) ...................................... 8

*Simon v. Ultimate Fitness Group, LLC*, No. 19 Civ. 890 (CM),
   2019 WL 4382204, (S.D.N.Y. Aug. 19, 2019) ................................ 20

*Winick Realty Grp. LLC v. Austin & Assocs.,* 857 N.Y.S.2d 114 (1st Dep't 2008) .................. 18

## Statutes

GBL §§ 349 and 350 ................................................................ 6

N.Y. U.C.C. § 2–313(1)(a) ........................................................ 14

N.Y. U.C.C. § 2–313(1)(b) ................................................................................................ 14

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................... passim

Federal Rule of Civil Procedure 8(a) .......................................................................... 6

Federal Rule of Civil Procedure 9(b) ..................................................................... 6, 15

Federal Rules of Civil Procedure 8(e)(2) ................................................................... 17

**Treatise**

*McLaughlin on Class Actions* (15th ed.) ................................................................. 21

## INTRODUCTION

Cento Fine Foods, Inc. ("Defendant") sells tomatoes labeled as "Certified" San Marzano tomatoes (hereinafter "the Products"). Until 2011, Defendant was a member of the independent Consortium of the San Marzano Tomato, PDO (the "Consortium"), the organization with the exclusive right to certify and approve San Marzano tomatoes with a D.O.P. (Denominazione di Origine Protetta) marking. Since terminating its participation in the Consortium, Defendant has employed a marketing, advertising and labeling strategy expressly designed to extract the premium that products certified by the Consortium command without meeting the Consortium's exacting standards. Defendant relies upon purported facts extrinsic to Plaintiff's First Amended Complaint, ECF No. 14, (the "FAC") to argue that its certification from a different entity (Agri-Cert) is sufficient to render its labelling accurate and shield it from liability. In so doing, Defendant asks this Court to disregard the well-established standard for a motion to dismiss and the standard for deceptive business practice claim in this Circuit. The Court must presume to be true the facts alleged in the FAC and construe them in the light most favorable to Plaintiff.[1] Moreover, technical accuracy is not a defense to a claim of misleading labelling.

Defendant characterizes Plaintiff's FAC as a "frivolous, quixotic, and hasty venture," yet a complaint similarly alleging that Defendant has engaged in misleading labeling of its Products has survived a motion to dismiss. An order denying Defendant's motion to dismiss in *Snarr et al. v. Cento Fine Foods, Inc. et al.*, Case No. 4:19-cv-02627-HSG, pending in the Northern District of California, is expected shortly. Likewise, Plaintiff's detailed allegations regarding

---

[1] Defendant attempts to negate the applicable standard by impermissibly submitting documents and factual assertions in support of its Motion to Dismiss. However, the Court may not consider materials outside the pleadings in ruling on a motion to dismiss. *Friedl v. City of New York*, 210 F.3d 79, 81 (2d Cir. 2000). This issue is addressed in Plaintiffs' Opposition to Defendant's Motion for Judicial Notice and Motion to Strike Portions of Plaintiff's First Amended Complaint, which is filed herewith.

Defendant's deceptive practices adequately pleads claims under New York General Business Law §§349 and 350; breach of express warranty; fraud; and unjust enrichment. Defendant's motion to dismiss the FAC should be denied in its entirety.[2]

## FACTS

Defendant labels its Products as "Certified San Marzano" and sells its Products at a premium price, despite being aware that the Products are not authentic San Marzano tomatoes and do not possess the superior qualities of authentic San Marzano tomatoes. FAC ¶¶133-152. Defendant has engaged in a pattern of misrepresentations and deceit regarding its Products since at least 2011 when it ceased participating in the Consortium, the organization with the exclusive right to certify and approve San Marzano tomatoes with the D.O.P. marking and unique identifier number to show that the products have been certified. FAC ¶¶ 7-13; 133-152.

