```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
RICARDO SIBRIAN, individually and on
behalf of all others similarly situated,

                        Plaintiff,
                                                MEMORANDUM & ORDER
            -against-                           19-CV-0974(JS)(ST)

CENTO FINE FOODS, INC.,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:       Joshua Levin-Epstein, Esq.
                     Levin-Epstein & Associates, P.C.
                     420 Lexington Avenue, Suite 2525
                     New York, New York 10170

                     Michael Robert Reese, Esq.
                     Sue Jung Nam, Esq.
                     Reese LLP
                     100 West 93rd Street, 16th floor
                     New York, New York 10025

                     Spencer I. Sheehan, Esq.
                     Sheehan & Associates, P.C.
                     505 Northern Boulevard, Suite 311
                     Great Neck, New York 11021

For Defendant:       Daniel Tyler, Esq.
                     Erin R. Woelker, Esq.
                     Amin Talati Wasserman, LLP
                     100 South Wacker Drive, Suite 2000
                     Chicago, Illinois 60606
```

SEYBERT, District Judge:

Plaintiff Ricardo Sibrian ("Plaintiff" or "Sibrian") commenced this action, individually and on behalf of all others similarly situated (generally, "Plaintiffs"), against defendant Cento Fine Foods, Inc. ("Defendant" or "Cento"), generally

alleging Cento's misleading labeling of its tomato products. (Am. Compl., D.E. 14.) Before the Court is Cento's motion to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6), and to strike certain matter pursuant to Rule 12(f). (Def. Mot., D.E. 20; Def Br., D.E. 20-1; Pl. Jud. Opp., D.E. 25; Pl. MTD Opp., D.E. 26; Def. Jud. Reply, D.E. 29; Def. MTD Reply, D.E. 28.)[1] For the reasons that follow, Defendant's motion is GRANTED.

BACKGROUND[2]

Plaintiff claims (1) violations of the New York General Business Law ("GBL") §§ 349 and 350, and of numerous other state consumer protection statutes (Am. Compl. ¶¶ 192-200); (2) breach of express warranty (Am. Compl. ¶¶ 209-19); (3) fraud (Am. Compl. ¶¶ 220-27); and (4) unjust enrichment (Am. Compl. ¶¶ 228-29).[3] The

---

[1] Although Defendant filed one 25-page motion asserting all its requested grounds for relief, Plaintiff, without seeking permission, filed two oppositions, together exceeding 25 pages: one in response to Defendant's request that the Court take judicial notice and strike certain arguments (Pl. Jud. Opp., D.E. 25) and one in response to Defendant's dismissal arguments (Pl. MTD Opp., D.E. 26). In turn, Defendant filed two replies. (Def. Jud. Reply, D.E. 29; Def. MTD Reply, D.E. 28.) The Court, while displeased with Plaintiff's attempts to circumvent its individual rules, will consider all documents.

[2] The following facts are drawn from the Amended Complaint and are assumed to be true for purposes of this Memorandum and Order.

[3] Plaintiff withdraws his claims of negligent misrepresentation and breach of implied warranty. (Pl. MTD Opp. at 2 n.2.)

following alleged facts[4] from the Amended Complaint underpin Plaintiff's claims.

Cento grows, manufactures, labels, distributes, and sells canned tomatoes (the "Product"). (Am. Compl. ¶ 1.) The Product, made of tomatoes from Italy, is packaged in tin cans labeled "Certified San Marzano." (¶ 1.) Consumers, who cannot see the tomatoes inside, rely on the accuracy of the labels. (¶¶ 9-10.) San Marzano tomatoes have a "protected designation of origin" that "establishe[s] parameters and qualities a tomato marketed under this name should possess." (¶ 7.) The Consortium of the San Marzano Tomato, PDO (the "Consortium") is an independent body that oversees San Marzano tomato standards. (¶ 8.) The Consortium endeavors to ensure that San Marzano-designated and labeled tomatoes "have the physical characteristics consumers associate and expect with this variety: firm flesh, high ratio of flesh to water . . . fewer seeds, bittersweet taste, less water, easily dissolving peel and consistency between each can and across all cans labeled as 'San Marzano Tomatoes.'" (¶ 11.) "After all

---

[4] The Court considers only the alleged facts in the Amended Complaint and disregards conclusory statements and opinions. (See, e.g. ¶ 3 ("[t]omatoes are the most important fruit crop in the world); ¶ 5 ("the San Marzano is 'the most important industrial tomato of the 20th century'"); ¶ 124 ("given that the Products' seeds and tomato fruit diverge sharply from real San Marzano Tomatoes, it is clear . . . [Cento] should re-examine [its] priorities"); ¶ 223 (Cento "knew that the opaque nature of the Italian agricultural sector would prevent any third-parties in this or other countries from separating truth from fiction").