To ensure that San Marzano tomatoes are of a consistent, high quality, the Consortium carefully controls every aspect of the life cycle and processing of authentic San Marzano tomatoes, from the seeds, growing and harvesting, transport to the canning facility and transformation into the finished product. *Id.* ¶ 16. Unlike other Roma tomatoes grown on poles in Italy, San Marzano tomatoes can only be grown from the S. Marzano 2 or KIROS strains and must be grown in a particular region of Italy. *Id.* ¶¶ 12, 20. San Marzanos must be harvested by hand gradually as the fruits fully ripen. *Id.* ¶ 28. All fruits are sorted to include only those undamaged tomatoes that exhibit typical uniform color, firmness and other acceptable attributes, with a mandated maximum yield of 80%. *Id.* ¶¶ 30-38. The Consortium's standards result in authentic San Marzano tomatoes with attributes that are well-defined and recognizable. Authentic San Marzano tomatoes have firm flesh, a high ratio of flesh to water, fewer seeds,

---

[2] Plaintiff withdraws his claims of negligent misrepresentation and breach of implied warranty. Thus, the motion to dismiss those claims can be denied as moot.

2

bittersweet taste, easily dissolving or previously removed peel, and a uniform consistency across cans. *Id.* ¶ 11. Because Defendant does not follow the Consortium's standards of production and processing, its Products do not have the qualities of authentic San Marzano tomatoes coveted by consumers. *Id.* ¶¶ 41-100.

Defendant's labels are designed to confuse reasonable consumers regarding the contents of the Products. The front of Defendant's labels claim the Products are "Certified" and imitate the labels of San Marzano tomatoes that are certified by the Consortium, even though the Products are not certified by the Consortium nor do the Products independently meet the requirements of certification. *Id.* ¶¶ 101-106.[3] The back of the label displays a map of Italy highlighting the Sarnese Nocerino area (where only authentic San Marzano tomatoes may be grown), located within the Campania region of Italy, further adding to the imagery a consumer would likely expect on the can of authentic San Marzano tomatoes. *Id.* ¶ 125-26. Defendant also stamps the bottom of the Products' cans with a code containing the initials "SM," which consumers instinctively read to stand for "San Marzano" but it actually stands for "smalto;" the Italian word for enamel. *Id.* ¶¶ 107-116.

Defendant's label also refers consumers to its website, where Defendant further reinforces the deception. The website contains a "Find My Field" application where a consumer can input a "Lot Code" number found on the Products' can and find the precise field where the Products contained in the can were purportedly grown in the Sarnese Nocerino area of Italy. *Id.* ¶ 127. Despite the entry of numerous different lot codes in the "Find My Field" application, the same four fields are identified over and over again. *Id.* ¶ 132. The website also describes the

_____

[3] Certain versions of the labels also contain an official-looking logo of some certifying body, the ICEA (Istituto per la Certificazione Etica e Ambientale" or "Institute for Ethical and Environmental Certification"), another certification scheme that cannot certify tomatoes as "San Marzano." FAC ¶ 128.

Products' so-called certification and attempts to spin it so that unsuspecting consumers will believe that the Products are authentic San Marzano tomatoes. Specifically, Defendant states that the Product is "regulated and certified authentic by an independent third-party . . . ***using the guidelines created to regulate San Marzano tomatoes in Italy***." *Id.* ¶ 122. Defendant carefully crafts its language to lead consumers to believe that the Products qualify for the coveted "Protected Designation of Origin" established by the European community in the 1990s, not the certification that Agri-Cert provides for the Product, which only certifies food safety. *Id.* ¶ 119. Defendant brazenly claims that its meaningless certification "ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which, without following the strict criteria, may be inferior quality or contain a different flavor profile." *Id.* ¶ 122.

The Products' labels and appearance at the point of purchase, reinforced by Defendant's website, create the erroneous impression that they contain San Marzano tomatoes of equivalent quality to those bearing the certification from the Consortium. *Id.* ¶ 153. However, what is inside the Products are not San Marzano tomatoes, but rather ordinary Roma pole tomatoes that fail to deliver the qualitative characteristics of San Marzano tomatoes sought by the consumer. As a result of Defendant's false and misleading labeling and advertising, the Products are sold at premium prices compared to similar products represented in a truthful way. *Id.* ¶ 157.

<u>ARGUMENT</u>

I.     **Legal Standard**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual

4

allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of a Rule 12(b)(6) motion, facts alleged by the nonmoving party are presumed to be true and construed in the light most favorable to plaintiff. *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002).