3

the steps are complied with, the Consortium issues a stamp [with] seals [and] issues a unique serial number." (¶¶ 12-13.)

Plaintiff devotes a great deal of his Amended Complaint to reciting the exacting and specific Consortium standards as to harvesting, yield rate, and physical characteristics of San Marzano tomatoes. (¶¶ 16-100.) Plaintiff also recounts differences between the Product and Consortium-certified tomatoes. For example, in 2014 and 2019, the Products were genotyped with DNA markers and none were genetically identical to certified tomatoes: genetic similarities ranged from 60 percent to 85 percent similar. (¶¶ 23-26.) Further, Cento converts a higher yield of fresh tomatoes into the Product. (¶¶ 39-44.) Upon examination, the Product had 61 percent more seeds than certified tomatoes, and consumers desire less seeds. (¶¶ 72-78.) Another test was performed to test flesh firmness: the Product's juices drained and flowed quicker, indicating greater disintegration. (¶¶ 87-96.)

Plaintiff then alleges that the Product label indicates that it is "certified by an independent third-party agency and [is] produced with the proper method to ensure superior quality." (¶ 117.) However, the third-party agency is not the Consortium, but Agri-Cert. (¶ 118.) According to Plaintiff, the Products "are misleading because, aside from not being real San Marzano Tomatoes, they are marketed as such adjacent to authentic San Marzano tomatoes" and "[w]here two similarly labeled products are

4

. . . in the same . . . section of a store and their representations . . . are identical . . . the reasonable consumer will be deceived." (¶¶ 150-51.) In this instance, a consumer pays more for Cento's inferior product. (¶ 152.) Plaintiff alleges that had he and other consumers "known the truth about the Products, they would not have bought the Product or would have paid less for it." (¶ 155.)

## ANALYSIS

I. Legal Standards

A complaint may be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it, which includes when the plaintiff lacks constitutional standing to bring the action." Nasr v. Securitized Asset Backed Receivables LLC Tr. 2004-OP1, No. 14-CV-1958, 2015 WL 13721680, at *2 (E.D.N.Y. Aug. 20, 2015) (internal quotation marks and citations omitted). A complaint may also be dismissed for lack of personal jurisdiction and "'[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" Belluomo v. Tiger Schulmann's Mixed Martial Arts, No. 14-CV-4402, 2015 WL 5794356, at *4 (E.D.N.Y. Sept. 30, 2015) (quoting Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010)).

5

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). The Court need not accept "legal conclusions couched as a factual allegation" or "naked assertion[s] devoid of further factual enhancement." Id.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002).

II. Discussion

Cento moves to dismiss the Amended Complaint in its entirety.[5]

A. New York General Business Law §§ 349 & 350

New York General Business Law Sections 349 and 350 prohibit any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and "false advertising" that is "misleading in a material respect." N.Y. GEN. BUS. LAW §§ 349, 350, 350-a. "'To assert a claim under either section, a plaintiff must establish that [1] the defendant engaged in consumer-oriented conduct, [2] that is materially misleading, and [3] plaintiff was injured as a result of the deceptive act or practice." Reyes v. Crystal Farms Refrigerated Distribution Co., No. 18-CV-2250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (quoting Bowring v. Sapporo U.S.A., Inc., 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017)) (further citation omitted). The standard contemplates a reasonable consumer: "To state a claim, plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, they

---

[5] Cento asks this Court to take judicial notice of several documents: (1) Cento's San Marzano certification and traceability documentation from Agri-Cert, along with an English translation; (2) Cento's United States Trademark Registration; (3) the Product label; and (4) an abandoned trademark application from another party disclaiming any right to use the mark "Pomodoro San Marzano." (Def. Br. at 5-6.) Because the Court does not require these documents to resolve the motion, it does not analyze their admissibility.