Moreover, when deciding a Rule 12(b)(6) motion, the Court must not consider matters outside the pleadings unless the Court exercises its discretion to convert the motion to a motion for summary judgment. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (citations omitted). Whether the motion should be converted to one for summary judgment depends on whether the plaintiff "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Ramirez v. SupportBuddy Inc*., 17 CV 5781, 2018 WL 2089362, at *3 (S.D.N.Y. May 4, 2018) (citation omitted). Here, Defendant specifically requests that its motion to dismiss not be converted to one for summary judgment. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative, Strike Portions of Plaintiff's First Amended Complaint, ECF No. 20-1 ("Def. Br."), at 3. Thus, the motion must remain as a motion to dismiss pursuant to Rule 12(b)(6), and the Court must exclude the additional materials and decide the motion based solely upon the FAC – including materials attached or integral to the FAC, documents incorporated into the FAC by reference, or matters of which the court may take proper judicial notices. *DiFolco v. MSNBC Cable L.L.C.*,

622 F.3d 104, 111 (2d Cir. 2010). Plaintiffs' Opposition to Defendant's Motion for Judicial Notice and Motion to Strike Portions of Plaintiff's First Amended Complaint, filed herewith, addresses why this Court may not consider the documents and factual assertions submitted in support of Defendant's motion to dismiss.

## II.   Plaintiff Plausibly Alleges Deception Based Upon Defendant's So-Called Certification

### A.   Plaintiff States a Claim under New York General Business Law Sections 349 and 350

New York's highest court has recognized that General Business Law ("GBL") §§ 349 and 350 are founded on the overarching belief that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (1995) (internal citation omitted). "These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc., et. al.,* 93 N.Y.2d 282, 290 (1999). "The reach of these statutes provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Id.* at 291 (alteration in original) (quotation marks and citation omitted). Moreover, a plaintiff is not required to meet the enhanced pleading requirements of Federal Rule of Civil Procedure 9(b) for GBL §§ 349 and 350 claims but rather need only meet the Rule 8(a) standard. *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal citation omitted). Thus, to prevail on

their claims, Plaintiffs need only provide proof of a deceptive act or practice and not "proof that a statement is false." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see also People v. General Elec. Co.*, 756 N.Y.S.2d 520 (1st Dep't 2003) (explaining that "literal truth is not an availing defense" if the representation has the capacity "to mislead even reasonable consumers acting reasonably under the circumstances"). Additionally, there is no requirement that plaintiff prove that defendant's practices or acts were intentional, fraudulent or even reckless. Nor does plaintiff have to prove reliance upon defendant's deceptive practices. *Oswego*, 623 N.Y.S.2d at 532-33; *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983).

Defendant concedes that Plaintiff alleges a consumer-oriented conduct, but argues that Plaintiff fails to allege injury or a materially misleading conduct. Defendant simply ignores the allegations supporting Plaintiff's GBL claims.

### 1. *Plaintiff Has Alleged Injury*

Defendant claims that "Plaintiffs have unequivocally failed to allege that they have suffered any injury." Def. Br. at 9. Defendant is wrong. New York law states that plaintiffs can establish injury by alleging that they paid a premium for a product, and the FAC unquestionably alleges this. Specifically, the Complaint contains allegations that Defendant charged, and Plaintiff paid, a premium for the Products. *See*, *e.g.*, FAC ¶157 ("As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $6.99 per 28 oz [794 g] excluding tax – compared to other similar products represented in a non-misleading way."). This is sufficient for a damages claim under New York's consumer protection law. *Orlander v. Staples, Inc.*, 802 F.3d at 302 (citing *Koenig v. Boulder Brands, Inc.,* 995 F.Supp.2d 274, 288–89 (S.D.N.Y.2014)).

*Koenig* is on point here. In *Koenig*, the plaintiffs claimed that the defendant deceived consumers by misrepresenting the amount of fat in its Smart Balance milk. The defendant argued that plaintiffs failed to plead sufficient injury for a claim under GBL§349. The court rejected the argument:

> Here, Plaintiffs claim that, but for Defendants' "unfair and deceptive practices," they – and the putative class – would not have purchased, or paid a price premium for, Smart Balance. . . . Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349, and thus also DENIES Defendants' motion to dismiss for that reason.