7

must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." Sarr v. BEF Foods, Inc., No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks and citations omitted). While "[t]his reasonable consumer inquiry is factual and, in most instances, not resolved at the motion to dismiss stage . . . a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer." Reyes, 2019 WL3409883, at *3 (internal quotation marks and citations omitted).

Plaintiffs do not allege that Cento falsely claims that the Product is certified by the Consortium. Rather, Plaintiffs contend that the labeling and packaging creates the impression that the Product contains San Marzano tomatoes certified by the Consortium. Plaintiff, with no factual support, claims that the Consortium is the only body that can certify San Marzano tomatoes. As Plaintiff frames it, this lack of Consortium certification renders the Product's label of "San Marzano" misleading to consumers. These allegations necessarily imply that a reasonable consumer is aware of the Consortium and seeks out a Consortium-certified tomato.[6]

---

[6] Plaintiff now contends that "whether these quality attributes are assured through the Consortium or another third party is of no import." (Pl. MTD Opp. at 9.) However, the Court finds this argument contradictory to the central allegations of the Amended

Plaintiff's allegations are conclusory and strained. Cento is correct that "all of Plaintiffs' causes of action stem from the conclusory assertion that only the Consortium can certify San Marzano tomatoes . . . and that reasonable consumers understand the Consortium's supposed standards[.]" (Def. Br. at 8.) "To state a claim, [P]laintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." Sarr, 2020 WL 729883, at *3 (internal quotation marks and citation omitted). Additionally, the Court need not accept a "naked assertion devoid of further factual enhancement." Iqbal, 556 U.S. at 678. Plaintiff's reliance on his own conclusory statement that "a basic assumption of any certification scheme is a body which has the authority and expertise to bestow that certification [and w]ith respect to San Marzano Tomatoes, that entity is the Consortium" does not amount to a plausibly alleged fact. (Am. Compl. ¶¶ 102-03; see also Pl. MTD Opp. at 10.)

Here, while there may be "some few consumers" who expect that a San Marzano tomato must be certified by the Consortium, the Court concludes, drawing upon common sense and common experience, that the vast majority of reasonable consumers expect no such thing. It is much more likely that consumers expect tomatoes grown

---

Complaint: that the Product is misleading because it is not certified by the Consortium. In any event, the Amended Complaint contains no allegations that Agri-Cert is not a proper third party to assure tomato quality.

in a region of Italy. The Amended Complaint makes no allegation that the Product's tomatoes are not grown in such a region.[7] Furthermore, Plaintiffs allege that Consortium-certified tomatoes bear two seals. (Am. Compl. ¶ 12.) These seals do not appear on Cento's Products. Thus, it is not plausible that reasonable consumers would be led to believe that the Products are certified by this particular group.

Because the Court finds that Plaintiff has failed to substantiate his allegation that the Consortium is the only entity that can certify San Marzano tomatoes, and that reasonable consumers are aware of and depend on this allegation, it need not devote time to Plaintiff's claims regarding the minute differences allegedly found between Consortium tomatoes and the Product through independent lab testing. Accordingly, Plaintiff's New York GBL claims are DISMISSED.

### B. Breach of Express Warranty

"Under New York law, to state a claim for breach of express warranty[,] a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to

---

[7] Any allegations regarding the Product's "find my field" electronic consumer application (Am. Compl. ¶¶ 125-32) are not considered, as Sibrian makes no allegation that he or any other named Plaintiff used this feature.

10

the buyer caused by the breach." Sarr, 2020 WL 729883, at *7 (internal quotation marks and citations omitted). A breach of an express warranty must be false or misleading when made and "a representation on a product label does not create an express warranty if it is of such a general nature that a reasonable consumer would not rely on it as a statement of fact regarding the product." Id. (internal quotation marks and citations omitted).

Here, there is no breach of express warranty because the statement that the Product is "certified" is true and of a general nature. The product is certified by Agri-Cert. For the reasons discussed, Plaintiff has not alleged that this statement is false or misleading. A true statement does not become false when a plaintiff imbues it with a meaning that is not present. See Reyes, 2019 WL 3409883, at *5 (dismissing claim for breach of express warranty where "Defendant warranted that its mashed potatoes were 'made with real butter' and 'made with fresh whole potatoes'--not that the mashed potatoes lacked margarine or were themselves 'fresh'").