*Koenig*, 995 F.Supp.2d at 288–89 (capitalization in original; internal citations omitted); *see also Servedio v. State Farm Ins. Co.,* 889 F.Supp.2d 450, 453 (E.D.N.Y.2012) ("[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement."), *aff'd,* 531 F. App'x 110 (2d Cir.2013); *Jernow v. Wendys International, Inc.*, No. 07 Civ. 3971 (LTS), 2007 WL 4116241, at * 3 (S.D.N.Y. Nov. 15, 2007) ("Under New York law, a premium could constitute an actual injury compensable under Section 349.").

The pleadings here allege a premium of approximately 100% for the Product. FAC ¶ 133 ("The premium price of real San Marzano – ***approximately twice as much as non-San Marzano, Roma pole tomatoes*** – results in an ongoing battle against fraudulent tomatoes") (emphasis added). The pleadings also allege that the "representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages." FAC ¶ 200. Accordingly, Defendant's motion to dismiss is without merit and must be denied.

2.      *Plaintiff Has Alleged Conduct That Would Mislead a Reasonable Consumer*

Defendant claims that Plaintiff brings his "meritless claim based upon a single, factually true statement: that the Cento Products are certified as being exactly what they are – San Marzano ***style*** tomatoes." Def. Br. at 1 (emphasis added); *see also id.* at 12 ("Reasonable consumers expect to receive San Marzano ***style*** tomatoes when they purchase a San Marzano product grown in the proper region of Italy, and that is exactly what they get when they buy a Cento Product.") (emphasis added). Of course, the glaring flaw in this argument is that the word "style," a qualifier that potentially could signal that a product is not authentic, appears ***nowhere*** on the Product's label or Defendant's website. As way of analogy, a reasonable consumer would have very different expectations regarding quality and price point of a Tiffany lamp versus a Tiffany-***style*** lamp.

Defendant also argues that Plaintiff "allege[s] no facts stating that when reasonable consumers see 'certified' San Marzano tomatoes, they only think of the Consortium and no other entity in the world." *Id.* at 11. Defendant is again disingenuous. First, the FAC need ***not*** allege that "reasonable consumers are even aware of the Consortium." *Id.* Rather, the FAC alleges that consumers expect that "any tomatoes designated 'San Marzano' have the physical characteristics consumers associate with and expect from this variety." FAC ¶ 11. Thus, whether these quality attributes are assured through the Consortium or another third party is of no import.

Second, trademark registrations and applications simply are not relevant to the question of whether Defendant's conduct is materially misleading to consumers. Def. Br. at 10-11. Instead, the basic assumption implied by Defendant's use of the word "Certified" on its label is that the certifying body used by Defendant "has the authority and expertise to bestow that certification." FAC ¶ 102. With respect to San Marzano tomatoes, that entity is the Consortium.

9

FAC ¶ 103. Defendant knows this because it abided by the Consortium's certification system until 2011. FAC ¶ 135. Moreover, when the products are from another country as here, certification takes on greater weight because "the consumer will have no easy way to assess or inquire as the authenticity of the certification, and by extension, the criteria used." FAC ¶ 104. Indeed, Plaintiff's FAC is replete with factual allegations of Defendant's deceptive acts and practices that are likely to mislead a reasonable consumer, acting reasonably under the circumstances, into believing that the Products are authentic San Marzano tomatoes when they are not. Specifically, the FAC alleges:

- Defendant's labels imitate the labels of San Marzano tomatoes that are certified by the Consortium, even though the Products do not meet the standards for that certification. FAC ¶105.

- Defendant's front label prominently display the word "CERTIFIED." FAC ¶106.

- Defendant's front label contains the main elements required by the Consortium on the labels of authentic San Marzano tomatoes, *e.g.*, reference to a third-party evaluation or certification, the term "San Marzano Tomato," and the product contents, "Peeled Tomatoes." FAC ¶106.

- Defendant stamps the initials "SM" on a code contained on the bottom of the Products' cans, which seem to refer to the origin "San Marzano," but actually refer to something completely different. FAC ¶¶ 107-116.

- Defendant claims on its label that the Products are "certified by an independent third-party agency and are produced with the proper method to ensure superior quality" (FAC ¶ 117), even though Defendant knows through its previous participation in the Consortium (FAC ¶ 135) that the third-party agency it uses (Agri-Cert) "is not authorized nor possesses the capabilities to ensure defendant's Products meet the specifications of San Marzano Tomatoes." FAC ¶ 123.