To the extent Plaintiff alleges that "[t]he Products warranted . . . that they possessed substantive, compositional, organoleptic, sensory, physical and/or other attributes when they did not," (Am. Compl. ¶ 211), the Court disagrees. Rather, the label states that Cento's tomatoes are "a product of Italy . . . distinct in flavor [and] grown in the Sarnese Nocerino area . . .

11

renowned for its especially fruitful soil." (Label Image, reproduced at Am. Compl. ¶ 105.) These statements do not convey a particular seed size, tomato weight, or water content. Accordingly, Plaintiff does not state a claim for breach of express warranty.

   C. Fraud

To state a claim for fraud under New York law, Plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). A plaintiff must plead fraud allegations with particularity. Sarr, 2020 WL 729883 at *9. However, as Plaintiff has not plausibly alleged a false or misleading statement, let alone with particularity, this claim fails.

   D. Unjust Enrichment

Plaintiff alleges Cento obtained benefits and monies because the Products were not as represented and expected, to the detriment of Plaintiff. (Am. Compl. ¶ 229.) This claim is dismissed as duplicative of Plaintiff's other failed claims. See Reyes, 2019 WL 3409883, at *5 (unjust enrichment claim does not survive where it "merely duplicates Plaintiff's other claims based

12

on the same alleged misrepresentations") (internal quotation marks and citations omitted).

### E. Standing and Class Allegations

Cento also argues that Plaintiff insufficiently alleges future injury to state a claim for injunctive relief. (Def. Br. at 21.) The Amended Complaint alleges that Sibrian, and others, in various states, purchased one or more of the Products for personal use, based upon the packaging representations, and "would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading." (Am. Compl. ¶¶ 180-82.) The Amended Complaint also lists named Plaintiffs from several other states (Am. Compl. ¶¶ 163-76) and Jane Doe plaintiffs, who are "citizens of the states for which the identify of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs (Am. Compl. ¶ 177). The named Plaintiffs seek to represent a national class and state sub-classes. (Am. Compl. ¶¶ 163-64.)

"Courts in this circuit 'have differed as to whether plaintiffs seeking injunctive relief for consumer deception will be able to demonstrate standing for injunctive relief where they allege they would buy the products in the future if not mislabeled.'" Sarr, 2020 WL 729883, at *12 n.6 (quoting Podpeskar v. Dannon Co., Inc., No. 16-CV-8478, 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017)) (collecting cases). Because the Court

13

finds that Plaintiffs' claims fail as a matter of law, it need not decide whether Plaintiffs have standing to seek injunctive relief. Id.

### F. Leave to Amend

Plaintiffs fail to state a claim under New York law, and accordingly, the New York claims are DISMISSED WITH PREJUDICE.[8]

The Court grants Plaintiffs leave to file a Second Amended Complaint consistent with this Memorandum and Order. However, the Amended Complaint also claims that the various Named Plaintiffs "assert[ ] the consumer protection laws of their individual states" (Am. Compl. ¶ 192) and "the allegations as related to laws of other states where no named plaintiff has been disclosed serve[ ] as a placeholder upon joinder or amendment" (Am. Compl. ¶ 178). As the parties have not argued as to the consumer protection laws of other states, those claims are DISMISSED WITHOUT PREJUDICE subject to Plaintiffs' amending their pleadings. The Court strongly "urge[s] the [P]laintiffs to

---

[8] Cento requests in the alternative that the Court strike certain material from the Amended Complaint regarding alleged Italian criminal proceedings against it. (Def. Br. at 24-25.) "The Court may strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike are generally disfavored, and "serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Lokai Holdings LLC v. Twin Tiger USA LLC, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018). As the Court is dismissing the Amended Complaint in its entirety, it need not determine whether to strike these specific allegations.

14

consider whether, absent any claims arising under New York law, this district is a proper one in which to re-plead their remaining claims."  Sarr, 2020 WL 729883 at *12 (discussing venue considerations in a similar case).

## CONCLUSION

Defendant's motion to dismiss (D.E. 20) is GRANTED in its entirety.  If Plaintiff chooses to file a Second Amended Complaint, it must do so within thirty (30) days of the date of this Memorandum and Order.  If Plaintiff does not file a Second Amended Complaint within thirty days, the Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   July   2  , 2020
         Central Islip, New York