- The Products' back label touts a purported connection to the Sarnese Nocerino area, the only region where authentic, certified San Marzano Tomatoes can be grown. FAC ¶¶ 125.

- The label refers to the "Find My Field" feature of Defendant's website, which is supposed to help consumers find the field in Italy where their tomatoes were grown,

except that regardless of the field's "lot code," the same four fields are identified. FAC ¶ 127-132.

Indeed, since its participation in the Consortium was terminated in 2011, Defendant has employed a marketing, advertising and labeling strategy expressly designed to extract the premium that San Marzano tomatoes certified by the Consortium command without meeting the Consortium's exacting standards. FAC ¶¶ 134-152.

Defendant further argues that Plaintiff "do[es] not cite any relevant or applicable legal authority to claim . . . that Cento's certification from Agri-Cert is somehow not acceptable." Def. Br. at 10. To the contrary, the FAC specifically alleges that Agri-Cert's so-called certification of the Products is performed pursuant to the UNI EN ISO 22005 traceability system. FAC ¶ 118; *see also* Exhibit G to the FAC. This voluntary food traceability system is "designed to ensure product *safety*, not product quality." FAC ¶ 119 (emphasis in original). Moreover, "ISO 22005 limits use of their traceability framework for 'promotional and commercial purposes.'" FAC ¶ 120. The FAC further alleges:

> [W]here products have 'defined qualitative characteristics' such as a designation of product origin [like the use of "San Marzano" in connection with the Product's label here], the indications regarding regulated qualitative characteristics (e.g. product certification: PDO, PGI, TSG) may appear on certification documents provided that it is clearly stated that ***the regulated qualitative characteristic is not covered and is not certified against ISO 22005.***

FAC ¶ 121 (emphasis added; internal quotation omitted). Thus, ISO 22005, the voluntary certification scheme that Agri-Cert submits to and uses to "certify" the Products, specifically states that it cannot certify a designation of product origin like "San Marzano." *Id*. Thus, Agri-Cert does not and cannot certify that the Products meet the defined, qualitative characteristics of authentic San Marzano tomatoes.

At its heart, Defendant argues that because the Products are grown in Italy and are certified by a third party, its references to the term "Certified," certain Italian words and geography, and a map of Italy are all accurate and therefore cannot be claimed to be misleading. The Second Circuit's decision in *Mantikas v. Kellogg Company*, 910 F.3d 633 (2018), renders Defendant's position untenable. In that case, the Second Circuit held that "the conspicuous 'WHOLE GRAIN' and 'MADE WITH WHOLE GRAIN' claims on the front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the crackers is exclusively, or at least predominantly whole grain," even though the crackers, in fact, contained whole grain and the front of the box accurately stated the amount of whole grain in the crackers per serving. 910 F.3d 638-39. In other words, technical accuracy does not dispel a plaintiff's claim that a defendant's conduct is plausibly deceptive. Instead, the Court should presume the truth of Plaintiff's well-pled factual allegations, which are that Defendant deceptively markets the Product to target consumers, who know and seek out the qualities of authentic San Marzano tomatoes and who are willing to pay a premium for those qualities. Defendant's deceptive misrepresentations are highly likely to cause a reasonable consumer to believe that the Products are authentic San Marzano tomatoes, as certified by an organization with the authority and expertise to bestow that certification. In reality, Defendant delivers a substandard tomato product, which is certified, at best, for food safety. Defendant's so-called "certification" robs consumers of their justifiable reliance on a certification process with actual value. Plaintiff's factual allegations are more than sufficient to support his claims under GBL §§ 349 and 350.

### B.      Plaintiff Plausibly Alleges a Claim for Breach of Express Warranty

Defendant argues that Plaintiff's express warranty claims must be dismissed because the FAC fails to allege any pre-suit notice to Defendant. Def. Br. at 14. Defendant's argument is

without merit. The FAC properly alleges pre-litigation notice. Specifically, Plaintiff alleges that "[t]o the extent notice may be required, Named Plaintiffs and Jane Doe Plaintiffs either have sent or intend to send notice to defendant and reserve all rights to amendment of the complaint." FAC ¶ 218. Additionally, Plaintiff plausibly alleges that Defendant had notice of its breach due to Defendant's actual knowledge that the Products are not authentic San Marzano tomatoes. FAC ¶¶ 135, 205. At the pleading stage, these allegations are sufficient, and courts do not require plaintiffs to provide specific facts regarding the notice each named plaintiff provided.

For example, in *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011), the court "decline[d] to require Plaintiff to provide more specific facts regarding notice at this time because pre-litigation notice is not strictly required under the laws of a number of states." The court explained:

> A significant body of case law from around the country holds that the reasonable notice requirements of UCC § 2–607(3)(a) should be judged under a relaxed standard when the suit is brought by a retail consumer of the product. . . . In New York, the notice requirement does not even apply to cases involving goods sold for human consumption. *Fischer v. Mead Johnson Lab.,* 41 A.D.2d 737, 341 N.Y.S.2d 257 (N.Y.App.Div.1973). Moreover, under the laws of a number of states, the filing of a complaint can serve as notice.

*Id.* (internal quotation and edits omitted).

Similarly, in *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 800 (N.D. Ill. 2016), the court denied the defendant's motion to dismiss the breach of warranty claims based on lack of pre-suit notice in a class action case with plaintiffs from multiple states because "direct notice includes when the seller had actual knowledge of the defect of the particular product." The court further reasoned that the issue of notice in many states is a question of fact for the jury. According, the court found that "the allegations presented are sufficient" and noted that "an exhaustive review of the factual sufficiency of each Plaintiffs'

13

allegations regarding notice under each applicable state law is not appropriate at this stage." *In re Rust-Oleum*, 155 F. Supp. 3d at 801–02; *see also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *28 (D.N.J. July 29, 2015) (declining to dismiss claims on grounds of pre-suit notice deficiency and declining "to exhaustively review the sufficiency of Plaintiffs' allegations regarding notice under each applicable state law"). At this juncture, this Court similarly should deny Defendant's motion to dismiss the breach of express warranty claim for lack of pre-suit notice.

Defendant next argues that "[e]ven if the Court were to consider the substance of Plaintiffs' express warranty allegations, they fail to plausibly allege a cognizable claim." Def. Br. at 14. Under Section 2–313(1) of the New York Uniform Commercial Code, a seller creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2–313(1)(a). Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2–313(1)(b). Plaintiff meets these pleading requirements. Specifically, Plaintiff alleges that Defendant represented that the Products were "certified" and "San Marzano" tomatoes, each of which constituted express warranties that Plaintiff relied upon and that became part of the bargain. FAC ¶ 101, 209-219.

Defendant ignores Plaintiff's claim that Defendant warranted the Products were certified San Marzano tomatoes. FAC ¶ 210 ("Defendant manufactures and sells products which purport to be authentic, certified San Marzano Tomatoes . . . ."). Along with Defendant's "certification" came the expectation that the Product would have definite "physical, sensory and organoleptic characteristics, which are desired by consumers." *Id.* Defendant argues that because the

14

Product's label does not make an affirmation of fact or promise "with respect to juiciness, seed weight, or flesh firmness" that Plaintiff's allegations fail to give rise to a plausible express warranty claim. Def. Br. at 14. Defendant's arguments amount to nothing more than a factual challenge to what it warranted and whether it breached those warranties. Such questions cannot be resolved in its favor at the pleading stage. "[W]hat a reasonable consumer's interpretation might be is a matter of fact which is not appropriate for decision on a motion to dismiss. *Ault v. J.M. Smuckers,* No. 13 Civ. 3409(PAC), 2014 WL 1998235 (May 15, 2014 S.D.N.Y.), at \*6 (finding that the plaintiff alleged actionable warranty where "it cannot be said that a reasonable consumer cannot interpret 'All Natural' as a factual claim about Crisco oil"). *See also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) ("However, as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claim."); *Elkind v. Revlon Consumer Prods. Corp.,* No. 14–CV–2484 JS AKT, 2015 WL 2344134, at \*13, (E.D.N.Y. May 14, 2015) ("'Age Defying with DNA Advantage' may be plausibly inferred to suggest that the product would combat or reverse aging by interacting with one's DNA. At this early pleading stage, such a statement of fact regarding the Products' efficacy is sufficient to constitute an express warranty."). Plaintiff alleges a plausible express warranty claim, which should not be dismissed.

### C.  The FAC Satisfies the Heightened Pleading Standard for Fraud

Defendant argues that Plaintiff's fraud allegations fail to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Def. Br. at 16. To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v.*

15

*Wells Fargo Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation omitted). "Rule 9(b) requires only that Plaintiffs plead, with particularity, facts from which it is plausible to infer fraud; it does not require Plaintiffs to plead facts that make fraud more probable than other explanations." *Id.* at 175.

Here, Plaintiff has identified Cento as the speaker of the representations. FAC ¶ 101.

Plaintiff alleges Defendant made numerous fraudulent statements indicating the Products were certified San Marzano tomatoes in the marketing and advertising of the Products, including on the labeling of the Products, the bottom of the Products' cans and on Defendant's website. FAC ¶¶ 105-133. The marketing representations at issue include but are not limited to: (i) the name of the product itself, San Marzano, which is one of the most recognized and sought after tomatoes due to its superior quality (FAC ¶¶ 105-106); (ii) the statement "Certified," which gives consumers the false impression that the Products exhibit the desired characteristics of authentic San Marzano tomatoes (*id.*); (iii) statements on the label that Defendant's "San Marzano tomatoes are grown in the Sarnese Nocerino area of Italy, renowned for its fruitful soil as a result of its proximity to Mount Vesuvius" and that "[t]hese San Marzano tomatoes are certified by an independent third-party agency and are produced with the proper method to ensure superior quality" (FAC ¶117); (iv) an image of the map of Italy on the Product label, which highlights the location of the Sarnese Nocerino area and Mount Vesuvius, where the tomatoes are purportedly grown (FAC ¶¶125-26); (v) the statements on its website that Defendant's Products are "regulated and certified authentic . . . using the guidelines created to regulate San Marzano tomatoes in Italy" which "ensures shoppers aren't misled by non-genuine products who use the San Marzano name in their products, which without following the strict criteria, may be inferior quality or contain a different flavor profile" (FAC ¶122-23); and (vi) the "Find My Field"

16

function of its website (advertised on the Products' label) that purportedly helps consumers find the location of where the tomatoes were grown in the Sarnese Nocerino area of Italy, except that the website identifies the same four fields regardless of the lot code (FAC ¶¶ 129-132).

Plaintiff alleges Defendant made the misleading representations continuously at every point of purchase throughout the class period and that "Named Plaintiffs and Jane Doe Plaintiffs purchased the Products based on the representations on the packaging." FAC ¶¶ 180-181.

Finally, Plaintiff explains why the statements are fraudulent. Defendant's labeling of their "Certified San Marzano" tomatoes is "false, misleading deceptive, unfair and untruthful" because "Defendant's Products lack the physical and other characteristics associated by consumers with San Marzano Tomatoes." FAC ¶¶ 14-15.

The allegations in the FAC thus meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

### D.     Plaintiff May Plead Unjust Enrichment in the Alternative

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. Def. Br. at 20. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994). To the extent that this Court finds that Plaintiff does not state claims pursuant to the GBL, fraud, or breach of express warranty, the Court could hold that Plaintiff's unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019) ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred."). Thus, because questions of fact remain as to all of Plaintiff's claims,

dismissal of Plaintiff's unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); *Winick Realty Grp. LLC v. Austin & Assocs.,* 857 N.Y.S.2d 114, 115 (1st Dep't 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

### III.    Plaintiff Has Standing to Seek Injunctive Relief

Plaintiff has standing to pursue injunctive relief because Plaintiff's inability to rely on the Products' labels in the future constitutes a constitutional injury and imminent threat of future harm. Specifically, Plaintiff alleges that he would buy the Products in the future "if there were assurances that the Products' representations were no longer misleading." FAC ¶ 182. This is sufficient to establish standing.

In *Petrosino v. Stearn's Products, Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, *5 (S.D.N.Y. Mar. 30, 2018), the court held that "a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in the future." The court continued, "'if magic words are required,' a Plaintiff certainly has standing when they, as is the case here, assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled." *Id.* Recently in *Jackson-Mau v. Walgreen Co.*, No. 1:18-cv-4868 (FB)(VMS), 2019 WL 5653757, at *3 (E.D.N.Y. Oct. 31, 2019), the court likewise found that plaintiff could seek injunctive relief because her complaint

stated that she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain." *See also Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Many courts have concluded that the inability to rely on the labels in the future, as alleged in the FAC, constitutes a threat of harm and to hold otherwise would eviscerate the New York consumer protection statute. *See, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts 'have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013). Thus, this Court should permit Plaintiff to seek injunctive relief and allow him to remedy misconduct to the benefit of all consumers.

## IV.     The Court Has Personal Jurisdiction Over Defendant on All Claims

Citing the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773 (2017), Defendant contends that this Court lacks personal jurisdiction over Defendant as to non-New York class members and claims. Def. Br. at 22. This argument fails for several reasons. First, *Bristol-Myers Squibb* was a mass tort action brought by non-resident plaintiffs in state court; thus, its holding is not controlling here. Second, *Bristol-Myers* expressly did not decide "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as a state court, indicating that the ruling does not necessarily apply to nationwide class action lawsuits brought in federal court like this one. *See Bristol-*

19

*Myers*, 137 S.Ct. at 1784. And, third, *Bristol-Myers* relied upon a "straightforward application" of "settled principles of personal jurisdiction" (*id.* at 1783), hence did not affect the law regarding jurisdiction in class actions.

Defendant's brief fails to address the many decisions that have refused to apply *Bristol-Myers* to non-resident class members. *See Simon v. Ultimate* Fitness *Group, LLC*, No. 19 Civ. 890 (CM), 2019 WL 4382204, at *4 (S.D.N.Y. Aug. 19, 2019) (noting that "many courts hold that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases") (citing cases). The court in *Simon* explained: "Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class representative's claims. The due process issue is avoided because Rule 23 class certification already protects a defendant's due process rights." *Id.* (citations omitted). Thus, the court in *Simon* declined to dismiss the claims of absent, non-New York class members, for lack of specific jurisdiction and instead deferred the issue until the class certification stage. *Id.* at *4-5.

Significantly, Defendant does not explain why it would be fundamentally unfair to make it defend a multi-state or nationwide class in this Court, nor can it. Instead, placing form over substance, Defendant simply asks that this Court extend *Bristol-Myers* to class actions. However, the practical effect of this position, should it be accepted, would require non-New York class members to file perhaps dozens of additional class actions in other states, greatly increasing the burden on injured consumers and unnecessarily taxing the resources of the judiciary and the parties, defeating "one of the major goals of class action litigation – to simplify litigation involving a large number of class members with similar claims." *Devlin v. Scardellette*, 536 U.S. 1, 10 (2002).

Earlier this year, the court for the Northern District of Illinois also denied defendant's motion to dismiss claims brought on behalf of a nationwide class on personal jurisdiction grounds. In *Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2019 WL 398685, at *3 (N.D. Ill. Jan. 3, 2019), the court cited the findings of a leading treatise[4] that "most courts to address the issue nationwide have concluded that *Bristol-Myers* does not apply to class actions," and went on to explain that applying *Bristol-Myers* to class actions "would be to hold that although absent class members are *not* parties for purposes of diversity of citizenship, amount in controversy, Article III standing, and venue, they *are* parties for purposes of personal jurisdiction over the defendant." *Id.* (emphasis in original; internal quotation omitted). This grossly inconsistent result, the court stressed, "cannot be right." *Id.* Based on the sound reasoning of the cases that have rejected the application of *Bristol-Myers* to class actions, the Court should not dismiss non-New York class members, or any of their claims, from this case.

---

[4] 1 *McLaughlin on Class Actions,* § 2.44, n. 9 (15th ed.).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss the FAC.

Date:  December 23, 2019

Respectfully Submitted,

By:  _/s/ Sue J. Nam_____

**REESE LLP**
Sue J. Nam
_snam@reesellp.com_
Michael R. Reese
_mreese@reesellp.com_
100 West 93rd Street, 16th Floor
New York, NY  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
_spencer@spencersheehan.com_
505 Northern Blvd., Suite 311
Great Neck, NY  11021
Telephone: (516) 303-0551
Facsimile: (516) 234-7800

_Counsel for Plaintiffs and the_
_Proposed Class_